**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, ) | |
| ) | |
| Plaintiff/Counter Defendant, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC, and JOHN HUHN, ) | |
| ) | |
| Defendants. ) | |

---

**NOTICE OF REMOVAL OF ACTION BY COMPASS ELECTRONICS**
**SOLUTIONS, LLC, COMPASS GROUP EQUITY PARTNERS, LLC, AND LOGIC PD, INC.**

---

Pursuant to 28 U.S.C. § 1332 and 1441, Compass Electronics Solutions, LLC, Compass Group Equity Partners, LLC, and Logic PD, Inc. ("Defendants") remove this action from the 346thth Judicial District Court of El Paso County, Texas to the United States District Court for the Western District of Texas, El Paso Division, as follows:

<u>**STATE COURT ACTION**</u>

1.       On September 19, 2019, Plaintiff, Integrated Maquila Solutions, L.L.C., d/b/a Tecma ("Plaintiff") filed *Plaintiff's Original Petition* ("Petition") in the 346th Judicial District Court in El Paso County, Texas, styled: *Integrated Maquila Solutions, L.L.C., d/b/a Tecma v. Compass Electronics Solutions, LLC, d/b/a Logic PD, Compass Group Equity Partners, LLC, f/k/a/ Logic PD, Logic PD, Inc., and John Huhn*, Cause No. 2019DCV3781 (the "State Court Action").

2.       In the State Court Action, Plaintiff alleged that Defendants breached the terms of a Manufacturing Support Agreement and related documents, constituting breach of contract, fraud, malpresentation, civil conspiracy, and unjust enrichment resulting in Plaintiff's right to recovery of damages, exemplary damages, and attorney's fees.

3. All Defendants were served with process of the Petition on September 27, 2019; therefore, this Notice of Removal is timely under 28 U.S.C. §§ 1446(b)(1), 1446(b)(2)(B).

4. As established by their joinder herein, all Defendants consent to removal.

## PROCEDURAL REQUIREMENTS

5. This action is properly removed to this Court, as the State Court Action is pending within this district and division. 28 U.S.C. § 1441; 28 U.S.C. § 124(d)(3).

6. The United States District Court for the Western District of Texas, El Paso Division has original jurisdiction over this action based on diversity jurisdiction because all Defendants are now, and were at the time this action commenced, diverse in citizenship from Plaintiff, and the amount in controversy exceeds the minimum jurisdictional amount. *See* 28 U.S.C. §§ 1331 and 1332(a).

7. Pursuant to 28 U.S.C. § 1446(a), attached hereto as **Exhibit A** is a true and correct copy of the entire file of record in the State Court Action.

8. Simultaneously with the filing of this Notice of Removal, Defendants are filing a copy of the Notice of Removal in the 346th Judicial District Court of El Paso County, Texas pursuant to 28 U.S.C. § 1446(d).

## BASIS OF REMOVAL – DIVERSITY JURISDICTION

9. Where there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, an action may be removed to federal court. *See* 28 U.S.C. §§ 1332(a), 1441(a). Complete diversity exists in this case because Plaintiff is not a citizen of the same state as any Defendant. Additionally, this action involves an amount in controversy that exceeds $75,000, exclusive of interest and costs.

### A. THERE IS COMPLETE DIVERSITY AMONG THE PARTIES

10. Plaintiff is a domestic limited liability company, organized under the laws of the State of Texas, with is principal office located in El Paso County, thus Plaintiff is a Texas citizen. *See* Petition at p. 1.

11.     Defendant, Compass Electronics Solutions, LLC is a Missouri limited liability company, with its principal office located at 7701 Forsyth, Suit 850, St. Louis, MO 63105, and no office located within the State of Texas; therefore, Compass Electronics Solutions, LLC is a citizen of the State of Missouri for diversity purposes. *See* Petition at p. 2; *see, also, Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1)).

12.     Defendant, Compass Group Equity Partners, LLC is a Missouri limited liability company, with its principal office located at 7701 Forsyth, Suit 850, St. Louis, MO 63105, and no office located within the State of Texas; therefore, Compass Group Equity Partners, LLC is a citizen of the State of Missouri for diversity purposes. *See* Petition at p. 2; *see, also, Hertz Corp.* 559 U.S. 77; 28 U.S.C. § 1332(c)(1)).

13.     Defendant, Logic PD, Inc. is a Minnesota corporation, with its principal office located 6201 Bury Drive, Eden Prairie, NM 55346; therefore, Logic PD, Inc. is a citizen of the State of Minnesota for diversity purposes. *See* Petition at Exhibits A and B; *see, also, see, also, Hertz Corp.* 559 U.S. 77; 28 U.S.C. § 1332(c)(1)).

14.     Defendant, John Huhn, a resident of St. Louis, Missouri, is a natural person who resides at 132 Frontenac First, St. Louis, MO 63131; therefore, his  citizenship, for diversity purposes, is determined by "where [he is] domiciled, that is, where [he has] a fixed residence with the intent to remain there indefinitely." *Margetis v. Ray*, No. 3:08-CV-958-L, 2009 WL 464962, at *3 (N.D. Tex. Feb. 25, 2009) (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985)). See Petition at p. 2.

15.     Because Plaintiff is a citizen of Texas while all Defendants are citizens of foreign states, there is complete diversity among the parties. *See* 28 U.S.C. § 1332(c)(1).

### B.  AMOUNT IN CONTROVERSY EXCEEDS $75,000

16.     Where there is complete diversity among parties, and where the amount in controversy exceeds $75,000, exclusive of interest and costs, an action may be removed to federal court. *See* 28 U.S.C. § 1332(a).

17.     Where a defendant can show, by a preponderance of the evidence, that the amount in controversy is greater than the minimum jurisdictional amount, removal is proper. *See White v. FCI U.S.A., Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (affirming district court's conclusion that it was "more probable than not" that damages were over $75,000 where the total amount of relief was not stated in the petition); *see also St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 n.13 (5th Cir. 1998) ("The test is whether it is more likely than not that the amount of the claim will exceed [the jurisdictional minimum]."); *Berry v. Chase Home Fin., LLC*, No. C-09-116, 2009 WL 2868224, at *2 (S.D. Tex. Aug. 27, 2009).

18.     "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Farkas v.  GMAC Mortg., LLC*, 737 F.3d 338, 341 (5th Cir. 2013) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *Martinez v. BAC Home Loans Servicing*, 777 F. Supp. 2d 1039, 1044 (W.D. Tex. 2010). Moreover, it is well settled law that a removing defendant bears the burden of establishing the amount in controversy rises to a level to support complete diversity, which may be established by a plaintiff's contentions, interrogatories, or admissions in the state court. *See Ullman v. Safeway Ins. Co.*, 995 F.Supp.2d 1196, 1215 (D.N.M. 2013).  Based on the prayer for relief and judicial admissions in its Petition, Plaintiff seeks relief of more than $1,000,000; therefore, the amount in controversy rises to a level of support for complete diversity. *See Petition generally, and at pgs. 17 and 18*.

19.     Further, the Court may also consider actual damages, exemplary damages, and attorney fees in determining the amount in controversy. *See White*, 319 F.3d at 675-76; *St. Paul Reins. Co.*, 134 F.3d at 1253 n.7; *Rawlings v. Travelers Prop. Cas. Ins. Co.*, No. 3:07-CV-1608-

O, 2008 WL 2115606, at **8-9 (N.D. Tex. May 20, 2008) (considering Plaintiffs' request for exemplary damages and potential recovery pursuant to Texas Civil Practice and Remedies Code § 41.003, and finding that the amount in controversy "more likely than not" exceeded $75,000); *Grant v. Chevron Phillips Chemical Co. L.P.*, 309 F.3d 864, 874 (5th Cir. 2002) ("[W]e hold that when there is state statutory authority for the court to award attorney's fees … such fees may be included in the amount in controversy."); *Ray Mart, Inc. v. Stock Building Supply of Texas, L.P.*, 435 F. Supp. 2d 578, 588 (E.D. Tex. 2006) (including potential award of attorney fees in calculating the amount in controversy).

20.     In this case, the amount in controversy is readily apparent on the face of the Petition in demand of damages*, inter alia*, in excess of $1,000,000. *See Petition generally, and at p. 18*. Thus, it is clear that the amount in controversy greatly exceeds the $75,000 jurisdictional minimum.

21.     Because there is complete diversity between the parties and the amount in controversy requirement is satisfied, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, and removal is proper.

WHEREFORE, Defendants remove this action from the 346th Judicial District Court of El Paso County, Texas to the United States District Court for the Western District of Texas, El Paso Division, so that this Court may assume jurisdiction over the cause as provided by law.

Respectfully submitted,

**FIRTH♦BUNN♦KERR♦NEILL**
311 Montana Ave., Law Center
El Paso, Texas 79902
Telephone: 915-532-7500
Facsimile: 915-532-7503

By: _____
    Edward DeV. Bunn, Jr.
    State Bar No. 24048372
    EBunn@FBKNlaw.com

    ATTORNEYS FOR LOGIC PD, INC. AND
    COMPASS ELECTRONICS SOLUTIONS, LLC

-AND-

**BLANCO ORDOÑEZ MATA
& WECHSLER, P.C.**
5715 Cromo Drive
El Paso, Texas 79912
(915) 845-5800 (Telephone)
(915) 845-5555 (Facsimile)
dordonez@bomwlaw.com

BY: *authorized via email on 10.21.2019*
    Daniel Ordoñez
    State Bar No. 24073271

    ATTORNEYS FOR
    COMPASS GROUP EQUITY PARTNERS, LLC

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on this the *22nd day of October 2019*, a true and correct copy of the foregoing document was electronically served, by filing with the Court with service requested thereby, on all attorneys and parties identified with the Court for electronic service on record in this matter, and specifically to:

a) Plaintiff, Integrated Maquila Solutions, L.L.C., d/b/a Tecma, by and through its attorneys of record, Victor F. Poulos and Andrew J. Cavazos, Poulos & Coates, L.L.P., 1802 Avenida de Mesilla, Las Cruces, New Mexico 88005, via email to: victor@pouloscoates.com.

b) Defendant, John Huhn, by and through his attorneys of record, Corey W. Haugland and Jamie T. Wall, James & Haugland, P.C., 609 Montana Ave., El Paso, Texas 79902, via email to: chaugland@jghpc.com; and jwall@jghpc.com.


_____
Edward DeV. Bunn, Jr.

# EXHIBIT A

Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back          Location : All Courts    Images Help

# REGISTER OF ACTIONS

## CASE NO. 2019DCV3781

| | |
|---|---|
| Integrated Maquila Solutions, L.L.C. d/b/a Tecma VS Compass Electronics Solutions, LLC d/b/a Logic PD, Compass Group Equity Partners, LLC f/k/a LogicPD, Inc., Logic PD, Inc. and John Huhn | Case Type: **Other Contract**<br>Date Filed: **09/19/2019**<br>Location: **346th District Court** |

---

### PARTY INFORMATION

|  |  | Lead Attorneys |
|---|---|---|
| Counter Defendant | Integrated Maquila Solutions, L.L.C. *Doing Business As* Tecma | **VICTOR F POULOS**<br>*Retained*<br>575-523-4444(W) |
| Counter Plaintiff | Logic PD, Inc. | **EDWARD DeV BUNN, Jr.**<br>*Retained*<br>915-532-7500(W) |
| Defendant | Compass Electronics Solutions, LLC *Doing Business As* Logic PD | **EDWARD DeV BUNN, Jr.**<br>*Retained*<br>915-532-7500(W) |
| Defendant | Compass Group Equity Partners, LLC *Formerly Known As* LogicPD, Inc. | |
| Defendant | John Huhn | |
| Defendant | Logic PD, Inc. | **EDWARD DeV BUNN, Jr.**<br>*Retained*<br>915-532-7500(W) |
| Plaintiff | Integrated Maquila Solutions, L.L.C. *Doing Business As* Tecma | **VICTOR F POULOS**<br>*Retained*<br>575-523-4444(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 09/19/2019 | **Original Petition (OCA)**     Doc ID# 1 |
| 09/19/2019 | **E-File Event Original Filing** |
| 09/23/2019 | Request     Doc ID# 2 |
| 09/23/2019 | Request     Doc ID# 3 |
| 09/23/2019 | Request     Doc ID# 4 |
| 09/23/2019 | Request     Doc ID# 5 |
| 09/23/2019 | Jury Demand     Doc ID# 6 |
| 09/25/2019 | **Citation** |

|  | | |
|---|---|---|
| Compass Electronics Solutions, LLC | Unserved | |
| Compass Group Equity Partners, LLC | Unserved | Response Received 10/21/2019 |
| John Huhn | Unserved | |
| Logic PD, Inc. | Unserved | Response Received 10/21/2019 |

| | |
|---|---|
| 10/18/2019 | Special Appearance     Doc ID# 7 |
| 10/21/2019 | Special Appearance     Doc ID# 8 |
| 10/21/2019 | Answer     Doc ID# 10 |
| 10/21/2019 | Special Appearance     Doc ID# 11 |
| 10/21/2019 | Counter Claim     Doc ID# 14 |
| 10/21/2019 | Answer     Doc ID# 12 |
| 10/21/2019 | Answer     Doc ID# 13 |
| 12/11/2019 | **Scheduling Conference**   (9:15 AM) (Judicial Officers Barill, Angie Juarez, Barill, Angie Juarez) |

IN THE _____ JUDICIAL DISTRICT COURT
COUNTY COURT AT LAW NUMBER _____
EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA, | § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | CAUSE NO.: _____ |
| COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC F/K/A LOGIC PD, INC., LOGIC PD, INC., and JOHN HUHN | § § § § § § § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF THIS COURT:**

Comes Now, Plaintiff, Integrated Maquila Solutions, L.L.C. d/b/a TECMA (hereinafter "Plaintiff" and/or "TECMA"), a Texas Limited Liability Company, and for its cause of action would show the Court as follows and complains of COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD ("Logic PD"), a Compass Group Equity Partners, LLC, F/K/A LOGIC PD, INC. ("CGEP"), a Missouri Limited Liability Company, and Mr. John Huhn ("Huhn"), an individual (hereafter collectively referred to as collectively "Defendants"), and for its cause of action would show the Court the following:

### I. PARTIES

1. Plaintiff is a Texas Limited Liability Company, duly formed and existing under the laws of the State of Texas, having its principal place of business in El Paso, El Paso County, Texas.

2. Defendant COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A LOGIC PD, is a Missouri Limited Liability Company doing regular and systematic business in the State of

Texas, County of El Paso, with a principal office in the State of Texas located at 45 Butterfield Trail, Suite C, El Paso, TX 79906 and may be served with process at Affinity Registered Agent and Trust Services, Inc., 1610 Des Peres Road, Suite 100 St. Louis, MO 63131

3.   COMPASS GROUP EQUITY PARTNERS, LLC is a Missouri Limited Liability Company which may be served with process at Affinity Registered Agent and Trust Services, Inc., 1610 Des Peres Road, Suite 100 St. Louis, MO 63131.

4.   LOGIC PD, INC. is a Missouri Limited Liability Company which may be served with process at Affinity Registered Agent and Trust Services, Inc., 1610 Des Peres Road, Suite 100 St. Louis, MO 63131.

5.   Defendant John Huhn is an individual, residing in St. Louis, Missouri, who may be served with process herein in his individual capacity by serving him at 132 FRONTENAC FIRST, SAINT LOUIS, MO 63131-3220 or anywhere he may be found.

## II. VENUE

6.   Plaintiff's action against the Defendants is maintainable in the county of suit because all or a substantial part of the events giving rise to the claims took place in the county of suit, more specifically:

a.   payment required under the contracts in issue were payable in the county of suit;

b.   Negotiations that formed the basis of the contracts in issue occurred in the county of suit;

c.   The contracts in issue by their very terms obligate Defendants to make payment in the county of suit;

d.   Certain tortious acts or misrepresentations of Defendants, individually, or by and through its employees or agents occurred in the county of suit.

7.      Further, venue is proper in the county of suit because Defendant COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A LOGIC PD's principal office in the State of Texas located at 45 Butterfield Trail, Suite C El Paso, TX 79906.

8.      Further, the claims against the Defendants all arise out of the same transactions or occurrences or series of transactions or occurrences and as such all of the Defendants are all subject to the same venue of this action under the Texas rules of Civil Procedure.

### III. DISCOVERY AND CHOICE OF LAW

9.      The Manufacturing Support Agreement between the parties, and First Addendum thereto, which contracts form the basis of the Plaintiffs' actions herein, specifies in paragraph 20 of the Contract and paragraph 4 of the Addendum, that the contracts will be governed by the laws of the State of Texas, without reference to any conflicts of laws provisions that would direct the application of the laws of another jurisdiction.

10.     Pursuant to Rule §190.4 of the Texas Rules of Civil Procedure, Discovery herein should be conducted under LEVEL THREE.

### VI. FACTS

11.     Plaintiff TECMA is a shelter services provider, offering its clients the ability to manufacture goods in Mexico while handling any other contractually-requested aspects of the client's business, including but not limited to legal compliance, human resources, staffing, payroll, leasing, purchases and acquisitions, accounting, and logistics.

12.     Logic PD, Inc. is a manufacturer of electronic components, which sometime around the year 2015, sought to begin manufacturing goods in Mexico.

13.     As a result, on or about April 17, 2015, Plaintiff and Logic PD, Inc. entered into the Manufacturing Support Agreement with Plaintiff attached hereto as Exhibit "A", and which is incorporated herein for all intents and purposes as if set forth at length.

14.  On or about September 1, 2015, Plaintiff and Logic PD, Inc. entered into the First Addendum to the Manufacturing Support Agreement attached hereto as Exhibit "B", which extended the term of the original agreement between the parties an additional five years, until **April 21, 2021**.

15.  The Manufacturing Support Agreement (Exhibit "A"), and the above Addendum thereto (Exhibit "B") were all executed by Logic PD, Inc. by and through its duly authorized agent and representative, Mr. Sanderson Bell, and required Logic P.D., Inc. to make payments for the rent and manufacturing support services as set forth therein.

16.  Pursuant to paragraph 5 of the Addendum, the Agreement and the Addendum shall be binding upon and "shall inure to the benefit of the parties hereto and their representatives, successors and assigns".

17.  Contemporaneously with the formation and execution of Exhibit "A", and integral to their intent and working relationship, the parties, by and through their designated Mexican entities,  entered into an Industrial Lease Agreement so to carry out the Manufacturing Support Agreement in Juarez, Mexico.

18.  Logic PD, Inc. guaranteed the performance of the Industrial Lease Agreement in a corresponding Lease Guaranty, attached hereto as Exhibit "C".

19.  At the request, consent, and for the benefit of Logic PD, Inc., Plaintiff also entered into several long-term services agreements (such as for internet service) in order to facilitate the manufacturing process for Defendants benefit.

20.  Logic PD, Inc. then entered onto the leased premises, took possession of the premises, began benefitting from Plaintiff's services, and initially performed under the above-mentioned agreements.

21.    Plaintiff similarly performed all duties and obligations required of it under the respective agreements, attached as Exhibits A and B.

22.    On or around November 10, 2017, Plaintiff was informed by Logic PD, Inc.'s CEO, Bruce Dewitt, that the corporation was in the process of being acquired, purchased, and assumed by Defendant CGEP, and that CGEP was interested in enlarging the relationship with Plaintiff throughout the merger/acquisition process.

23.    On or around September 4, 2018, an in-person meeting occurred between representatives of TECMA, Bruce Dewitt, and CGEP's managing partner John Huhn to discuss how TECMA factored into Defendant CGEP's ongoing acquisition of Logic PD Inc.

24.    During this time period, Logic PD, Inc. became delinquent in the amounts owed to Plaintiff. However, due to Plaintiff's established business relationship with Bruce Dewitt, and Mr. Dewitt's assurances that any outstanding balances would soon be satisfied, and CGEP's further representations that the business relationship would soon expand, Plaintiff continued to advance funds to employees and vendors so that Defendant Logic PD, Inc. could continue to utilize the services and premises and remain fully operational.

25.    Defendant CGEP then completed its acquisition of Logic PD, Inc. and proceeded to re-package/re-organize the corporation with several other recently-acquired technology companies to create Compass Electronic Solutions, LLC ("Compass Electronics").

26.    Compass Electronics now does business, in part, under the assumed name "Logic PD".

27.    On November 1, 2018, Bruce Dewitt, now acting as the President and CEO of Compass Electronics, provided written notice to TECMA of Logic PD Inc.'s intent to terminate the the Manufacturing Support Agreement and accompanying agreements (Exhibits A & B) due to Logic PD, Inc. moving or terminating its production in Mexico.

28. As a result, Logic PD, Inc. unilaterally terminated Exhibits A and B approximately two and a half years early, thereby triggering several important contractual clauses.

29. Pursuant to the Manufacturing and Support Agreement, Logic PD, Inc. would be responsible for payment of the following monies due to the early termination:

**7. TAXES AND IVA CREDIT**

**7.1** All IVA assessed on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap or Support Services in general by any Government Authority will be paid by Tecma and then reimbursed by Logic PD as a Reimbursable Expense (subject to Section 7.2 below); provided, however, that Logic PD will not be responsible or have any obligation to reimburse Tecma for: (i) interest, penalties or other charges associated with the failure of Tecma to timely pay any tax when due; (ii) income, gain, fran-

...

**13.3** When the Term expires or if the Term is early terminated by Logic PD pursuant to Article 13.1(i), (ii) or (iii), Logic PD's sole obligation will be to pay to Tecma (a) any and all unpaid amounts owed to Tecma under this Agreement for Support Services properly and timely performed and carried out through the date of expiration or termination, including any Reimbursable Expenses which Tecma has properly incurred through the date of expiration or termination, less (b) any and all claims, losses, damages, costs, expenses and injuries incurred by Logic PD that are Caused by Tecma.

**13.4** If the Term is early terminated by Logic PD pursuant to Article 13.1(iv) or by Tecma pursuant to section 13.1(i), (ii) or (iii) In addition to paying to Tecma any and all amounts that would be payable to Tecma if the Term were early terminated by Logic PD pursuant to Article 13.1(i) or (ii), Logic PD will (a) reimburse Tecma for any and all severance payments it is required to make pursuant to Applicable Law for Headcount Tecma Personnel whose employment is properly terminated pursuant to Applicable Law as a result of the early termination of the Term, (b) if early terminated during the Original Term or any Extended Term, Logic PD will continue to pay Tecma the Production Facility Charge as set forth in Schedule 2 hereto for the balance of the Original Term or Extended Term, and for any long-term agreement with third-party vendors duly approved by Logic PD that Tecma has committed to on behalf of Logic PD.

30. On or around November 14, 2018, Plaintiff provided Bruce Dewitt with an estimated closing cost of $312,950. This estimated figure included outstanding (delinquent) amounts owed, severance costs, reimbursable expenses, and Mexican taxes/customs for the transfer of Logic PD's equipment back to the United States.

31.    Plaintiff made it clear these estimated figures were subject to change, and that Logic PD, Inc. would further be responsible for the rent and facility costs until Plaintiff found another tenant for the building.

32.    On November 16, 2019, at the request of Logic PD, Inc., Plaintiff further supplemented the estimated closing costs to include an approximate $15,246.86 in additional billed amounts (i.e. rent and facility charges) that Logic PD, Inc. would incur each month until Plaintiff could find another tenant for the premises.

33.    Logic PD, Inc. committed to pay $50,000 per month in satisfaction of the outstanding amounts owed and estimated contractual termination/closing costs, with the first payment beginning on January 15, 2019.

34.    Bruce Dewitt further informed Plaintiff that the company was working with Defendant CGEP's CFO towards a full resolution of the account.

35.    January 15th came and passed, and no monies were ever paid to Plaintiff by Logic PD, Inc.

36.    On or around January 21, 2019 -- after Plaintiff could no longer get a hold of Mr. Dewitt or any other representatives of Logic PD, Inc. -- Plaintiff contacted the managing partner of Defendant CGEP, John Huhn, and had a conversation with him regarding the outstanding amounts owed to TECMA, now being approximately $354,000, and its continued efforts to find another tenant for the premises.

37.    John Huhn surprisingly informed Plaintiff that Bruce Dewitt had been terminated three weeks earlier, and that he John Huhn was now acting in the double capacity as Compass Electronics' CEO.

38.    After learning of Mr. Dewitt's unexpected termination, on or around January 28th, 2019, Plaintiff informed John Huhn that the outstanding balance of approximately $354,000 was

expected to be rectified immediately on the delinquent account and TECMA forwarded Mr. Huhn complete accounting information as proof of the outstanding amounts due.

39.    As a result, on January 31, 2019, Defendant John Huhn committed to making payments of approximately $21,000 per week towards the outstanding amounts owed and termination/closing costs.

40.    From February 4, 2019 through March 18, 2019, Defendant Compass Electronics and/or CGEP wire transferred Plaintiff $20,000 per week towards the outstanding balance.

41.    Plaintiff accepted the monies as a short-term solution to account that had long been in default, negligently upon Defendant Huhns continued assurances.

42.    On or around March 4, 2019, Plaintiff contacted John Huhn inquiring as to when the short-term solution of weekly payments would cease, and when the account would be fully satisfied as required under the terms of Exhibits A and B.

43.    On or around March 15, 2019, Defendant John Huhn notified Plaintiff that he had become dissatisfied with the termination process of Logic PD's contract, more specifically, with the amount of taxes and customs fees Defendants would have to contractually reimburse Plaintiff for.

44.    Despite Defendant Huhn admitting that he was "not aware of Mexico regulatory requirements, customs idiosyncrasies, nor speak[ing] Spainsh", he nevertheless decided to halt the $20,000 weekly payments due to his dissatisfaction (and admitted lack of knowledge) of the taxes and customs charged by the Mexican government and advanced by Plaintiff for Defendants' benefit.

45.   Shortly afterward, on March 19, 2019, Defendant Huhn indicated he was further dissatisfied with the amounts Logic PD owed to a third-party internet provider and notified Plaintiff that all further payments would cease indefinitely.

46.   Defendant Huhn, in an effort to intentionally terminate the Agreements (Exhibits A and B) without satisfying all outstanding amounts owed, now attempted to claim that the amounts advanced by Plaintiff for Defendants' benefit, outstanding amounts owed for prior services rendered, and closing/termination costs were erroneous.

47.   Defendant Huhn then undertook an auditing expedition of Logic PD Inc.'s account by and through Defendant CGEP's attorney, Armando Gutierrez.

48.   Plaintiff provided Defendant Huhn and Armando Gutierrez with full and complete invoices for all the outstanding amounts owed, wherein no discrepancies were found.

49.   The Defendants, by and through Mr. Gutierrez, then requested an extensive audit of Logic PD's account, which again proved that the amounts owed were in fact accurate.

50.   Regardless, Defendants continued to falsely represent that "further review" of the financial information was necessary, and Defendant Huhn continued to refuse payment or otherwise satisfy Defendants' unpaid obligations.

51.   As Defendants continued to draw the process out without any resolution, Plaintiff missed (with Defendants knowledge) legitimate opportunities to re-lease the premises to other potential tenants.

52.   Despite the financial audit information being found as truthful and accurate, Defendant Huhn eventually requested that Plaintiff accept a lump sum amount substantially less than what was owed. The alternative, if Plaintiff didn't accept this offer: Defendants would pay Plaintiff *nothing*.

53.   Said actions were intentional, fraudulent and undertaken in an effort to essentially blackmail Plaintiff into accepting a lessor sum in exchange for not having to endure the time and cost of litigation.

54.   As the Plaintiff learned afterward, the statements and representations made by Defendants were false and fraudulently made, and Defendants Huhn, CGEP, and/or Compass Electronics had made a prior decision to unilaterally terminate the Manufacturing Support Agreement and Lease Agreement without ever satisfying the entirety of the amounts owed.

55.   No payments have been made to Plaintiff since March 18, 2019.

56.   To date, the outstanding balance owed to Plaintiff is approximately $379,637.17, not including future late/penalty fees restricting the premises, and other damages and for the ongoing default status on Defendants' account, and additional fees being incurred such as storage fees.  The total owed is now over $400,000 and increasing

## V. CAUSE(S) OF ACTION

### Count I - Breach of Written and Oral Contracts

57.   By the termination described above and the subsequent representations and conduct of the Defendants individually and  often in concert, and in furtherance of their joint enterprise and fraudulent conduct, the Defendants have breached the above described written and oral agreements by wrongfully refusing to pay the Plaintiff the sums due.

58.   More specifically, Defendants engaged in the following conduct which constitutes a breach of the written and/or verbal contracts:

   a.   Defendant Logic PD, Inc. breached the payment provisions of Exhibits A and B, and became approximately $350,000 delinquent on its account with Plaintiff before ever submitting a payment;

b. Representatives of Logic PD, Inc., acting as employees and/or agents of Defendants' CGEP and/or Compass Electronics, falsely made representations to Plaintiff that the outstanding amounts owed would be satisfied at a rate of $50,000 per month, starting January 15, 2019;

c. Representatives of Defendants CGEP and/or Compass Electronics then made representations that the outstanding amounts owed would be satisfied at a rate of $20,000 per week;

59. As a result of the Defendants conduct and breach of said contracts, the Plaintiff has suffered damages in an amount which greatly exceeds the minimum jurisdictional limits of this court, and for which sums the Plaintiff herein sues.

60. Plaintiff also sues for pre and post judgment interest on said sums.

## Count II - Quasi Contract and Quantum Meruit

61. Further, the services rendered and/or monies advanced for services, as set forth above, were for the benefit and monetary profit of Defendants.

62. As a direct result of Plaintiff's services, a benefit was conferred on the Defendants, and the Defendants accepted the benefits and services of the Plaintiff.

63. The Plaintiff herein sues for the reasonable value of the services rendered, and for which the Plaintiff has not been paid despite demand therefor.

64. Defendants will be unjustly enriched in the amount of damages to be proven herein at trial if Defendants are allowed to retain the benefits conferred without payment for the reasonable value of the services rendered.

**Count III – Intentional Fraud, Intentional Misrepresentation, Fraud by Nondisclosure, Constructive Fraud, and Fraud in the Inducement**

65.     Defendants, by and through its employees and agents and Defendant Huhn individually, committed fraud and/or intentional misrepresentation against TECMA in that they intentionally and/ recklessly made false representations of past or existing material facts to TECMA for the purpose of inducing TECMA into a variety of services, advancements, extensions of services, and/or contracts, to which TECMA detrimentally relied on, all the while knowing and/or should have known that they intended and/or knew of their substantial likelihood to default on the applicable contracts.

66.     Such conduct was done intentional and/or recklessly without any knowledge of the truth and as a positive assertion, and Defendants benefitted financially through such misrepresentations and fraudulent conduct.

67.     As a result, Plaintiff suffered, and continues to suffer, monetary damages.

68.     Such conduct entitles the Plaintiff to actual and exemplary damages, in an amount to be proven at trial, in order to deter such conduct in the future, for all of which the Plaintiff herein sues.

69.     Further, by and through employees and agents and Defendant Huhn individually, Defendants committed constructive fraud against Plaintiff, by lying, omitting, and/or misrepresenting material details, or by breaching its fiduciary relationship with Plaintiff. These are breaches that the law condemns as "fraudulent" merely because they tend to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial.

70.     Further, by and through employees and agents and Defendant Huhn individually, Defendants committed fraud by nondisclosure, more specifically, Defendants' failed to

disclose material facts to Plaintiff for which they had a duty to disclose and knew the plaintiff was ignorant of with the intention to induce Plaintiff to take some action or refrain from acting on the delinquent account.

    a. Defendants' had a duty, both in common law and by contract, to disclose material facts concerning their intention to pay Plaintiff the outstanding balances, yet voluntarily disclosed only partial information and/or failed to disclose the whole truth, made false representations, failed to disclose new information that makes the earlier representation misleading or untrue, and/or made partial disclosures that conveyed a false impression.

    b. Plaintiff relied on the defendants' nondisclosure and continued to provide Defendants with a variety of services, advancements, extensions of services, and/or contracts both before and after the termination of the contract.

    c. Plaintiff was injured as a result.

71. Further, by and through employees and agents and Defendant Huhn individually, Defendants committed fraud in the inducement by making false representation and/or concealing material facts, which were reasonably calculated to deceive and/or made with the intent to deceive and resulting in damage to Plaintiff.

## Count IV - Negligent Misrepresentation

72. Defendants, by and through its employees and agents and Defendant Huhn individually, negligently misrepresented facts during the course of business between them and/or in transactions between them which Defendants' had a pecuniary interest by supplying false information and failing to exercise reasonable care or competence in obtaining or communicating the information. As a result, Plaintiff justifiably relied on these

representations and continued to provide Defendant with a variety of services, advancements, extensions of services, and/or contracts both before and after the termination of the contract.

73.     Plaintiff was injured as a result of Defendants' negligent misrepresentations.

## Count V - Civil Conspiracy

74.     Defendants engaged in an ongoing civil conspiracy by disguising their unlawful intentions to defraud TECMA through a variety of lawfully executed contracts, then intentionally engaging in a course of deceit and wrongful acts to avoid paying for the services rendered. *Great National Life Insurance Co. v Chapa*, 377 S.W. 2d 632, (Tex. 1964); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

75.     As set forth above the actions of the Defendants defrauded TECMA of hundreds of thousands of dollars in damages, which damages are continuing, and for all of which the Plaintiff herein sues.

## Count VI - Promissory Estoppel

76.     In the alternative, Defendants made representations and promises to Plaintiff that Defendants did not keep.

77.     Plaintiff relied on Defendants' promises by continuing to perform services under the contracts by which Plaintiff was to be compensated.

78.     Plaintiff's reliance was reasonable and substantial, and Defendants knew or reasonably should have known, that Plaintiff would rely on Defendants promises.

79.     Injustice to Plaintiff can be avoided only if Defendants' promises are enforced by this Court. Plaintiffs reliance on Defendants promises to pay for the services and thereafter lack

of payment has resulted in damages to the Plaintiff for which the Plaintiff herein sues under the theory of promissory estoppel.

## Count VII – Joint Enterprise/Joint Venture

80.　Further, Defendants Logic, PD, Inc., Compass Electronics, and/or CGEP are engaged in a joint venture to profit from the marketing and delivery of electronic goods.

81.　Defendants Logic, PD, Inc., Compass Electronics, and/or CGEP were working with a common purpose and interest of operating Logic PD in order and with the goal to profit from the manufacture and sale of electronic goods.

82.　Compass Electronics, and CGEP operate Logic, PD Inc. acted in concert and shared a right to the profits and bear responsibility for the losses.

83.　As a result, both Compass Electronics, and CGEP are responsible for the wrongful acts that stems from its joint venture with Logic PD, Inc.

## Count VIII – Successor Liability

84.　 After acquiring Logic, PD Inc., Defendants CGEP and/or Compass Electronics agreed to also take on the corporations' liabilities.

85.　This was constructively demonstrated through Defendants CGEP and/or Compass Electronics actions after the acquisition, wherein they represented, negotiated, and paid for certain portions of Logic PD's outstanding debt owed to Plaintiff.

86.　As such, Defendants CGEP and/or Compass Electronics are vicariously liable for the acts and/or omissions of Logic PD, Inc. as successors in interest.

## Count IX – Piercing the Corporate Veil

87.     Further, Defendant John Huhn was acting as the alter ego of Defendants Logic, PD Inc., CGEP

and/or Compass Electronics, more specifically:

a.  Commingling the funds of said business entities into his own;

b.  Financially backing the said business entities in their own individual capacities;

c.  Dividing the profits of said business entities for his personal use; and

d.  Failing to keep corporate and personal assets separate.

*Khajeie v. Garcia-Martinez*, No. 05-17-01010-CV, 2018 Tex. App. LEXIS 5360, at *7 (Tex. App. July 16,

2018).

88.     Given these circumstances, there is such unity between Logic, PD Inc., CGEP, Compass

Electronics and John Huhn that the separateness of the entities have ceased and holding

only the business entities liable would result in an injustice. *Castleberry v. Branscum*, 721

S.W.2d 270, 272, 29 Tex. Sup. Ct. J. 481 (1986).

89.     Further, and in the alternative, Defendant John Huhn utilized Logic, PD Inc., CGEP,

Compass Electronics as a corporate fiction to achieve the following:

a.  As a means of perpetrating actual fraud;

b.  As a means of evading existing legal obligations;

c.  To protect himself from potential liability for criminal acts and/or to justify doing

wrong.

*See* Tex. Business Organizations Code § 21.223(b); *see also Castleberry*, 29 Tex. Sup. Ct. J. 481.

90.     Such actions were undertaken for the direct personal benefit of Defendant Huhn, and thus,

he is personally liable for such actions. *Id.*

**Count X – Unjust Enrichment**

91.   In the alternative, Plaintiff seeks restitution for those services, advancements, extensions of services, and/or contracts, both before and after the termination, wrongly secured by Defendants.

92.   These benefits were obtained by fraud, duress, and/or taking undue advantage of Plaintiff.

93.    It would be unconscionable to allow Defendants to retain these past and future benefits without paying for them.

## VI. DAMAGES

94.   As a result of the above mentioned events, Plaintiff TECMA has suffered economic damages in excess of $500,000.00, plus attorney's fees, lost profits, lost opportunity and other consequential damages, in an amount to be proven at trial, for all of which the Plaintiff herein sues.

95.   In addition, Plaintiff has suffered special, consequential, and reliance damages as a result of the Defendants conduct as described above.  These damages would include storage fees, remedial repairs, mitigation and releasing expenses, loss of use of money and other consequential damages to be proven at trial, for which damages the Plaintiff herein sues.

96.   Further, Plaintiff has incurred and will incur attorney's fees and Court costs as a result of the Defendant's conduct as set forth above.  To date, said attorney's fees constitute $25,000.00 and will continue to accrue.  This is a claim on a written or oral contract within the meaning of Civil Practice and Remedies Code Section 38.001.  Plaintiff perfected its right to fees under this statute in that the Plaintiff presented its claim for pay on the contract to Defendant by written letter dated August 7, 2019.  More than 30 days will have elapsed since Defendants received the letter, and payment for the amount owed has not been

tendered by the Defendants.  As a result, Plaintiff has incurred the above attorney's fees to prosecute this action, and the above sum and all future reasonable sums will be incurred due to same, for all of which the Plaintiff herein sues

97. Furthermore, due to Defendants knowing, intentional, and or malicious conduct as outlined above, Plaintiff TECMA seeks exemplary damages from Defendants, jointly and severally, in accordance with Tex. Bus. & Com. Code Section 27.01 and Tex. Civ. Prac. & Rem. Code § 41.003.

98. Plaintiff seeks unliquidated damages and monetary relief over in excess of $1,000,000.00 in accordance with Tex. R. Civ. P 47 C (5).

## VII. JURY DEMAND

Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII. REQUEST FOR DISCLOSURE

Under the Texas rules of Civil Procedure 194, Plaintiff requests that Defendants disclose within 50 days of the service of this Request, the information or material described in Rule 194.2.

## IX. PRAYER FOR RELIEF

For the above and foregoing reasons, Plaintiff asks that the court issue Citation for Defendants to appear and Answer, and that Plaintiff be awarded a judgment against Defendants, jointly and severally, for the following:

(a) Actual damages in excess of $100,000,000.00;

(b) Pre judgment and post judgment interest as provided by law;

(c) Court costs and attorneys fees;

(d) Exemplary damages as set forth above; and

(e) All other relief to which Plaintiff is justly entitled.

------------------------------- *signature line on next page* -------------------------------

Respectfully Submitted:

/s/ Vic Poulos

By: _____

VICTOR F. POULOS
State Bar No.: 16184700
ANDREW J. CAVAZOS
State Bar No.: 24095414

POULOS & COATES, L.L.P.
1802 Avenida de Mesilla
Las Cruces, NM 88005
PH: (575) 523-4444
FAX: (575) 523-4440
EMAIL: victor@pouloscoates.com

*Attorneys for Plaintiff*

Logic PD/Tecma
Manufacturing Support Agreement
March 13, 2015

# MANUFACTURING SUPPORT AGREEMENT

THIS MANUFACTURING SUPPORT AGREEMENT (the *"Agreement"*), made effective this
__17th__ day of _____*April*_____ , 2015 (the *"Effective Date"*) and made between
Logic PD, Inc., a Minnesota corporation, having its primary place of business at 6201 Bury
Drive, Eden Prairie, MN  55346, U.S.A ("Logic PD"), and Integrated Maquila Solutions,
L.L.C. a Texas limited liability company and doing business as Tecma, having its headquarters
at 2000 Wyoming Ave., El Paso, Texas, U.S.A. (*"Tecma"*).  (Logic PD and Tecma are individu-
ally each a *"Party"* and, collectively the *"Parties"*).

## R E C I T A L S

**Whereas,** Logic PD desires to *produce*, as defined in Article 1 hereof, the *"Products"*, as de-
fined in Article 1 hereof, at the *"Production Facility"*, as defined in Article 1 hereof, for distribu-
tion and sale in Mexico, the United States and/or other places as decided by Logic PD; and

**Whereas,** Logic PD desires to engage Tecma to provide the *"Support Services"*, as defined in
Article 1 hereof, to assist and support Logic PD in manufacturing, assembling and otherwise
producing the Products at the Production Facility; and

**Whereas,** Tecma possesses and will possess at all times during the *"Term"*, as defined in Arti-
cle 12 hereof, the skill, expertise, resources and capacity necessary to properly and timely per-
form the Support Services, and has and will maintain in effect at all times an IMMEX/*maquila*
program, or any successor program thereof approved by the relevant Government Authorities;
and

**Whereas,** Logic PD will provide the "Production Equipment", as defined in Article 1 hereof,
"Production Tooling", as defined in Article 1 hereof, and "Raw Materials, Packaging Materi-
als, Parts and Components", as defined in Article 1 hereof.

**NOW, THEREFORE,** in consideration of the representations, warranties, covenants, agree-
ments and undertakings hereinafter set forth and for other good and valuable consideration, the
Parties hereto agree as follows:



# ARTICLES

## 1.    DEFINITIONS

When used in this Agreement or any Schedule hereto:

**1.1**    "*Agreement*", "*Effective Date*", "*Logic PD*", "*Tecma*", "*Party*" and "*Parties*" will have the meanings assigned to such terms in the Preamble to this Agreement.

**1.2**    "*Delivery Address*" will have the meaning assigned to such term in Article 3.1 hereof.

**1.3**    "*Commodatum Agreement*" will have the meaning assigned to such term in Article 3.6 hereof.

**1.4**    "*Original Term*", "*Extended Term*" and "*Term*" will have the meanings assigned to such terms in Article 12 hereof.

**1.5**    "*Transition Period*" and "*Transition Fee*" will have the meanings assigned to such terms in Article 13.2 hereof.

**1.6**    The following terms will have the following meanings:

"*Additional Services*" will mean the performance and carrying out of responsibilities, duties and tasks requested by Logic PD that are not required to be performed and carried out by Tecma under the provisions of this Agreement and/or the Commodatum Agreement.  The performance or carrying out of a responsibility, duty or task will be deemed to be a Base Service unless (i) at the time Logic PD requests that Tecma perform or carry out such responsibility, duty or task, Tecma advises Logic PD that it will not be a Base Service, and (ii) Logic PD agrees that performing or carrying out such responsibility, duty or task the requested service will be an Additional Service.  Only a Logic PD Authorized Person may request the performance or carrying out of a responsibility, duty or task that is not a Base Service and agree on behalf of Logic PD that the performance or carrying out of a responsibility, duty or task will be deemed to be an Additional Service if the total charge for performing or carrying out such responsibility, duty or task will exceed Five Hundred U.S. Dollars (USD$500.00).

"*Affiliate*" in reference to either Party means any entity that directly or indirectly controls, is directly or indirectly controlled by, or is directly or indirectly under common control with such Party.

"*Applicable Law*" means any law, statute, code, rule, regulation, consent, decree or other legislative, judicial or administrative act of any Government Authority.

"*Base Services*" means the performance and carrying out of all responsibilities, duties and tasks required to be performed and carried out by Tecma under the provisions of this Agreement and/or the Commodatum Agreement, including, without limitation:

(i)    Performing and carrying out all necessary or desirable dealings with any Government Authority in order to authorize and expedite the performance and carry-

ing out of the operations and activities contemplated by this Agreement, including, but not limited to, obtaining all necessary or desirable permits and bonds.

(ii)    Preparation and filing of all necessary payroll tax, IVA and other tax returns concerning the operations and activities contemplated by this Agreement;

(iii)    Performance of all accounting, bookkeeping and legal services concerning the operations and activities contemplated by this Agreement;

(iv)    Recruitment and employment of the Tecma Personnel who perform and carry out the operations and activities contemplated by this Agreement;

(v)    Preparation of all necessary payroll and preparation and filing all necessary registrations with any Government Authority, including, but not limited to, the Mexican Institute of Social Security, and performance of all other obligations of an employer under Applicable Laws, in respect of all Tecma Personnel;

(vi)    Making (in compliance with all Applicable Laws) and keeping (for the time required by Applicable Laws) of all files and records required by any Government Authority, including, but not limited to, all files and records required by the General Administration of Customs of Mexico and the United States Customs Service, in respect of the performance and carrying out of the operations and activities contemplated by this Agreement;

(vii)    Purchasing–all such items which Logic PD may request in respect of the performance and carrying out of the operations and activities necessary to import Raw Materials, to Produce the Products and export the Products as contemplated by this Agreement, in each case, in compliance with (i) all instructions and directions of Logic PD and (ii) all purchasing and other guidelines, procedures, practices and systems specified by Logic PD;

(ix)    Other activities described in the various provisions of this Agreement; and

(x)    Any other activities that are legally required, or necessary for the Production of the Products.

"**_Caused by Tecma_**" means caused by, attributable to, or resulting from (a) the failure of any Tecma Party to strictly follow and comply with (i) any instruction or direction of Logic PD or (ii) any guideline, procedure, practice or system specified by Logic PD; (b) the negligence or misconduct or any Tecma Party; or (c) a breach or compliance failure by any Tecma Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law.

"**_Caused by Logic PD_**" means caused by, attributable to, or resulting from (a) any Tecma Party strictly following and complying with (without any negligence or misconduct on the part of any Tecma Party and without any breach or compliance failure on the part of any Tecma Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law,) (i) any commercially reasonable instruction or direction of Logic PD or (ii) any guideline, procedure,

practice or system specified by Logic PD; (b) a defect in the design of the Products by Logic PD; (c) the negligence or misconduct of any Logic PD Party; or (d) a breach or compliance failure by any Logic PD Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law.

"*Government Authority*" means any legislative body, ministry, department, court, agency, commission, board, institution or similar governmental or regulatory authority in the United States or Mexico.

"*Headcount Tecma Personnel*" means the Tecma personnel employed at the Production Facility who are directly or indirectly involved in the production of Products. For the avoidance of doubt, the Head Count Tecma Personnel does not include the Shared Tecma Personnel.

"*Tecma Party*" means Tecma, any of its Affiliates, any of its or its Affiliates' contractors or subcontractors of any tier, and any director, officer, manager, partner, member, owner, employee, agent or representative of Tecma, any of its Affiliates, or any of its or its Affiliates" contractors or subcontractors of any tier, including, but not limited to, all Tecma Personnel.

"*Tecma Personnel*" means all Headcount Tecma Personnel and Shared Tecma Personnel, including, without limitation, factory, maintenance, supervisory, administrative, accounting, bookkeeping and human resources personnel, used to provide the Support Services. For the avoidance of doubt, the Tecma Personnel do not include the Logic PD On-Site Personnel.

"*In-Plant Support*" means the Tecma personnel who provide the following types of ancillary services at the Production Facility on a shared basis to both Logic PD and other persons and entities (for clarification, In-Plant Support personnel are not considered Head Count Personnel for billing purposes):

"*IVA*" means Mexican value-added tax.

"*Logic PD Authorized Person*" means the Chief Executive Officer and President of Logic PD, the Chief Financial Officer and any named Vice President of Logic PD, conditioned upon and subject to such limitations and restrictions, if any, as the Chief Executive Officer and President, Chief Financial Officer or a Vice President of Logic PD may advise Tecma in writing such authorization is conditioned upon or made subject to, such other persons as the Chief Executive Officer and President, Chief Financial Officer or a Vice President of Logic PD may from time to time advise Tecma in writing are authorized to give instructions and directions, make decisions, provide consents and approvals, enter into agreements or otherwise act for and on behalf of Logic PD in respect of this Agreement. For the avoidance of doubt, only Logic PD Authorized Persons may give instructions and directions, make decisions, provide consents and approvals, enter into agreements or otherwise act for and on behalf of Logic PD in respect of this Agreement.

"*Logic PD On Site Personnel*" means any and all personnel of Logic PD and its Affiliates that Logic PD might locate from time to time at the Production Facility, without it being required to do so, to supervise, manage and oversee the production of the Products at the Production Facility.

"*Logic PD Party*" means Logic PD, its customers, any of its Affiliates, any of its or its Affiliates' contractors or subcontractors of any tier, and any director, officer, manager, partner, member,

owner, employee, agent or representative of Logic PD, any of its Affiliates, or any of its or its Affiliates' contractors or subcontractors of any tier, including, but not limited to, any Logic PD On Site Personnel.  For the avoidance of doubt, a Logic PD Party does not include any Tecma Party.

"*Lien*" means any lien, claim, security interest, mortgage or encumbrance of any kind.

"*Mexico*" means the United Mexican States.

"*Produce*" or "Production" means to manufacture, assemble or otherwise produce.

"*Products*" means the products that Logic PD from time to time elects to produce at the Production Facility.

"*Product Information*" means all designs, specifications, drawings, processes, methods, procedures, practices, know how, trade secrets, schematics, software and other information concerning the Products and/or the production thereof.

"*Product IP*" means all patents, trademarks, know how, trade secrets and other intellectual property concerning the Products and/or the production thereof.

"*Production Equipment*" means the equipment that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Production Facility*" means the location described in Schedule 1 hereto.

"*Production Tooling*" means the tooling that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Raw Materials, Packaging Materials, Parts and Components*" means the raw materials, packaging materials, parts and components that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Reimbursable Expense*" means the actual cost and IVA incurred by Tecma for the items identified in Schedule 2 hereto as items that may be billed to Logic PD as a Reimbursable Expense, plus a 7% mark-up on such actual cost.

"*Scrap*" means scrap raw materials, packaging materials, parts and components created or arising in connection with the production of Products that are saleable or reusable or require import back into the United States under Applicable Law.

"*Shared Tecma Personnel*" means the Tecma personnel who and other goods to provide the following types of ancillary services at the Production Facility on a shared basis to both Logic PD and other persons and entities.

"*Support Services*" means the Base Services and the Additional Services.

"*United States*" means the United States of America.

## 2.    PRODUCTION OF PRODUCTS

2.1    Tecma will provide Logic PD with all Support Services required to Produce the Products at the Production Facility using the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components supplied by Logic PD. In Producing the Products, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with all specifications, instructions and directions of Logic PD.

2.2    The Products will be stored at the Production Facility until delivery thereof is requested by Logic PD, at which time the Products will be delivered to Logic PD or such other person or entity as it may direct. In caring for, protecting, and safekeeping the Products, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD and (ii) all storage and other guidelines, procedures, practices and systems specified by Logic PD.

## 3.    SUPPLY OF PRODUCTION EQUIPMENT, PRODUCTION TOOLING AND RAW MATERIALS, PARTS AND COMPONENTS

3.1    Logic PD will supply and ship the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components to Tecma at an address in the State of Texas in the United States specified by Tecma (the "*Delivery Address*").

3.2    Tecma will advise Logic PD as to the timing of transportation, importation and delivery of the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components, and will arrange and be responsible for the timely transportation, importation and delivery of the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components from the Delivery Address to the Production Facility and the installation of the Production Equipment and Production Tooling at the Production Facility. In installing the Production Equipment and Production Tooling, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD; (ii) all security, storage, handling and other guidelines, practices and systems specified by Logic PD.; and (iii). the terms of the Commodatum Agreement.

3.3    In caring for, protecting, safekeeping, maintaining and repairing the Production Equipment and Production Tooling and caring for, protecting and safekeeping the Raw Materials, Packaging Materials, Parts and Components, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD. (ii) all security, storage, handling, maintenance, repair and other guidelines,, practices and systems specified by Logic PD; and (iii) the terms of the Commodatum Agreement.

3.4    Unless consented or directed otherwise by Logic PD, the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components will be used solely to produce Products for Logic PD and for no other purpose.

3.5    Logic PD will be responsible for determining the types and amounts of equipment, tooling, and raw materials, parts and components required to produce the Products at the Production Facility. Logic PD will have sole responsibility if the Production Equipment, Production Tooling and Raw Materials, Packaging Materials, Parts and Components it supplies are not sufficient or appropriate.

3.6    Concurrently with the execution of this Agreement, Logic PD and Tecma will execute a Commodatum Agreement (the "*Commodatum Agreement*"), a copy of which is attached hereto as Exhibit A.  The Commodatum Agreement will address more specifically the care, protection, safekeeping, maintenance and repair of the Production Equipment and Production Tooling and the care, protection and safekeeping of the Raw Materials, Packaging Materials, Parts and Components after delivery to at the Delivery Address.  The Commodatum Agreement will include a list of the Production Equipment and Production Tooling and will be supplemented and amended from time to time to reflect additions and deletions to the Production Equipment and Production Tooling.

## 4.    IMPORTATION AND EXPORTATION

4.1    Tecma will arrange and be responsible for (i) the exportation of the Production Equipment, Production Tooling and Raw Materials, Packaging Materials, Parts and Components from the United States to Mexico, and (ii) the importation thereof into Mexico, in accordance with Applicable Laws, and the exportation of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap from Mexico to the United States, and the importation thereof into the United States, in accordance with Applicable Laws.  Tecma will be responsible for the preparation of all documents, including commercial invoices (for customs, and not transfer of title purposes), required by any Government Authority in Mexico in connection with any such exportation and importation and the prompt payment of all applicable customs duties, brokerages fees, bonds, taxes and other charges imposed by any Government Authority in Mexico and by other third parties for private services relating to any such exportation and importation, subject to Tecma' right to be reimbursed therefore to the extent such customs duties, brokerages fees, bonds, taxes and  other charges constitute Reimbursable Expenses.  Tecma will arrange for the services of a competent and duly qualified licensed Mexican customhouse brokerage service in connection with import transactions into Mexico, export transaction from Mexico, and Maquila to Maquila transactions involving the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap, and Logic PD will arrange for the services of a competent and duly qualified licensed United States customhouse brokerage service in connection with import transactions into the United States and export transactions from the United States involving the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap.

4.2    Logic PD will provide Tecma with all such documentation and information as Tecma reasonably requests to enable it to carry out its responsibilities under Article 4.1.

4.3    Tecma will work closely with Logic PD to continuously clarify, monitor and improve the duty classifications for the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap to assure the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap are the lowest possible importation duty rates in both the United States and Mexico in accordance with Applicable Law, on the understanding that Logic PD's obligation in this respect will consist solely of providing the information and documentation that Tecma requests, and that Tecma will be responsible, to Logic PD's exclusion, for the above-mentioned duty classifications.  Without limiting the forgoing, Tecma will use its best efforts and carry out all procedures which may be required in order to reduce the amounts of duties paid, including, but not limited to, obtaining *Sectorial Development Program* (*Programa de Promocion Sectorial*) registrations in Mexico or reclassifying the items in question in case such reclassification is warranted.

**4.4**   Logic PD will be the importer and exporter of record for all United States customs purposes. Tecma will be the importer and exporter of record for all Mexico customs purposes.

## 5.   OWNERSHIP

**5.1**   The Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP are and will at all times be and remain the sole and exclusive property of Logic PD, and no Tecma Party has or will have or acquire any right, claim or interest in or to any of the Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD as a result of or in connection with this Agreement, any Support Services or otherwise.

**5.2**   Tecma will keep the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in its possession or control free and clear of all Liens, including, without limitation, all Liens of contractors or employees, of any Government Authority, any creditor of any Tecma Party, and any person or entity asserting a claim against any Tecma Party.

**5.3**   Tecma will not sell, loan, pledge, mortgage or otherwise part with possession of any of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD in its possession or control, except for the delivery thereof to Logic PD or such other person or entity as it may direct.

**5.4**   Tecma will notify Logic PD within three (3) business days of the filing, recording or assertion of any Lien against any Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD in its possession or control.

**5.5**   The Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in Tecma's possession or control will be turned over and delivered to Logic PD or such other person or entity as it may direct promptly upon its request.

**5.6**   Tecma will indemnify and hold Logic PD harmless for damages, losses, and costs, including attorney's fees incurred by Logic PD as a result of the breach by Tecma of this Section 5.Logic PD will indemnify and hold Tecma harmless for damages, losses, and costs, including attorney's fees incurred by Tecma as a result of the breach by Logic PD of this Section 5.

## 6.   INSURANCE

**6.1**   Logic PD may insure the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap against loss or damage to the extent it deems appropriate in its sole discretion.  The maintenance of any such insurance by Logic PD will not relieve, release or diminish the responsibility or obligation of Tecma to care for, protect and safeguard the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap under Article 3 hereof.

6.2     Tecma will secure and maintain liability insurance covering claims for personal injury, death and property damage Caused by Tecma, with policy limits of not less than US$1,000,000 per occurrence and in the aggregate. Logic PD may also require that Tecma secure and maintain for Logic PD Insurance on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and/or Scrap against loss or damage from a rated Mexican insurance carrier, naming Logic PD as loss payee (the cost of securing and maintaining any such insurance on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap shall be a Reimbursable Expense). The maintenance of any such insurance by Tecma will not relieve, release or diminish the responsibility or obligation to care for, protect and safeguard the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap under Article 3 hereof.

## 7.     TAXES AND IVA CREDIT

7.1     All IVA assessed on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap or Support Services in general by any Government Authority will be paid by Tecma and then reimbursed by Logic PD as a Reimbursable Expense (subject to Section 7.2 below); provided, however, that Logic PD will not be responsible or have any obligation to reimburse Tecma for: (i) interest, penalties or other charges associated with the failure of Tecma to timely pay any tax when due; (ii) income, gain, franchise, withholding, self-employment, payroll and social security taxes of any Tecma or any of its Affiliates; (iii) unemployment and workmen's compensation Insurance of Tecma or any Tecma Affiliate; and (iv) taxes Caused by any Tecma Party. All items described in clauses (i), (ii), (iii) and (iv) above will be the sole responsibility, liability and obligation of Tecma.  Tecma will promptly notify Logic PD of any assessment or claim by a Government Authority arising from the holdover of Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, or Scrap beyond any time period allowed pursuant to Applicable Law.

7.2     Tecma may be able to recover all or part of the IVA in respect of items that Tecma purchases on behalf of Logic PD under this Agreement.  Any such recovery in respect of materials, parts and components used directly in the production of the Products shall inure to the benefit of Logic PD and be paid over to Logic PD within the ten (10) days following such recovery, and any such recovery in respect of supplies and other items not used directly in the production of the Products shall inure to the benefit of Tecma and may be retained by Tecma.

## 8.     SUPPORT SERVICES

8.1     During the Term, Tecma will provide the Support Services.  Tecma will charge Logic PD for the Support Services during the Term as set forth in Schedule 2 hereto.

8.2     Tecma will employ directly all personnel, including, without limitation, factory, maintenance, supervisory, administrative, accounting, bookkeeping and human resources personnel that are used to provide the Support Services.  Tecma will be responsible for ensuring that the Tecma Personnel are sufficient to properly and timely provide the Support Services, including, but not limited to, ensuring that all Tecma Personnel have the training, instruction, background, knowledge and experience necessary to properly and efficiently carry out their respective responsibilities and duties in connection with the provision of the Support Services.  In addition to the training and instruction that Tecma deems to be appropriate, Tecma will give all Tecma Per-

sonnel such additional training and instruction as Logic PD deems to be necessary or desirable to enable Tecma Personnel to properly and timely provide the Support Services.  Tecma will ensure that all Tecma Personnel at all times comply with all Applicable Laws, including, but not limited to, all Applicable Laws in the areas of environment, health and safety

8.3     Tecma will employ only the number and types of Headcount Tecma Personnel directed by Logic PD, including, but not limited to, whether Tecma will employee Headcount Tecma Personnel as full time or part time employees and as hourly wage or salaried employees.  If Logic PD believes that the level of production of the Products necessitates or makes desirable an increase or decrease in the number of Headcount Tecma Personnel, Tecma and Logic PD will consult and confer with each other and the number and types of Headcount Tecma Personnel will be increased or decreased in accordance with the increased or decreased numbers and types to which Logic PD agrees.  In the event that the a decrease in the number of Headcount Tecma Personnel would require the termination of one or more persons employed in a Full-Time Salaried Position, Tecma and Logic PD will consult and confer with each other concerning such termination(s) and the Parties will agree upon the method of negotiation and the estimated amount of the severance payment(s) to such persons.  Once twenty full time employees are employed as Headcount Tecma Personnel, twenty full-time employees will become the minimum number of Headcount Tecma Personnel who will be employed as full-time employees.

8.4     Logic PD will have the right to evaluate, at any time, the quality and timeliness of the Support Services and the Tecma Personnel.  For such purposes, Logic PD and its representatives will have at all times, during business hours, unrestricted access to the Production Facility and the Tecma Personnel and all other Tecma Parties involved in the performance of this Agreement.

8.5     Subject to Applicable Law, Logic PD will have the right to require, at any time, the removal and replacement of any Tecma Personnel.  Whenever Logic PD requires the removal and replacement of any Tecma Personnel, Tecma will promptly remove such person from the provision of the Support Services and replace such person with another person with the training, background, knowledge and experience necessary to properly and efficiently carry out the responsibilities and duties on the removed person, and will assign such person to Tecma' other clients' operations.

8.6     Tecma will promptly notify Logic PD of any dispute or issue with any Tecma Personnel that may delay or interfere with the proper and timely provision of the Support Services.

8.7     Tecma will be solely responsible for all employee relations matters related to Tecma Personnel, including, but not limited to, the hiring and firing of Tecma Personnel.  The terms and conditions of employment of all Tecma Personnel will comply in all respects to the requirements of Applicable Laws, including, but not limited to, the labor and social security laws of Mexico and all directive issued thereunder.

8.8     Tecma will be solely responsible for the payment and provision of, as well as the maintenance of proper records for, all wages, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel. Tecma will ensure that all wages, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel comply at all times with Applicable Laws.  Tecma will ensure that true, timely and accurate records are created and maintained with respect to all Tecma Personnel, and Tecma will further ensure that it complies at all times with Applicable Laws with regard to the hiring and firing of Tecma Personnel.

Tecma will advise Logic PD of the wage rates, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel. Wage rates, salaries, overtime, severance and benefits for Tecma Personnel and changes therein (other than severance and benefits and changes therein required by Applicable Laws) must be approved by Logic PD in writing in advance.

8.9     During the Term, Headcount Tecma Personnel who are full time employees will be used solely to provide Support Services to Logic PD under this Agreement and will not be used to provide services to any other person or entity or for any other purpose.

8.10     During the Term, Logic PD will have the right to locate at the Production Facility from time to time such personnel of Logic PD, Logic PD's customers and its Affiliates as it deems appropriate. Tecma will be responsible for obtaining all necessary Mexican work visas for Logic PD On-Site Personnel. Logic PD On-Site Personnel will have such responsibilities, duties, power and authority in relation to the operations and activities contemplated by this Agreement as Logic PD from time to time determines. Tecma and Tecma Personnel will cooperate with and assist the Logic PD On-Site Personnel in connection with the performance of their responsibilities and duties and the exercise of their power and authority. Tecma understands and agrees that the duties and responsibilities of Logic PD On-Site Personnel will include obtaining experience and knowledge in all aspects of the operation of a Maquila company in Mexico. Logic PD On-Site Personnel will not be deemed to be employees of Tecma and will not be entitled to wages, salaries, severance or benefits from Tecma.

8.11     During the Term: (a) Tecma will not solicit the employment of any Logic PD On Site Personnel without the consent of Logic PD, and (b) except as contemplated by Article 13.2 hereof, Logic PD will not solicit the employment of any Tecma Personnel without the consent of Tecma.

9.      PRODUCTION FACILITY

9.1     In addition to the Support Services, during the Term, Tecma will provide the Production Facility. Tecma will charge Logic PD for the Production Facility during the Term as set forth in Schedule 2 hereto.

9.2     If Logic PD believes that the Production of the Products necessitates or makes desirable a modification, an increase or decrease in the size, or a change in location of the Production Facility, Tecma and Logic PD will consult and confer with each other concerning such action and, to the extent such action is feasible, the Production Facility will be modified, the size of the Production Facility will be increased or decreased and/or the Production Facility will be relocated, with the Parties using their mutual best efforts to minimize the cost and disruption of such action.

9.3     Tecma will arrange and be responsible for advising and instructing Logic PD and any Logic PD On-Site Personnel as to all matters and issues in respect of the operations and activities at the Production Facility that concern compliance with Applicable Laws, including, but not limited to, all Applicable Laws in the areas of labor, customs, IMMEX, tax, environment, health and safety.

9.4     Tecma will arrange and be responsible for keeping and maintaining the Production Facility at all times in a condition ready and suitable for the proper and efficient production of the Products.

**9.5**    Tecma will promptly notify Logic PD of any dispute or issue concerning the Production Facility that may delay or interfere with the proper and timely production of the Products, including, but not limited to, disputes with Tecma Personnel and/or notices issued by any Government Authority.

## 10.    PRODUCT INFORMATION AND PRODUCT IP.

**10.1**    The Product IP will at all times remain the sole property of Logic PD and will be used by Tecma solely to produce the Products for Logic PD and for no other purpose. Tecma will not modify any Product IP without the express written consent of Logic PD. Tecma will not register any rights to any of the Product IP with any Government Authorities on its behalf or for the benefit of any third party.

**10.2**    Tecma Parties will treat as confidential all Product Information and other Information that they may receive from or create for Logic PD in the course of performance of this Agreement, will disclose (only on a confidential need-to-know basis to the Tecma Personnel who need to know and who are informed of Tecma' confidentiality obligations in writing) and use such information only as reasonably required for the proper performance of the Support Services, and will take all reasonable measures to prevent the unauthorized disclosure and use of such information, in the same manner and to the same extent as they hold in confidence their own confidential information, but no less than a commercially reasonable standard.

**10.3**    The originals and any authorized copies of the information mentioned in Section 10.2 above will be returned to Logic PD within thirty (30) days following the termination of this Agreement for any reason.

## 11.    REPRESENTATIONS AND WARRANTIES.

Tecma represents, warrants, and undertakes to Logic PD as follows:

     (i)    Tecma has the requisite power and authority to enter into this Agreement and the Commodatum Agreement and to perform its obligations hereunder and thereunder, and, when executed and delivered, this Agreement and, the Commodatum Agreement will constitute valid, binding and enforceable obligations of Tecma.

     (ii)    Tecma possesses the expertise, skill and resources necessary to properly, efficiently and properly perform the Support Services and its other obligations under this Agreement and the Commodatum Agreement.

     (iii)    The execution and delivery of this Agreement and the Commodatum Agreement by Tecma and the performance of the Support Services and its other obligations under this Agreement and the Commodatum Agreement do not violate or conflict with, and are not prohibited by, any Applicable Laws or any other agreement, contract, commitment, undertaking or obligation to which any Tecma Party is a party or is subject or bound.

(iv)     All Support Services, including, without limitation, all importations and shipments into and all exportations and shipments from Mexico, will be performed and carried out in strict compliance with all Applicable Laws.

(v)     Tecma is aware of and understands the United States Foreign Corrupt Practices Act of 1977, as amended, and United States export controls and trade embargoes, and will comply with all provisions thereof that may be applicable in connection with this Agreement or the performance and carrying out of the Support Services.  Without limiting the forgoing, no portion of any compensation, expense reimbursement or other amount paid to it in connection with this Agreement or the performance and carrying out of the Support Services will be given directly or indirectly as payment to any person or entity, specifically including any official, employee, or representative of any government or governmental agency, as a fee, bribe, kick-back, or other illegal payment.

(vi)     The Tecma Parties shall take any and all actions required to avoid the risk for Logic PD of having a taxable presence (i.e., a permanent establishment) in Mexico as a result of actions or omissions of the Tecma Parties.

## 12.     TERM

The term of this Agreement will begin on the Effective Date and end on the fifth (5th) anniversary of the Effective Date (the *"Original Term"*); provided, however, that Logic PD may in its sole discretion extend the term of this Agreement for up to two successive five (5) year periods (each an *"Extended Term"*).  The *"Term"* includes the Original Term and each Extended Term.  In the event that Logic PD wishes NOT to extend the term of this Agreement for an Extended Term, Logic PD will notify Tecma in writing of Logic PD's desire NOT to extend the term of this Agreement for an Extended Term at least ninety (90) days in advance of the expiration of the Original or Extended Term then in effect, as the case may be.  The provisions of this Agreement and the Commodatum Agreement will apply during each Extended Term, unless agreed otherwise in writing by the Parties.

## 13.     TERMINATION

13.1     The Term may be early terminated by either Party by written notice to the other Party in the event that:

(i)     the other Party breaches any term or condition of this Agreement or the Commodatum Agreement and such breach is not cured within thirty (30) days of the date of written notice of the breach is given to the other Party specifying the circumstances which constitute such breach; or

(ii)     the other Party files or has filed against it a petition in bankruptcy with respect to it, or is adjudged a bankrupt, or becomes insolvent, or makes an assignment for the benefit of the creditors, or discontinues its business, or has a receiver appointed for it or its business who is not discharged within ten (10) days after such appointment.; or

    (iii)    a force majeure prevents the other Party from performing as required by any provision of this Agreement or the Commodatum Agreement for a period in excess of thirty (30) consecutive days  or any period of forty five (45) days in any ninety (90) day period; or

    (iv)    Logic PD decides to cease producing the Products in Mexico.

**13.2**    If Logic PD should desire to continue production of the Products in Mexico after expiration or early termination of the Original Term or any Extended Term, then, there will be a ninety (90) day transition period from the date of expiration or early termination of the Term (the "***Transition Period***"), during which Tecma will advise and assist Logic PD on the transfer and transition of all aspects of the Support services from Tecma to another entity designated by Logic PD that has an IMMEX/*maquila* program or a successor program thereof approved by the relevant Government Authorities, including, but not limited to the Products, the Production Equipment, the Production Tooling, the Raw Materials, Packaging Materials, Parts and Components, in accordance with Applicable Law.

In consideration of the provision of advice and assistance, Logic PD will pay Tecma a transition fee (hereinafter, "***Transition Fee***") equal to one United States dollar and fifty cents (US$1.50) per clock hour actually worked by the Head Count Tecma Personnel as defined in Section 1.6 during the Transition Period.  To the extent requested by Logic PD, Tecma will transfer Headcount Tecma Personnel to Logic PD during the Transition Period by entering into an appropriate employer substitution agreement, notifying the personnel who are being transferred, for them to become workers and employees of the above-mentioned entity designated by Logic PD under the same terms and conditions of employment that they had with Tecma, including the salary and benefits that they had as Tecma Personnel, and registering the employer substitution agreement with the appropriate labor authorities and the Mexican Social Security Institute.  For the avoidance of doubt, Logic PD's sole obligation for services performed during the Transition Period will be payment of the Transition Fee.

In the case of the preceding paragraph, upon Logic PD's request, Tecma will continue providing the services described in this Agreement that Logic PD might indicate to the above-mentioned entity designated by Logic PD under the same terms and conditions in effect on the date of termination of this Agreement.  If requested, Tecma will perform an employer substitution in compliance with Mexican Law

**13.3**    When the Term expires or if the Term is early terminated by Logic PD pursuant to Article 13.1(i), (ii) or (iii), Logic PD's sole obligation will be to pay to Tecma (a) any and all unpaid amounts owed to Tecma under this Agreement for Support Services properly and timely performed and carried out through the date of expiration or termination, including any Reimbursable Expenses which Tecma has properly incurred through the date of expiration or termination, less (b) any and all claims, losses, damages, costs, expenses and injuries incurred by  Logic PD that are Caused by Tecma.

**13.4**    If the Term is early terminated by Logic PD pursuant to Article 13.1(iv) or by Tecma pursuant to section 13.1(i), (ii), or (iii) in addition to paying to Tecma any and all amounts that would be payable to Tecma if the Term were early terminated by Logic PD pursuant to Article 13.1(i) or (ii), Logic PD will (a) reimburse Tecma for any and all severance payments it is required to make pursuant to Applicable  Law for Headcount Tecma Personnel whose employment is

properly terminated pursuant to Applicable Law as a result of the early termination of the Term,
(b) if early terminated during the Original Term or any Extended Term, Logic PD will continue to
pay Tecma the Production Facility Charge as set forth in Schedule 2 hereto for the balance of
the Original Term or Extended Term, and for any long-term agreement with third-party vendors
duly approved by Logic PD that Tecma has committed to on behalf of Logic PD.

**13.5**   When the Term expires or is early terminated, Tecma will promptly prepare and submit
to Logic PD invoices covering all amounts Logic PD is obligated will be to pay to Tecma in con-
nection with the expiration or early termination.

**13.6**   Upon expiration or early termination of the Term, all Production Equipment, Production
Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product
Information and Product IP and any other property of Logic PD in Tecma' possession or control
will be promptly turned over and delivered to Logic PD or such other person or entity as it may
direct.   For the avoidance of doubt, the fact that there are any outstanding invoices from Tecma
that have not been paid by Logic PD or there are any outstanding invoice(s) of Tecma that are
to be payable by Logic PD or that there is any dispute between the Parties of any nature will not
permit Tecma to refuse or delay the turning over or delivery of any such property.

**13.7**   For the avoidance of doubt, the provisions of Articles 1, 2.2, 3.3, 3.4, 4.1, 4.2, 4.4, 5, 6,
7, 8.7, 8.8, 10, 11, 13.4, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 will survive the expira-
tion or early termination of the Term.

## 14.   RELATIONSHIP OF THE PARTIES

Tecma will act at all times as an independent contractor, not as a partner, a joint venture, sub-
sidiary, affiliate, agent, or employee of Logic PD or any of its Affiliates. No Tecma Party will be
entitled to receive or be eligible to participate in any compensation, benefits, privileges or plans
given or extended by Logic PD or any of its Affiliates to their employees.  Tecma will not have
the authority to bind Logic PD to any obligation or agreement with any third party unless specifi-
cally consented to by Logic PD in writing.

Subject to Article 13.2 hereof: (i) Tecma will at all times be the sole employer of all Tecma Per-
sonnel, and (ii) under no circumstances will Logic PD or any of its Affiliates be construed as an
employer or substitute employer of any of the Tecma Personnel or responsible or liable for the
payment or provision of any of the wages, salaries, severance, benefits or income tax or other
withholdings for Tecma Personnel.

Tecma will cause all Tecma Parties to comply with the Tecma Parties' obligations set forth in
this Agreement and other related documents, and Logic PD will cause all Logic PD Parties to
comply with the Logic PD Parties' obligations set forth in this Agreement and other related doc-
uments.

## 15.   INDEMNITY

**15.1**   Tecma will defend, indemnify and hold harmless Logic PD and its Affiliates and their re-
spective directors, officers, managers, partners, members, owners, employees, agents and rep-
resentatives harmless from and against any and all claims, losses, damages, expenses or inju-
ries, whether actual or alleged, including reasonable attorney's fees and other costs of investi-

gation and defense, to the extent Caused by Tecma or brought by any member of the Tecma Personnel.

15.2    Logic PD will defend, indemnify and hold harmless Tecma and its Affiliates and their respective directors, officers, managers, partners, members, owners, employees, agents and representatives harmless from and against any and all claims, losses, damages, expenses or injuries, whether actual or alleged including reasonable attorney's fees and other costs of investigation and defense, to the extent Caused by Logic PD.

## 16.    NOTICES

16.1    Each notice, demand or requests to a Party that is required under the provisions of this Agreement will be in writing, and will be delivered either personally, by registered or certified mail (with return receipt requested), by overnight recognized courier, or by fax (with confirmation of successful transmission), addressed to such Party at the address last designated by it for such purpose and will be deemed to be effective upon the date of such Party's receipt of such notice, demand or request.

16.2    Until a Party designates otherwise by notice given to the other Party, each party's addresses for purpose of notices, demands and requests under the provisions of this Agreement s will be as follows:

To Logic PD:              Logic PD
                          6201 Bury Drive
                          Eden Prairie, MN  55346
                          Attn.:  Chief Financial Officer

To Tecma:                 Integrated Maquila Solutions, L.LC
                          2000 Wyoming Ave.
                          El Paso, Texas  79903, U.S.A.
                          Attn.: K. Alan Russell

## 17.    ASSIGNMENT

This Agreement may not be assigned by Logic PD to a subsidiary, affiliate or third party without the prior written approval of Tecma which will not be unreasonably withheld; provided, however, that no approval will be required in the event of a sale or other transfer of Logic PD's business or the portion thereof involved in the performance of this Agreement, whether by sale of assets, sale of stock, or merger, consolidation or other reorganization.  This Agreement may neither be assigned by Tecma to a subsidiary, affiliate or third party without the prior written approval of Logic PD, which will not be unreasonably withheld.

## 18.    WAIVER

The delay or failure of either Party to exercise any right or remedy hereunder will not be deemed to be a waiver of such right or remedy and the delay of failure of either Party to terminate this Agreement or to pursue any other remedy provided for breach will not be deemed to be a waiver of the right to do so for such breach or any subsequent breach or for the persistence in a breach of a continuous nature.

## 19.   SEVERABILITY

If any provision of this Agreement nonbinding, invalid or unenforceable, the remaining provisions will not be affected thereby, but will continue to be binding, valid and enforceable as if the nonbinding, invalid or unenforceable provision were not a part of this Agreement.

## 20.   GOVERNING LAW

This Agreement will be governed by and construed in accordance with the laws of the State of Texas, United States of America, without reference to its conflicts of law principles that would direct the application of the laws of another jurisdiction, except if proceedings are brought in Ciudad Juarez, Chihuahua, Mexico, in which case the governing laws will be the applicable laws of Mexico.

## 21.   FORCE MAJEURE

Neither Party will be liable for a failure or delay in its performance of this Agreement to the extent such failure or delay in its performance is due to an act of God, act of civil or military authority, fire, epidemic, flood, earthquake, riot, war, terrorist acts, sabotage, labor shortage or dispute, destruction of production facilities, materials unavailability, or other cause beyond the reasonable control of such party's control which lasts for a period of at least ninety (90) days.  In the event of any delay attributable to an event of force majeure, Logic PD may elect to terminate this Agreement and the Commodatum Agreement, or to extend the time for performance affected thereby for a period equal to the time lost by reason of the delay.

## 22.   PARTIES BOUND

This Agreement will be binding upon and enforceable against the Parties and their respective successors and assigns and inure to the benefit of and be enforceable by the Parties their respective permitted successors and assigns.

## 23.   AMENDMENT

No amendment of any provision of this Agreement will be valid unless the same is in writing and signed by the Party to be charged.

## 24.   ENTIRE AGREEMENT

This Agreement  together with the Commodatum Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior understandings or representations by or among the Parties or their Affiliates, written or oral, to the extent related in any way to the subject matter hereof.

In the event of a conflict between the provisions of this Agreement and the provisions of the Commodatum Agreement, the provisions of this Agreement will prevail.

## 25.   COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties, intending to be legally bound, have caused this Agreement to be executed by their duly authorized officers or legal representatives and have executed this Agreement as of the Effective Date.

**INTEGRATED MAQUILA SOLUTIONS, LLC**

By:  K. Alan Russell
Managing Member

Date:  May 27, 2015

**LOGIC PD, INC.**

By:  Sanderson C. Bell
Chief Financial Officer

Date:  April 16, 2015

## Schedule 1

## Production Facility

The Production Facility will be located in Ciudad Juarez, Chihuahua, Mexico, in a building approved by Logic PD.  Production of Products will take place in the building approved by Logic PD (the *"Production Facility"*).

In addition to the Support Services, during the Term, an integral part of the services under this Agreement will be that Tecma will locate, negotiate, conduct environmental due diligence and contract for premises where a manufacturing facility can be situated for the production of Products. Tecma will pay all costs associated with the Production Facility, including lease payments, tenant improvements and utilities, and such payments (excluding any such related to penalties or other charges deriving from the negligent or willful act of Tecma, which will be at the expense of Tecma, will be billed by Tecma to Logic PD, less deposits, as Reimbursable Expenses.  All Reimbursable Expenses related to the Production Facility will be documented with appropriate supporting documentation representing the actual cost, including IVA. Logic PD reserves the right of final approval of the Production Facility and legal agreement governing the use of such Production Facility (the *"Lease"*) prior to execution of the Lease and occupancy.  Any reimbursable expenses under this agreement are subject to audit and shall be only those actual expenses incurred by Tecma, including any offsets, credits, rebates or other forms of adjustment from original invoice.

Tecma will arrange and be responsible for ensuring the Production Facility includes electrical and other utilities, including phone lines and other data and voice services and systems, as requested and approved by Logic PD.

Utilities, maintenance, insurance, grounds and any other cost which fall to the responsibility of the tenant shall be paid by Tecma and handled as Reimbursable Expense to Logic PD.

Maintenance and repairs to the Production Facility will be billed to Logic PD as a Reimbursable Expense.  If the repairs exceed US$500.00 they must be pre-approved by Logic PD.  If performed by in house Tecma maintenance/construction personnel, a labor rate of US$20.00 per hour will apply (without a Service Fee);

All permits, licenses, including, but not limited to, any environmental, health or safety matters, utility installation and contracts, and other costs associated with operating and maintaining the Production Facility operational and compliant with all laws and regulations will be handled as a Reimbursable Expense.

| Facility Cost | Monthly | Yearly |
|---|---|---|
| Base Rent | $0.300 | $3.60 |
| Insurance Recovery | 0.020 | 0.240 |
| Maintenance | 0.050 | 0.600 |
| Property Taxes | 0.015 | 0.180 |
| Industrial Park Fee | 0.001 | 0.012 |
| Sub-Total | 0.386 | 4.632 |
| Management (7%) | 0.027 | 0.324 |
| Total Facility Cost | $0.413 | $4.956 |

# Schedule 2

# Support Services

**Tecma Personnel**

Charges for the Headcount Tecma Personnel will be the Hourly Cost based upon the number of hours actually worked by the Headcount Tecma Personnel each week during the Term in providing Support Services, exclusive of hours Caused by Tecma, plus an Administration Fee determined as set forth below based upon the number of hours actually worked by the Headcount Tecma.

| Headcount | 10-100 | 101-200 |
|---|---|---|
| Headcount Hrs./Week | 480-4,800 | 4,801-9,600 |
| Administration Fee | 27% | 25% |

Subsequently Tecma and Logic PD will establish a monthly review meeting, and mutually agree upon the required Headcount Tecma Personnel, and corresponding Hourly Cost based upon their positions and skill levels and whether they are full-time or part-time.

In the case of each full time or part-time employee, "Hourly Cost" will be based upon (i) in the case of an hourly employee, his or her pre-approved standard hourly wage or, in the case of a salaried employee, his or her pre-approved annual salary, plus (ii) in the case of either an hourly employee or a salaried employee, the cost to Tecma for such employee of the following items, which will always be at market rates:

| Basic Benefits | Fiscal Benefits |
|---|---|
| Vacation Days | Social Security |
| Vacation Premium | Pension Fund |
| Holidays | Housing Program |
| Christmas Bonus | Payroll Tax |
| Savings Fund | |
| Food Coupons | |
| Attendance Bonus | |
| Profit Sharing | |
| Cafeteria Services | |
| Employee Medicine | |
| Personnel Transportation | |
| Employee Uniforms | |

In the case of each part time employee, "Hourly Cost" will be based (i) his or her standard hourly wage plus (ii) the hourly cost to Tecma for such employee of the following items, which will always be at market rates:

"Hourly Cost" will not include any overtime premium unless and except to the extent such overtime was approved in writing by Logic PD.

**In-Plant Support**

As part of this Agreement, Tecma will provide the necessary shared manning to carry out all administrative functions related to the operation.

The charge for In-Plant Support will be according to the following table, and based on hours worked by the Headcount Tecma Personnel each week during the Term:

| Headcount | 10-100 | 101-200 |
|---|---|---|
| Headcount Hours per Week | 480-4,800 | 4,801-9,600 |
| Service Fee for Normal Hours | $ 1.90 | $ 1.70 |
| Service Fee for Overtime Hours | $ 2.20 | $ 2.10 |

If any full time Headcount Tecma Personnel are dismissed by Tecma during the Term at the request of Logic PD and the dismissal was not in any way Caused by Tecma, Logic PD will reimburse Tecma for any severance that Tecma is required to pay to such dismissed full time Headcount Tecma Personnel under Applicable Law, not to exceed the statutory amount required by Applicable Law, and approved by Logic PD.

**Reimbursable Expenses**

Items that qualify as Reimbursable Expenses and will be reimbursed to Tecma as Reimbursable Expenses during the Term are as follows:

- Items identified in this Agreement to be billed to Logic PD as a Reimbursable Expense, including items identified under **Production Facility** above or **Support Services— Communications Systems and Related Equipment** –below to be billed to Logic PD as a Reimbursable Expense.
- Advertisements in local publication and services of employment agencies when authorized by Logic PD in connection with the recruitment of Headcount Tecma Personnel, without the Service Fee
- Sectorial Development Program registrations and reclassification to reduce duties on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap
- Customs duties, brokerages fees, bonds, taxes and other charges in connection with the export from the United States into Mexico or from Mexico into the United States and/or the import into Mexico from the United States or into the United States from Mexico of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap, without the Service Fee.
- Installation and removal of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap when requested by Logic PD (when installation and removal is performed by in house Tecma maintenance personnel, an labor rate of US$20.00 per hour will apply without the Service Fee)
- Repair and replacement of the Production Equipment and Production Tooling when authorized by Logic PD.
- Visas for Logic PD On Site Personnel

Notwithstanding anything to the contrary, no cost or expense Caused by Tecma may be billed to Logic PD as a Reimbursable Expense.

## Customs and Transportation

* Charges for customs and transportation during the Term will be charged to Logic PD at current market rates. Logic PD will be the importer of record for U.S. Customs purposes and will be billed directly for U.S. brokerage.

Customs duties, brokerages fees, bonds, taxes, inspection, classification, and other charges in connection with the export from the United States into Mexico or from Mexico into the United States and/or the import into Mexico from the United States or into the United States from Mexico of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap, without the Service Fee.

## Communication Systems and Related Equipment

For a charge of $200 per month, during the Term, Tecma will provide access to its data communications system and related equipment at the Production Facility allowing cross-border U.S. voice dial tone, data and high speed internet access as follows:

* Production Facility access to up to 2 U.S. lines, and up to 2 Mexico lines, eliminating international long distance charges between Mexico and the U.S. Depending on call traffic, additional lines can be added if needed.
* Incoming calls to U.S. numbers can ring directly into the Production Facility
* Standard telephone features, including voice mail and auto-attendant to answer the phone, if needed.
* Direct intercom access between the Production Facility and the Tecma network in both El Paso and Juarez. Intercom calls are routed internally - no telephone company lines are needed.
* Network connectivity at Production Facility, as well as throughout the Tecma network.
* 4 Business handsets.
* Co-location of all necessary Logic PD base equipment at Tecma's facility, if required.
* Installation of all communications and telephone equipment, configuration and on-going maintenance, including cabling as required.
* I.T. support for telephone system and voice communications system network as needed

Additional IT Support for other items can be provided at US$40.00 per hour.

Additional equipment, if required, will be priced separately.

U.S. telephone and data lines need to be installed at Tecma's El Paso facility, under Logic PD's name and cost. Mexican telephone and data services will be contracted by Tecma and billed to Logic PD as a reimbursable expense.

**Payment**

All amounts properly invoiced to Logic PD for the Production Facility and the Support Services will be due and payable 10 days after Logic PD receives a proper invoice therefore, accompanied by documentation sufficient to support all invoiced amounts.

Unless otherwise agreed by the Parties, Tecma will submit invoices to Logic PD on a weekly basis.

All invoices and payments will be in U.S. Dollars.  Any amounts originally paid or incurred by Tecma in Mexican Pesos will be converted into U.S. Dollars using the Mexican Peso/U.S. Dollar exchange rate of Tecma' principal bank as of 10 am on Monday of the week in which the applicable invoice is issued (or, if Monday is not a day on which Tecma' principal bank is open for business, the next day on which the bank is open for business).

Payments will be made by direct wire transfer to Tecma' account or by check payable to Tecma in accordance with the written payment instructions provided by Tecma.

A service charge of two percent (2%) may be charged on all properly invoiced amounts that are not paid within ten (10) days of the due date, except that no service charge will be applicable as to any item or charge that Logic PD is disputing or for which Logic PD has requested clarification or additional documentation from Tecma.

# Exhibit "A"
## to the Logic PD / Tecma Manufacturing Support Agreement

## COMMODATUM AGREEMENT

THIS COMMODATUM AGREEMENT (this *"Agreement"*), made effective this ___17th___ day of ___April___, 2015 (the *"Effective Date"*) and made between Logic PD, a ___Minnesota___ corporation, having its primary place of business at 6201 Bury Drive, Eden Prairie, MN 55346,("*Logic PD"*), and Integrated Maquila Solutions, L.L.C. a Texas limited liability company and d.b.a Tecma, having its headquarters at 2000 Wyoming Ave., El Paso, Texas, U.S.A. ("*Tecma"*). (Logic PD and Tecma are individually each a *"Party"* and, collectively the *"Parties"*).

## RECITALS

WHEREAS, concurrently with entering into this Agreement, Logic PD and Tecma are entering into a Shelter Services Agreement (the *"Agreement"* ) pursuant to which Tecma will provide Logic PD with the *"Support Services"* required to enable Logic PD to "*produce*" the " *Products*" at the *"Production Facility"*, using the *"Production Equipment"*, *"Production Tooling"*, and *"Raw Materials, Packaging Materials, Parts and Components"* supplied by Logic PD (all the preceding terms in this paragraph, as defined in the Agreement).

WHEREAS, the initial Production Equipment and Production Tooling are listed in Annex 1 hereto, and Annex 1 hereto will be amended and modified from time to time to reflect additions to and deletions from the Production Equipment and Production Tooling (the equipment and tooling listed from time to time in Annex 1 hereto are referred to as the *"Equipment/Tooling"*).

WHEREAS, Logic PD wishes to give the Equipment/Tooling to Tecma in commodatum under and subject to the provisions of this Agreement.

NOW, THEREFORE, in consideration of the representations, warranties, covenants, agreements and undertakings hereinafter set forth and for other good and valuable consideration, the Parties hereto agree as follows:

## ARTICLES

### 1. DEFINITIONS

Capitalized terms used in and not otherwise defined in this Agreement will have the meanings given to them in the Agreement.

### 2. TITLE TO, AND USE OF EQUIPMENT/TOOLING.

Title to each item of the Equipment/Tooling will at all times remain in Logic PD, and Logic PD will at all times be and remain the owner of each item of the Equipment/Tooling. All items of the Equipment/Tooling will be deemed personal property notwithstanding that any item may become affixed to the real estate on which the Production Facility is situated. Tecma will keep the Equipment/Tooling free and clear of all liens, encumbrances, security interests and claims.

Logic PD will provide the Equipment/Tooling to Tecma, upon and subject to the terms and conditions set forth in this Agreement and the Agreement, for the sole purpose of enabling Tecma to fulfill its obligations under the Agreement. Tecma will use the Equipment/Tooling only for that purpose and will use and operate the Equipment/Tooling in a careful and safe manner, under Logic PD's direction, and only within the space, power and environmental conditions, if any, specified by Logic PD.

### 3. DELIVERY OF EQUIPMENT/TOOLING.

Logic PD will deliver the Equipment/Tooling to Tecma in accordance with the terms of the Agreement, or as the Parties might otherwise approve in writing.

For identification purposes, Tecma will retain on the Equipment/Tooling in their original form all labels and other ownership identification indicating that the Equipment/Tooling is owned by and the property of Logic PD. Tecma will also follow all security provisions concerning the Equipment/Tooling contained in the Agreement and as Logic PD might otherwise indicate.

### 4. EXPENSES, TAXES AND FEES.

Except as otherwise set forth in this Agreement and/or the Agreement, the expenses for the use, maintenance, repair and preservation of the Equipment/Tooling will be borne by Logic PD.

Subject to the reimbursement and other provisions of the Agreement, Tecma will pay any and all use taxes, excise taxes, personal property taxes, assessments, employment taxes, and all other governmental exactions of any nature, whether charged to Logic PD or Tecma or others, on or relating to the Equipment/Tooling or the use, registration, shipment, transportation, importation, exportation, delivery, or operation thereof, excepting federal or state income taxes of Logic PD.

### 5. LOCATION AND TITLE OF EQUIPMENT/TOOLING.

The Equipment/Tooling will be located at the Production Facility and will not be removed from the Production Facility without the prior written consent of Logic PD. Tecma will

not sell, assign, lease or encumber in any manner whatsoever the Equipment/Tooling or any rights and obligations it may have or derive from this Agreement.

## 6. PRESERVATION AND MAINTENANCE OF EQUIPMENT/TOOLING.

Subject to the reimbursement and other provisions of the Agreement, Tecma will pay all installation costs with respect to each item of Equipment/Tooling. At all times during the term of this Agreement, Tecma will take all reasonable steps under Logic PD's direction, to care for, protect, maintain and repair each item of Equipment/Tooling in the condition in which it was received by Tecma (reasonable wear and tear expected) and in such condition that it is capable of properly producing the Products, all in accordance with the provisions of the Agreement and any instructions and guidelines provided by Logic PD. With respect to all additions to Equipment/Tooling or repairs thereto, Tecma agrees and acknowledges that:

    (i)    All additions, attachments, accessories, and repairs that may be made to or placed upon the Equipment/Tooling will only be done with the approval of Logic PD and any such additions, attachments, accessories, and repairs will be deemed to become part of the Equipment/Tooling and will be the sole property of Logic PD; and

    (ii)    Subject to the reimbursement and other provisions of the Agreement, Logic PD will direct Tecma to perform the required maintenance and/or repair of any item of Equipment/Tooling after it has been delivered to Tecma.

## 7. RISK OF LOSS OR DAMAGE.

Tecma will be liable to Logic PD for any total or partial loss of the Equipment/Tooling, as well as for any deterioration thereof, except for the deterioration deriving from normal wear and tear, even when such loss or deterioration is a result of Acts of God or force majeure, until the Equipment/Tooling is returned to Logic PD in accordance with the provisions of this Agreement and the Agreement. The Equipment/Tooling is subject to the insurance provisions set forth in the Agreement.

## 8. TERM AND RETURN OF EQUIPMENT/TOOLING.

This Agreement will commence upon the Effective Date and will terminate upon termination of the Agreement. Upon the termination of this Agreement, or Logic PD's request, whatever occurs earlier, Logic PD may elect either to: (i) retake possession of the Equipment/Tooling wherever found and for this purpose it may enter upon the Production Facility and any other property locations of Tecma and remove the same; or (ii) request the return of the Equipment/Tooling, in which case Tecma will be required to so proceed in accordance with the applicable terms hereof, of the Agreement, and of Applicable Law. For the avoidance of doubt, the provisions of Articles 1, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 hereof shall survive the termination of this Agreement.

## 9. RESPONSIBILITY.

Except as may be otherwise set forth herein, Logic PD will not have any responsibility, liability or commitment toward any third party, with respect to their property or their persons, resulting from the possession or use of the Equipment/Tooling, or from the lack of skill in using the Equipment/Tooling, or for any other reason whatsoever. Tecma agrees to indemnify and hold Logic PD harmless with respect to any and all such responsibility, liability or commitment.

## 10. INSPECTION OF EQUIPMENT.

Logic PD reserves the right to inspect the Equipment/Tooling at any time whatsoever, for the purpose of verifying the correct use and operation thereof. Tecma will permit Logic PD to inspect the Equipment/Tooling at any time.

## 11. COMPLIANCE.

Tecma covenants, at its own expense, to comply with all laws, rules, regulations and other legal provisions applicable to the Equipment/Tooling, including, but not limited to, those set forth herein, and to notify Logic PD immediately, in writing, of any claim, demand, litigation, or any other lien, that might affect the Equipment/Tooling or the use thereof.

## 12. RECOVERY OF EQUIPMENT/TOOLING.

Tecma acknowledges that Logic PD will have the right to recover the Equipment/Tooling at any time and Tecma covenants to deliver them to the Customs House of the City of El Paso, upon request by Logic PD in the same condition as when received, subject only to normal wear and tear, all regardless of any then existing breach or default under this Agreement, the Agreement or any other agreement between Logic PD and Tecma or the Guaranty from Logic PD to Tecma and The TECMA Group, LP, or any other agreement between Logic PD and/or any of its Affiliates and Tecma, The TECMA Group, LP and/or any of their Affiliates. All expenses such as Mexican customs fees, export duties, transportation and any other type of expense will be borne exclusively by Logic PD.

## 13. ADDITIONAL UNDERTAKINGS.

Tecma further covenants and agrees to the following:

(i)   Not to modify or duplicate any of the Equipment/Tooling without first obtaining Logic PD's written consent; and

(ii)  Cause Tecma Personnel to act in accordance with the terms and conditions of this Agreement; and

(iii) Take the actions necessary to ensure that third persons are not misled as to who owns the Equipment/Tooling and to ensure that no liens or other security interests are attached to same.

## 14. NOTICES.

Each notice, demand or requests to a Party that is required under the provisions of this Agreement will be in writing, and will be delivered either personally, by registered or certified mail (with return receipt requested), by overnight recognized courier, or by fax (with confirmation of successful transmission), addressed to such Party at the address last designated by it for such purpose and will be deemed to be effective upon the date of such Party's receipt of such notice, demand or request. Until a Party designates otherwise by notice given to the other Party, each party's addresses for purpose of notices, demands and requests under the provisions of this Agreement will be as follows:

Logic PD:
           Logic PD
           6201 Bury Drive,
           Eden Prairie, MN  55346,

           Attn.: Sanderson C. Bell

Tecma:
           Integrated Maquila Solutions L.L.C.
           2000 Wyoming Ave.
           El Paso, Texas 79903, U.S.A.
           Attn: K. Alan Russell

## 15. ASSIGNMENT

This Agreement may not be assigned by Logic PD to a subsidiary, affiliate or third party without the prior written approval of Tecma which will not be unreasonably withheld; provided, however, that no approval will be required in the event of a sale or other transfer of Logic PD's business or the portion thereof involved in the performance of this Agreement, whether by sale of assets, sale of stock, or merger, consolidation or other reorganization. This Agreement may neither be assigned by Tecma to a subsidiary, affiliate or third party without the prior written approval of Logic PD, which will not be unreasonably withheld.

## 16. WAIVER

The delay or failure of either Party to exercise any right or remedy hereunder will not be deemed to be a waiver of such right or remedy and the delay of failure of either Party to terminate this Agreement or to pursue any other remedy provided for breach will not be deemed to be a waiver of the right to do so for such breach or any subsequent breach or for the persistence in a breach of a continuous nature.

## 17. SEVERABILITY

If any provision of this Agreement nonbinding, invalid or unenforceable, the remaining provisions will not be affected thereby, but will continue to be binding, valid and enforceable as if the nonbinding, invalid or unenforceable provision were not a part of this Agreement.

## 18. GOVERNING LAW

This Agreement will be governed by and construed in accordance with the applicable laws in effect in the State of Texas, without reference to their conflicts of law principles that would direct the application of the laws of another jurisdiction. Any suit, action or proceeding with respect to this Agreement may be brought in the competent courts located in the State of Texas and the parties hereby submit to the jurisdiction of such courts for such purposes and waive any objection thereto for any reason, including, but not limited to, a party's present or future domicile, a lack of personal jurisdiction, a claim of inconvenient forum, or otherwise.

## 19. PARTIES BOUND

This Agreement will be binding upon and enforceable against the Parties and their respective successors and assigns and inure to the benefit of and be enforceable by the Parties their respective permitted successors and assigns.

## 20. AMENDMENT

No amendment of any provision of this Agreement will be valid unless the same is in writing and signed by the Party to be charged.

## 21. ENTIRE AGREEMENT/REGISTRATION WITH THE PUBLIC REGISTRY

This Agreement together with the Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior understandings or representations by or among the Parties or their Affiliates, written or oral, to the extent related in any way to the subject matter hereof. In the event of a conflict between the provisions of this Agreement and the provisions of the Agreement, the provisions of the Agreement will prevail.

At Logic PD's request, this Agreement will be translated into Spanish, notarized in Mexico and recorded with the Public Registry of Commerce of the State of Chihuahua, Mexico. In this case, Logic PD will bear the notary public's fees and expenses, as well as the Public Registry's fees.

## 22. COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

## 23. QUIET ENJOYMENT.

So long as Tecma is not in default under this Agreement or the Agreement, Tecma will peacefully and quietly have, hold and enjoy the use of the Equipment/Tooling during the term of this Agreement, upon and subject to the terms and conditions set forth in this Agreement and the Agreement, for the sole purpose of enabling Tecma to fulfill its obligations under the Agreement.

**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused this Agreement to be executed by their duly authorized officers or legal representatives and have executed this Agreement as of the Effective Date.

**LOGIC PD, INC..**

By: Sanderson C. Bell

Its: Chief Financial Officer

Date: April 16, 2015

**INTEGRATED MAQUILA SOLUTIONS, LLC**

By: K. Alan Russell

Managing Member

Date: _____

**Annex 1**

*LIST OF EQUIPMENT/TOOLING*
(As of _____, 2015)

[List Equipment/Tooling]

### FIRST ADDENDUM TO
### THE MANUFACTURING SUPPORT AGREEMENT

KNOW ALL MEN BY THESE PRESENT:  that this First Addendum to the Manufacturing Support Agreement (this "Addendum") is made by and entered into this **1st day of September, 2015** by and between **Logic PD, Inc.**, having its primary place of business at 6201 Bury Drive, Eden Prairie, MN  55346, U.S.A (**"Logic PD"**), and **Integrated Maquila Solutions, L.L.C.** and d.b.a. Tecma, having its headquarters at 2000 Wyoming Ave., El Paso, Texas, U.S.A. (**"Tecma"**).  (Logic PD and Tecma are individually each a **"Party"** and, collectively the **"Parties"**).

### PREMISES

WHEREAS, Tecma and Logic PD did enter into that certain Manufacturing Support Agreement dated as of the 17th day of April, 2015 (the "Agreement") of which is hereby made a part hereof by reference as though fully set forth herein (capitalized terms used but not defined in this Addendum have the meanings set forth in the Agreement);

WHEREAS, the Parties wish to extend the original term of the Logic PD/Tecma commitment relating to the Term as described in Section 12.0 (TERM) of the Agreement in order for the Term to coincide with a certain lease for the Premises executed between Corporacion Industrial de Juarez, S. de R.L. de C.V. and International Manufacturing Solutions Operaciones, S. de R. L. de C.V. on behalf of Logic PD.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

### ARTICLES

1. This First Addendum to the Manufacturing Support Agreement will be effective **September 1st, 2015**

2. In consideration of the above, Logic PD agrees to extend the Term of the Agreement until **April 15, 2021**.  Logic PD may at its sole discretion, extend this agreement for one (1) additional five (5) year term (an "Extended Term" and together would be the "Extended Term") in accordance with the procedures outlined in Article 12.0 of the Agreement.

3. This Addendum constitutes entire agreement between the Parties with respect to the subject matter herein.

4. This First Addendum shall be construed under the laws of the State of Texas.

5. This Addendum shall be binding upon and shall inure to the benefit of the parties hereto and their representatives, successors and assigns.



6. It is understood and agreed that the parties executing this Addendum have read and understood the provisions hereof, and that there are no other conditions, representations, promises or agreements, verbal or otherwise, upon which this Addendum is based, except as expressly provided herein and that the terms of this Addendum are contractual and not mere recital.

7. Any subsequent agreement relative to the subject matter hereof as well as any and all alterations, amendments or changes to this First Addendum or the Agreement shall be invalid unless in writing, dated subsequent to the date hereof and signed by all parties hereto.

8. To the extent there are any inconsistencies between the Agreement, any exhibit attached to the Agreement and this Addendum, the provisions of this Addendum shall in all respects prevail and control.

9. All notices, demands and requests required under this Addendum shall be in writing, and will be properly given if served personally, by facsimile transmittal, by registered or certified mail (return receipt requested), or by overnight courier, addressed to the respective party at the address last designated.  Until the parties designate otherwise, the addresses will be as follows:

    Tecma:              Integrated Maquila Solutions, L.L.C.
                        2000 Wyoming Ave.
                        El Paso, Texas  79903
                        Attn: K. Alan Russell
                        Title: President

    Logic PD:           Logic PD, Inc.
                        6201 Bury Drive
                        Eden Prairie, MN  55346
                        Attn.:  Chief Financial Officer

10. All other terms, conditions and provisions of the Agreement shall continue in full force and effect, except to the extent modified herein.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum in duplicate originals on the date first above written.

INTEGRATED MAQUILA SOLUTIONS, L.L.C.

By:   K. Alan Russell
Title:  Managing Member, President and C.E.O.

LOGIC PD, INC.

By: Sanderson Bell
Title: Chief Financial Officer

## EXHIBIT C: LEASE GUARANTY

THIS GUARANTY, made as of September XX, 2015, by Logic PD, Inc. ("Guarantor") to Corporación Industrial Juárez, S. de R.L. de C.V. ("Landlord"),

### WITNESSETH:

For valuable consideration, receipt of which is acknowledged, and to induce Landlord to enter into the Lease with Tenant, Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Landlord, and agrees fully to pay, perform and discharge, as and when payment, performance and discharge are due, all of the covenants, obligations and liabilities of Tenant under the Lease and all amendments, modifications, renewals, extensions, supplements, substitutions and replacements of the Lease (the "Guaranteed Obligations"). Each individual Guarantor under this Guaranty shall be jointly and severally liable for the Guaranteed Obligations. The obligations of Guarantor under this Guaranty shall be absolute and unconditional and shall continue and remain in full force and effect until all of the Guaranteed Obligations have been fully paid, performed and discharged.

The obligations of Guarantor under this Guaranty shall not be affected, modified or impaired by the occurrence of any of the following events, whether or not with notice to, or the consent of, Guarantor: (a) the waiver, surrender, compromise, settlement, release or termination of any or all of the Guaranteed Obligations; (b) the failure to give notice to Guarantor of the occurrence of an event of default under the Guaranteed Obligations; (c) the extension of the time for the payment, performance or discharge of any or all of the Guaranteed Obligations or the acceptance or making of compositions or other arrangements with Tenant, realizing on any security, or otherwise dealing with Tenant, other parties and any security as Landlord may deem expedient; (d) the amendment or modification (whether material or otherwise) of the Lease or the Guaranteed Obligations in any respect; (e) any failure, omission, delay or lack on the part of Landlord to enforce, assert or exercise any right, power or remedy conferred on Landlord under the Lease; (f) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or adjustment of debts, or other similar proceedings affecting Tenant or Guarantor or any of the assets of either of them; or (g) the release or discharge by operation of law of Tenant from the payment, performance or discharge of any or all of the Guaranteed Obligations. Guarantor acknowledges that Landlord would not enter into the Lease without this Guaranty and that Landlord is relying on this Guaranty.

The obligations of Guarantor under this Guaranty are independent of the Guaranteed Obligations. Guarantor agrees that Landlord shall have the right to proceed against Guarantor directly and independently of Tenant. A separate action may be brought and prosecuted against Guarantor whether or not an action is brought against Tenant or Tenant is joined in any such action. Guarantor authorizes Landlord and Tenant, without notice to, demand of, or consent from Guarantor and without releasing or affecting Guarantor's liability under this Guaranty, from time





to time to amend, modify, renew, extend, supplement or replace the Lease or the Guaranteed Obligations or otherwise change the terms of the Lease or the Guaranteed Obligations, to take and hold security for the Guaranteed Obligations, and to enforce, waive, surrender, impair, compromise or release any such security or any or all of the Guaranteed Obligations or any person or entity liable for any or all of the Guaranteed Obligations. Guarantor shall be and remain bound under this Guaranty notwithstanding any such act or omission by Tenant or Landlord. Guarantor waives all rights to require Landlord to proceed against Tenant, to proceed against or exhaust any security held by Landlord, or to pursue any other remedy in Landlord's power. Landlord shall have the right to exercise any right or remedy it may have against Tenant or any security held by Landlord. Guarantor waives the right, if any, to the benefit of, or to direct the application of, any security held by Landlord. Guarantor waives (a) any defense arising out of any alteration of the Guaranteed Obligations, (b) any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of Guarantor against Tenant or any security held by Landlord, and (c) any defense arising by reason of any disability or other defense of Tenant or by reason of the cessation or reduction from any cause whatsoever of the liability of Tenant other than full payment, performance and discharge of the Guaranteed Obligations. The cessation or reduction of the liability of Tenant for any reason other than full payment, performance and discharge of the Guaranteed Obligations shall not release or affect in any way the liability of Guarantor under this Guaranty.

If Tenant becomes insolvent or is adjudicated bankrupt or files a petition for reorganization, arrangement, composition or similar relief under any present or future provision of any applicable bankruptcy code, or if such a petition is filed against Tenant, or Tenant makes a general assignment for the benefit of creditors, and in any such proceeding any or all of the Guaranteed Obligations are terminated or rejected or any or all of the Guaranteed Obligations are modified or abrogated, Guarantor agrees that Guarantor's liability hereunder shall not thereby be affected or modified and such liability shall continue in full force and effect as if no such action or proceeding had occurred. This Guaranty shall continue to be effective or be reinstated, as the case may be, if any payment of the Guaranteed Obligations must be returned by Landlord upon the insolvency, bankruptcy or reorganization of Tenant, Guarantor, or otherwise, as though such payment had not been made. No payment or performance by Guarantor shall give Guarantor any right of subrogation to any rights or remedies of Landlord against Tenant. Guarantor waives all rights of subrogation to any rights or remedies of Landlord against Tenant and Guarantor waives all other rights of subrogation or reimbursement with respect to Tenant that might otherwise arise from the performance of this Guaranty by Guarantor.

Guarantor assumes the responsibility for being and keeping Guarantor informed of the financial condition of Tenant and of all other circumstances bearing upon the risk of failure to pay, perform or discharge any of the Guaranteed Obligations which diligent inquiry would reveal, and Guarantor agrees that Landlord has no duty to advise Guarantor of information known to Landlord regarding such condition or any such circumstance. Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, Tenant defaults in the payment, performance or discharge of the Guaranteed Obligations. Notwithstanding any such payments and performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by Tenant. It is not necessary for Landlord to



inquire into the capacity, authority or powers of Tenant or the partners, directors, officers, employees or agents acting or purporting to act on behalf of Tenant, and all of the Guaranteed Obligations made or created in reliance upon the purported exercise of such powers shall be guaranteed hereunder. Guarantor hereby subordinates all indebtedness of Tenant to Guarantor now or hereafter held by Guarantor to all indebtedness of Tenant to Landlord. If requested by Landlord, Guarantor shall collect, enforce and receive all such indebtedness of Tenant to Guarantor as trustee for Landlord and Guarantor shall pay such indebtedness to Landlord on account of the indebtedness of Tenant to Landlord, but without otherwise reducing or affecting in any manner the liability of Guarantor under this Guaranty.

Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor and notices of acceptance of this Guaranty. Guarantor agrees to pay all costs and expenses, including reasonable attorneys' fees, which are incurred by Landlord in the enforcement of this Guaranty. Guarantor hereby expressly, irrevocably, fully and forever releases, waives and relinquishes any and all right to receive punitive, exemplary and consequential damages from Landlord (or any past, present or future board member, trustee, director, officer, employee, agent, representative, or advisor of Landlord) in any claim, demand, action, suit, proceeding or cause of action in which Landlord and Guarantor are parties, which in any way (directly or indirectly) arises out of, results from or relates to any of the Guaranteed Obligations or the enforcement of this Guaranty, in each case whether now existing or hereafter arising and whether based on contract or tort or any other legal basis. If any provision of this Guaranty is held to be invalid or unenforceable, the validity or enforceability of the other provisions of this Guaranty shall not be affected. This Guaranty may not be amended or modified in any respect except by a written agreement signed by Guarantor and Landlord. As used in this Guaranty, the singular shall include the plural. This Guaranty shall bind and inure to the benefit of Guarantor and Landlord and their respective personal representatives, heirs, successors and assigns without any notice or consent of Guarantor. This Guaranty shall be governed by and construed in accordance with the laws of the state of Minnesota, USA and shall be enforced in any court sitting in Hennepin County, State of Minnesota, USA.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date specified in the Basic Lease Information.

Logic PD, Inc.

By: Sanderson Bell
Position: Chief Financial Officer



**EXHIBIT D:   REPAIRS AND IMPROVEMENTS TO THE PROPERTY**



ANEXO C: GARANTÍA CORPORATIVA

ESTA GARANTÍA, otorgada el 1 de septiembre de 2015, por Logic PD, Inc. ("Garante") a Corporación Industrial Juárez, S. de R.L. de C.V. ("Arrendador"),

A N T E C E D E N T E S:

Por consideración de valor, recibo de lo cual es reconocido, y para inducir al Arrendador a celebrar el Arrendamiento con el Arrendatario, el Garante en el presente acto garantiza en forma absoluta, incondicional e irrevocable al Arrendador, y se obliga a pagar totalmente, cumplir y descargar, en la forma y tiempo de pago, cumplimiento y descarga como sea debido, todas las obligaciones, compromisos y responsabilidades del Arrendatario bajo el Arrendamiento y todas las enmiendas, modificaciones, renovaciones, prórrogas, suplementos, sustituciones y reemplazos del Arrendamiento (las "Obligaciones Garantizadas"). Cada Garante individual bajo esta Garantía será obligado mancomunado y solidario por las Obligaciones Garantizadas. Las obligaciones del Garante bajo esta Garantía serán absolutas e incondicionales y deberán continuar y permanecer en pleno vigor y efecto hasta que todas las Obligaciones Garantizadas sean totalmente pagadas, cumplidas y descargadas.

Las obligaciones del Garante bajo esta Garantía no deberán ser afectadas, modificadas o impedidas por la ocurrencia de cualquiera de los siguientes sucesos, con o sin notificación a, o la autorización de, el Garante: (a) la renuncia, entrega, compromiso, transacción, liberación o terminación de cualesquier y todas las Obligaciones Garantizadas; (b) la falta de notificación al Garante por la ocurrencia de un caso de incumplimiento bajo las Obligaciones Garantizadas; (c) la prórroga del plazo para el pago, cumplimiento o descarga de cualesquier o todas las Obligaciones Garantizadas o la aceptación o realización de composiciones o demás acuerdos con el Arrendatario, materializadas sobre cualquier garantía, o que de alguna otra forma lidien con el Arrendatario, otras partes y cualquier garantía como el Arrendador pueda considerar expediente; (d) la enmienda o modificación (ya sea material o diversa) del Arrendamiento del Arrendamiento o las Obligaciones Garantizadas en cualquier respecto; (e) cualquier falta, omisión, retraso o falta por parte del Arrendador de ejecutar, determinar o ejercer cualquier derecho, poder o recurso conferido al Arrendador bajo el Arrendamiento; (f) la liquidación voluntaria o involuntaria, disolución, venta o diversa disposición de todos o sustancialmente todos los activos, disposición de activos y responsabilidades, quiebra, insolvencia, concurso, cesión en beneficio de acreedores, reorganización, acuerdo, composición con acreedores o ajuste de deudas, o procedimientos similares que afecten al Arrendatario o al Garante o cualquiera de sus activos; o (g) la liberación o descarga por ministerio de ley del Arrendatario para el pago, cumplimiento o descarga de cualesquiera o todas las Obligaciones Garantizadas. El Garante reconoce que el Arrendador no celebraría el Arrendamiento sin esta Garantía y el Arrendador confía en esta Garantía.

Las obligaciones del Garante bajo esta Garantía son independientes de las Obligaciones Garantizadas. El Garante se obliga a que el Arrendador tendrá el derecho de proceder en contra del Garante directamente e independientemente del Arrendatario. Una acción separada podrá ser interpuesta y procurada en contra del Garante ya sea o no que tal acción sea interpuesta en contra del Arrendatario o el Arrendatario sea incluido en tal acción. El Garante autoriza al Arrendador y al Arrendatario, sin notificación a, demanda de, o autorización del Garante y sin liberar o afectar la responsabilidad del Garante bajo esta Garantía, de tiempo en tiempo a enmendar, modificar, renovar, prorrogar, suplementar o reemplazar el Arrendamiento o las Obligaciones Garantizadas o de alguna otra forma cambiar los términos del Arrendamiento o las Obligaciones Garantizadas, a tomar y mantener garantía para las Obligaciones Garantizadas, y a ejecutar, renunciar, entregar, impedir, comprometer o liberar cualquier tal



garantía o cualesquier y todas las Obligaciones Garantizadas o cualquier persona o entidad responsable por cualesquiera o todas las Obligaciones Garantizadas. El Garante deberá y permanecerá obligado bajo esta Garantía sin perjuicio de tal acto u omisión por el Arrendatario o Arrendador. El Garante renuncia a todos los derechos que requieran al Arrendador proceder en contra del Arrendatario, para proceder en contra de y agotar cualquier garantía que tenga el Arrendador, o para procurar cualquier otro recurso en poder del Arrendador. El Arrendador tendrá el derecho de ejercer el derecho, en su caso, para el beneficio de, o para dirigir la aplicación de, cualquier garantía que tenga el Arrendador. El Garante renuncia (a) a cualquier defensa derivadas de cualquier alteración de las Obligaciones Garantizadas, (b) cualquier defensa derivada de la ausencia, impedimento o pérdida de cualquier derecho de reembolso o subrogación u otro derecho o recurso del Garante en contra del Arrendatario o cualquier garantía que tenga el Arrendador, y (c) cualquier defensa derivada en razón de cualquier incapacidad u otra defensa del Arrendatario o en razón de la cesación o reducción por cualquier causa de la responsabilidad del Arrendatario diversa del pago total, o cumplimiento o descarga de las Obligaciones Garantizadas. La cesación o reducción de la responsabilidad del Arrendatario por cualquier razón distinta del pago total, o cumplimiento o descarga de las Obligaciones Garantizadas no deberá liberar en cualquier forma la responsabilidad del Garante bajo esta Garantía.

Si el Arrendatario resulta insolvente o es determinado en concurso o presenta una solicitud para reorganización, acuerdo, composición o similar remedio bajo cualquier actual o futura disposición de cualquier código de concursos, o si tal solicitud es presentada en contra del Arrendatario, o el Arrendatario realiza una cesión general para el beneficio de acreedores, y en cualquier procedimiento todo cualesquiera o todas las Obligaciones Garantizadas son terminadas o rechazadas o cualesquiera o todas las Obligaciones Garantizadas son modificadas o abrogadas, el Garante se obliga a que la responsabilidad del Garante bajo la presente no deberá consecuentemente ser afectada o modificada y tal responsabilidad continuará en pleno vigor y efecto como si ninguna tal acción o procedimiento hubiera sucedido. Esta Garantía continuará vigente o ser reinstalada, según sea el caso, si cualquier pago de las Obligaciones Garantizadas debe ser devuelto por el Arrendador ante la insolvencia, concurso o reorganización del Arrendatario, Garante, o en forma diversa, como si tal pago no hubiera sido realizado. Ningún pago o cumplimiento del Garante otorgará al Garante algún derecho de subrogación en los derechos o recursos del Arrendador en contra del Arrendatario. El Garante en el presente acto renuncia a todos los derechos de subrogación en cualesquier derechos o recursos del Arrendador en contra del Arrendatario y el Garante renuncia a todos los demás derechos de subrogación o reembolso con respecto al Arrendatario que pudieran de alguna otra forma surgir por el cumplimiento de la presente Garantía por el Garante.

El Garante asume la responsabilidad por ser y mantener al Garante informado de la condición financiera del Arrendatario y por todas las demás circunstancias que implique el riesgo de falta de pago, cumplimiento o descarga de cualquiera de las Obligaciones Garantizadas cuyo cuestionamiento diligente revelaría, y el Garante está de acuerdo en que el Arrendador no tiene deber alguno de informar al Garante por información conocida por el Arrendador con relación a tal condición o cualquier tal circunstancia. El Garante reconoce que se pueden realizar demandas repetidas y sucesivas y los pagos y cumplimiento realizados bajo la presente en respuesta a tales demandas en su tiempo y forma, de tiempo en tiempo, como el Arrendatario incumpla en el pago, cumplimiento o descarga de las Obligaciones Garantizadas. Sin perjuicio de cualesquier tales pagos o cumplimiento bajo el presente, esta Garantía permanecerá en pleno vigor y efecto y deberá aplicar a cualesquier y todos los incumplimientos subsecuentes por el Arrendatario. No es necesario que el Arrendador cuestione la capacidad, facultades y poderes del Arrendatario o los socios, directores, funcionarios, empleados o agentes que actúen o supuestamente actúen en representación del Arrendatario, y todas las Obligaciones Garantizadas realizadas o constituidas en confianza en el supuesto ejercicio de tales poderes deberán ser garantizadas bajo la presente. El Garante en el presente acto subordina todo el endeudamiento del Arrendatario al Garante ahora o en lo sucesivo que tenga el Garante a todo el endeudamiento del Arrendatario frente al Arrendador. Si es solicitado por el Arrendador, el Garante deberá cobrar, ejecutar y recibir todo tal endeudamiento del



Arrendatario frente al Garante como fiduciario del Arrendador y el Garante deberá pagar tal endeudamiento al Arrendador a cuenta del endeudamiento del Arrendatario frente al Arrendador, sin reducir o afectar de alguna otra forma la responsabilidad del Garante bajo esta Garantía.

El Garante en el presente acto renuncia a todas las presentaciones, demandas para cumplimiento, notificaciones de falta de cumplimiento, protesto, notificaciones de protesto, notificaciones de falta de honor y notificaciones de aceptación de la presente Garantía. El Garante se obliga a pagar todos los costos y gastos, incluyendo honorarios razonables de abogados, los cuales sean incurridos por el Arrendador en la ejecución de la presente Garantía. El Garante en el presente acto expresamente, irrevocablemente, plenamente y por siempre libera, renuncia y abandona cualquier y todo derecho de recibir, daños punitivos, ejemplares y consecuenciales del Arrendador (o cualquier pasado, actual o futuro consejero, fiduciario, director, funcionario, empleado, agente, representante, o asesor del Arrendador) en cualquier reclamación, solicitud, acción, demanda, procedimiento o agravio en el cual el Arrendador y el Garante sean parte, el cual de alguna forma surja (directa o indirectamente) de, resulte de o esté relacionado a cualquiera de las Obligaciones Garantizadas o la ejecución de esta Garantía, en cada caso ya sea que ahora existan o que surjan en lo sucesivo y ya sean que estén basados en contrato o responsabilidad extra contractual o cualquier otra fundamentación legal. Si alguna disposición de esta Garantía es determinada como inválida o inejecutable, la validez o ejecutabilidad de las demás disposiciones de esta Garantía no serán afectadas. Esta Garantía no puede ser enmendada o modificada en cualquier respecto salvo mediante acuerdo por escrito firmado por el Garante y el Arrendador. Según se usa en esta Garantía, el singular incluirá al plural. Esta Garantía será obligatoria y redundará para el beneficio del Garante y el Arrendador y sus respectivos representantes personales, herederos, sucesores y cesionarios sin alguna notificación o autorización del Garante. Esta Garantía será regida por e interpretada de conformidad con las leyes del Estado de Minnesota, E.U.A. y será ejecutada en cualquier tribunal con sede en el Condado de Hennepin, Estado de Minnesota, E.U.A.

EN TESTIMONIO DE LO ANTERIOR, el Garante ha celebrado esta Garantía en la fecha especificada en la Información Básica del Arrendamiento.

Logic PD, Inc.

_Sanderson Bell_

Por: Sanderson Bell
Cargo: Director de Finanzas

**ANEXO D:   REPARACIONES Y MEJORAS A LA PROPIEDAD**



# THE STATE OF TEXAS

FILED
NORMA FAVELA BARCELE
DISTRICT CLERK

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

2019 SEP 25  PM 3: 2

EL PASO COUNTY. TEXA

TO: **COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A LOGIC PD**, and may be served with process at **AFFINITY REGISTERED AGENT AND TRUST SERVICES INC, 1610 DES PERES ROAD SUITE 100, ST LOUIS MO 63131** or wherever he/she may be found

DEPUTY

Greetings:

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **346th Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on this the 19th day of September, 2019 by Attorney at Law, VICTOR F POULOS, 1802 AVENIDA DE MESILLA, LAS CRUCES, NM 88005, in this case numbered **2019DCV3781** on the docket of said court, and styled:

**INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA**
**VS**
**COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC F/K/A LOGICPD, INC, LOGIC PD, INC. AND JOHN HUHN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on this the 25th day of September, 2019.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest: ___NORMA FAVELA BARCELEAU___ District Clerk
El Paso County, Texas

By: _____, Deputy
Ashley Nunez

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

## RETURN

Came on hand on _____ day of _____, 20_____, at _____ o'clock
_____M., and executed in _____ County, Texas, by delivering to
each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon
the date of delivery, together with the accompanying true and correct copy of the **PLAINTIFF'S
ORIGINAL PETITION**, at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|------|------|------|------|------|------|------|------|
| | MONTH | DAY | YEAR | Hour | Min. | .M. | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the defendant, _____

_____

The diligence used in finding said defendant, being _____

And the cause of failure to execute this process is: _____

And the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING _____ copy _____ $ _____   _____ Sheriff

                                             _____ County, Texas

        Total _____ $ _____   by _____, Deputy

## CERTIFICATE OF DELIVERY

        I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock _____m. this copy of this instrument.

                                        _____, Sheriff/Agent

                                        _____County, Texas

                        By _____, Deputy/Agent

**SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20_____.**

        **(SEAL)**

                                        _____

                                        **NOTARY PUBLIC, STATE OF TEXAS**

# THE STATE OF TEXAS

FILED
NORMA FAVELA BARCELEAU
DISTRICT CLERK

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

2019 SEP 25 PM 3:31

EL PASO COUNTY. TEXAS

TO: **COMPASS GROUP EQUITY PARTNERS, LLC,** who may be served with process at **AFFINITY REGISTERED AGENT AND TRUST SERVICES INC, 1610 DES PERES ROAD, SUITE 100 ST LOUIS, MO 63131** or wherever he/she may be found

Greetings:

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **346th Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on this the 19th day of September, 2019 by Attorney at Law, VICTOR F POULOS, 1802 AVENIDA DE MESILLA, LAS CRUCES, NM 88005, in this case numbered **2019DCV3781** on the docket of said court, and styled:

**INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA**
**VS**
**COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC F/K/A LOGICPD, INC., LOGIC PD, INC. AND JOHN HUHN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on this the 25th day of September, 2019.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest:  NORMA FAVELA BARCELEAU  District Clerk
El Paso County, Texas

By: _____, Deputy
Ashley Nunez

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

# RETURN

Came on hand on _____ day of _____, 20____, at _____ o'clock
____M., and executed in _____ County, Texas, by delivering to
each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon
the date of delivery, together with the accompanying true and correct copy of the **PLAINTIFF'S
ORIGINAL PETITION** at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|---|---|---|---|---|---|---|---|
| | MONTH | DAY | YEAR | Hour | Min. | ____.M. | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the defendant, _____

_____

The diligence used in finding said defendant, being _____

And the cause of failure to execute this process is: _____

And the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING ____ copy _____ $ _____  _____ Sheriff

_____ County, Texas

         Total _____ $ _____  by _____, Deputy

## CERTIFICATE OF DELIVERY

    I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock ____m. this copy of this instrument.

_____, Sheriff/Agent

_____County, Texas

                 By _____, Deputy/Agent

**SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20____.**

     **(SEAL)**

_____

**NOTARY PUBLIC, STATE OF TEXAS**

FILED
NORMA FAVELA BARCELEAU
DISTRICT CLERK

# THE STATE OF TEXAS   2019 SEP 25   PM 3:37

EL PASO COUNTY, TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

BY _____
DEPUTY

TO: **JOHN HUHN**, who may be served with process at **132 FRONTENAC FIRST, SAINT LOUIS, MO 63131-3220** or wherever he/she may be found

Greetings:

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **346th Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on this the 19th day of September, 2019 by Attorney at Law, VICTOR F POULOS, 1802 AVENIDA DE MESILLA, LAS CRUCES, NM  88005, in this case numbered **2019DCV3781** on the docket of said court, and styled:

**INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA**
**VS**
**COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, COMPASS GROUP EQUITY**
**PARTNERS, LLC F/K/A LOGICPD, INC., LOGIC PD, INC. AND JOHN HUHN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on this the 25th day of September, 2019.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave, RM 103
El Paso, Texas 79901

Attest: ___NORMA FAVELA BARCELEAU___ District Clerk
El Paso County, Texas

By: _____, Deputy
Ashley Nunez

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

## RETURN

Came on hand on _____ day of _____, 20____, at _____ o'clock ____M., and executed in _____ County, Texas, by delivering to each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION**, at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|------|------|------|------|------|------|------|------|
|      | MONTH | DAY | YEAR | Hour | Min. | ____M. | |
|      |      |      |      |      |      |      | |
|      |      |      |      |      |      |      | |
|      |      |      |      |      |      |      | |
|      |      |      |      |      |      |      | |
|      |      |      |      |      |      |      | |

And not executed as to the defendant, _____

_____

The diligence used in finding said defendant, being _____

And the cause of failure to execute this process is: _____

And the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING ____ copy ____ $ _____   _____ Sheriff

_____   _____ County, Texas

Total _____ $ _____   by _____, Deputy

## CERTIFICATE OF DELIVERY

I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock ____m. this copy of this instrument.

_____, Sheriff/Agent

_____County, Texas

By _____, Deputy/Agent

**SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20____.**

**(SEAL)**

_____

**NOTARY PUBLIC, STATE OF TEXAS**

**THE STATE OF TEXAS**

FILED
NORMA FAVELA BARCELEAU
DISTRICT CLERK

2019 SEP 25   PM 3: 37

EL PASO COUNTY TEXAS

BY _____ DEPUTY

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you, or your attorney, do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TO: **LOGIC PD, INC.,** who may be served with process at **AFFINITY REGISTERED AGENT AND TRUST SERVICES INC1610 DES PERES ROAD, SUITE 100 ST. LOUIS, MO 63131** or wherever he/she may be found

Greetings:

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **346th Judicial District Court,** El Paso County, Texas, at the Court House of said County in El Paso, Texas.

Said Plaintiff's Petition was filed in said court on this the 19th day of September, 2019 by Attorney at Law, VICTOR F POULOS, 1802 AVENIDA DE MESILLA, LAS CRUCES, NM  88005, in this case numbered **2019DCV3781** on the docket of said court, and styled:

**INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA**
**VS**
**COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC F/K/A LOGICPD, INC, LOGIC PD, INC. AND JOHN HUHN**

The nature of Plaintiff's demand is fully shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at El Paso, Texas, on this the 25th day of September, 2019.

CLERK OF THE COURT

**NORMA FAVELA BARCELEAU**
District Clerk
El Paso County Courthouse
500 E. San Antonio Ave., RM 103
El Paso, Texas 79901

Attest:   NORMA FAVELA BARCELEAU   District Clerk
El Paso County, Texas

By: _____ , Deputy
Ashley Nunez

Rule 106: "-the citation shall be served by the officer delivering to each defendant, in person, a true copy of the citation with the date of delivery endorsed thereon and with a copy of the petition attached thereto."

# RETURN

Came on hand on _____ day of _____, 20____, at _____ o'clock
____M., and executed in _____ County, Texas, by delivering to
each of the within-named defendants, in person, a true copy of this Citation, having first endorsed thereon
the date of delivery, together with the accompanying true and correct copy of the **PLAINTIFF'S
ORIGINAL PETITION,** at the following times and places, to-wit:

| NAME | DATE | | | TIME | | | Place, and Course and Distance From Court House |
|------|------|------|------|------|------|------|------|
| | MONTH | DAY | YEAR | Hour | Min. | ____M. | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the defendant, _____

_____

The diligence used in finding said defendant, being _____

And the cause of failure to execute this process is: _____

And the information received as to the whereabouts of the said defendant, being _____

FEES—SERVING _____ copy _____ $ _____   _____ Sheriff

                                          _____   _____ County, Texas

        Total _____ $ _____   by _____, Deputy


## CERTIFICATE OF DELIVERY

I do hereby certify that I delivered to _____,

_____ on the _____ day of _____,

20_____, at _____o'clock ____m. this copy of this instrument.

                                          _____, Sheriff/Agent

                                          _____County, Texas

                          By _____, Deputy/Agent


**SUBSCRIBED AND SWORN TO BEFORE ME ON THE _____ DAY OF _____, 20_____.**


        **(SEAL)**

                          _____

                          **NOTARY PUBLIC, STATE OF TEXAS**

CAUSE NUMBER: 2017DCV3781

REQUESTED BY: Peoples & Cortes

PICK UP BY: Prima Rivera

- [ ] ABSTRACT OF JUDGMENT
- [ ] CAPIAS
- [x] CITATION PERSONAL SERVICE  x4
- [ ] CITATION BY CERTIFIED MAIL
- [ ] CITATION NON RESIDENT
- [ ] CITATION BY POSTING
- [ ] CITATION BY PUBLICATION
- [ ] NOTICE TO SHOW CAUSE
- [ ] ORDER OF SALE
- [ ] PROTECTIVE ORDER
- [ ] SUBPOENA(S)
- [ ] TRO
- [ ] WRIT OF ATTACHMENT
- [ ] WRIT OF EXECUTION
- [ ] WRIT OF HABEAS CORPUS
- [ ] WRIT OF POSSESSION
- [ ] OTHER: _____

- [ ] OUTSIDE SERVICE
- [ ] BY DISTRICT CLERK

- [ ] SHERIFF
- [ ] Pauper's Oath
- [x] RUSH

Approved By: _____

For Pick up on: _____

314th

Request Received:

FILED
NORMA FAVELA BARCELEAU
2019 SEP 24 PM 4:49
EL PASO COUNTY, TEXAS
BY _____ DEPUTY

Notes to the Clerk

ISSUED BY: _____ Date: 9/25/19

Attn: The District Clerk's Office is not responsible for any errors after the request is received by the requesting individual. Please review your request for accuracy.

RECEIVED BY: Andrew Cavazos Date: 9/26/19
PLEASE PRINT

FILED
NORMA FAVELA BARCELEAU
DISTRICT CLERK

2019 SEP 26  PM 1: 57

EL PASO COUNTY, TEXAS

BY_____
DEPUTY

# POULOS & COATES LLP
## TRIAL ATTORNEYS

VICTOR F. POULOS, J.D.+
GREIG W. COATES, M.D., J.D.*

TAMMY DIAZ, PARALEGAL
TINA GONZALES, PARALEGAL

_____

+ADMITTED IN TEXAS & NEW MEXICO
+BOARD CERTIFIED PERSONAL INJURY TRIAL LAW
 TEXAS BOARD OF LEGAL SPECIALIZATION
*ADMITTED IN NEW MEXICO

**OFFICES**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005

228 GRIFFIN STREET
SANTA FE, NM 87501

**MAIL ADDRESS**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005
(575) 523-4444
FAX: (575) 523-4440
1 888 478-5424

POULOSCOATES.COM

**September 23, 2019**

**RE: 2019-DCV-3781; <u>INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA VS. COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, ET AL</u>**

To Whom It May Concern,

Please issue a citation to **Compass Electronics Solutions, LLC d/b/a Logic PD** at Affinity Registered Agent and Trust Services, Inc., 1610 Des Peres Road, Suite 100 St. Louis, MO 63131. **Please make all necessary copies and notify me when they are ready for pick up.** A PDF format copy of Plaintiff's Original Petition is attached to this envelope for your records.

Sincerely,
**Poulos & Coates, LLP**


*/s/ Tammy Diaz*_____
**Tammy Diaz, Paralegal**

# POULOS & COATES LLP

### T R I A L   A T T O R N E Y S

VICTOR F. POULOS, J.D.+
GREIG W. COATES, M.D., J.D.*

TAMMY DIAZ, PARALEGAL
TINA GONZALES, PARALEGAL

_____

+ADMITTED IN TEXAS & NEW MEXICO
+BOARD CERTIFIED PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
*ADMITTED IN NEW MEXICO

**OFFICES**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005

228 GRIFFIN STREET
SANTA FE, NM 87501

**MAIL ADDRESS**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005
(575) 523-4444
FAX: (575) 523-4440
1 888 478-5424

POULOSCOATES.COM

**September 23, 2019**

RE: **2019-DCV-3781;** <u>**INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA VS.
COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, ET AL**</u>

To Whom It May Concern,

Please issue a citation to **Compass Group Equity Partners, LLC** at Affinity Registered Agent and Trust Services, Inc., 1610 Des Peres Road, Suite 100 St. Louis, MO 63131. **Please make all necessary copies and notify me when they are ready for pick up.** A PDF format copy of Plaintiff's Original Petition is attached to this envelope for your records.

Sincerely,
**Poulos & Coates, LLP**

_/s/ Tammy Diaz_____
**Tammy Diaz, Paralegal**

# POULOS & COATES LLP
### TRIAL ATTORNEYS

VICTOR F. POULOS, J.D.+
GREIG W. COATES, M.D., J.D.*

TAMMY DIAZ, PARALEGAL
TINA GONZALES, PARALEGAL

_____

+ADMITTED IN TEXAS & NEW MEXICO
+BOARD CERTIFIED PERSONAL INJURY TRIAL LAW
 TEXAS BOARD OF LEGAL SPECIALIZATION
*ADMITTED IN NEW MEXICO

**OFFICES**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005

228 GRIFFIN STREET
SANTA FE, NM 87501

**MAIL ADDRESS**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005
(575) 523-4444
FAX: (575) 523-4440
1 888 478-5424

POULOSCOATES.COM

**September 23, 2019**

**RE: 2019-DCV-3781; <u>INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA VS.
COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, ET AL</u>**

To Whom It May Concern,

     Please issue a citation to **Logic PD, Inc.** at Affinity Registered Agent and Trust Services, Inc.,

1610 Des Peres Road, Suite 100 St. Louis, MO 63131.  **Please make all necessary copies and notify me

when they are ready for pick up.** A PDF format copy of Plaintiff's Original Petition is attached to this

envelope for your records.

                     Sincerely,
                     **Poulos & Coates, LLP**

                     */s/ Tammy Diaz*_____
                     **Tammy Diaz, Paralegal**

## POULOS & COATES LLP
### T R I A L   A T T O R N E Y S

VICTOR F. POULOS, J.D.+
GREIG W. COATES, M.D., J.D.^

TAMMY DIAZ, PARALEGAL
TINA GONZALES, PARALEGAL

––––––––––––––––––––––––––––

+ADMITTED IN TEXAS & NEW MEXICO
+BOARD CERTIFIED PERSONAL INJURY TRIAL LAW
  TEXAS BOARD OF LEGAL SPECIALIZATION
^ADMITTED IN NEW MEXICO

**OFFICES**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005

228 GRIFFIN STREET
SANTA FE, NM 87501

**MAIL ADDRESS**
1802 AVENIDA DE MESILLA
LAS CRUCES, NM 88005
(575) 523-4444
FAX: (575) 523-4440
1 888 478-5424

POULOSCOATES.COM

<br>

**September 23, 2019**

**RE: 2019-DCV-3781; <u>INTEGRATED MAQUILA SOLUTIONS, L.L.C. D/B/A TECMA VS.
COMPASS ELECTRONICS SOLUTIONS, LLC D/B/A LOGIC PD, ET AL</u>**

To Whom It May Concern,

Please issue a citation to **John Huhn** at 132 Frontenac First, Saint Louis, MO 63131-3220. **Please make all necessary copies and notify me when they are ready for pick up.** A PDF format copy of Plaintiff's Original Petition is attached to this envelope for your records.

Sincerely,
**Poulos & Coates, LLP**

*/s/ Tammy Diaz*
**Tammy Diaz, Paralegal**

**IN THE 346TH JUDICIAL DISTRICT COURT
EL PASO COUNTY, TEXAS**

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, | § | |
| L.L.C. D/B/A TECMA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CAUSE NO.: 2019-DCV-3781 |
| | § | |
| COMPASS ELECTRONICS SOLUTIONS, | § | |
| LLC D/B/A LOGIC PD, COMPASS GROUP | § | |
| EQUITY PARTNERS, LLC F/K/A LOGIC | § | |
| PD, INC., LOGIC PD, INC., and JOHN | § | |
| HUHN | § | |
| | § | |
| *Defendants.* | § | |

## JURY DEMAND

**On the 23rd day of September, 2019,** the Plaintiff, has demanded a jury, it is hereby

ordered that the above-styled and numbered cause be placed upon the jury docket on payment of

the jury fee herein.


Respectfully Submitted:


/s/ Victor Poulos

By: _____

**VICTOR F. POULOS**
State Bar No.: 16184700
**ANDREW J. CAVAZOS**
State Bar No.: 24095414

**POULOS & COATES, L.L.P.**
1802 Avenida de Mesilla
Las Cruces, NM 88005
PH: (575) 523-4444
FAX: (575) 523-4440
EMAIL: victor@pouloscoates.com
*Attorneys for Plaintiff*

**IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS**
**THE 346th JUDICIAL DISTRICT**

| | |
|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA,     ) | |
|      ) | |
|   Plaintiff/Counter Defendant,     ) | |
|      ) | |
| v.     ) | Cause No. 2019DCV3781 |
|      ) | |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, INC, and JOHN HUHN,     ) | |
|      ) | |
|   Defendants,     ) | |
|      ) | |
| LOGIC PD, INC.,     ) | |
|      ) | |
|   Counter Plaintiff,     ) | |
|      ) | |
| v.     ) | |
|      ) | |
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA,     ) | |
|      ) | |
|   Counter Defendant.     ) | |

<u>**ORIGINAL ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS OF LOGIC PD, INC.**</u>

TO THE HONORABLE COURT:

      Defendant/Counter Plaintiff, Logic PD, Inc. ("Logic") files this Original Answer, Affirmative Defenses & Counterclaims to the Original Petition of Plaintiff, Integrated Maquila Solutions, L.L.C, d/b/a TECMA ("Tecma"), and would show the Court the following:

<b>GENERAL DENIAL</b>

      1.    Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Logic generally denies each and every allegation in the Original Petition (the "Petition") filed by Tecma, as well as any and all amended or supplemental petitions, and demands strict proof thereof.

## ENTITLEMENT TO ATTORNEY'S FEES

2.      Logic seeks recovery of its attorney's fees, costs, and expenses in this litigation. Logic is entitled to recovery from Tecma the attorney's fees, costs, and expenses that Logic incurred, and will continue to incur, in enforcing its rights and remedies under the contractual agreement made the subject of this lawsuit.[1]

## AFFIRMATIVE DEFENSES

3.      In addition to its general denial, Logic asserts the following defenses without conceding which party bears the burden of proof on such defenses:

4.      Tecma failed to state a claim upon which relief can be granted, and therefore, each of Tecma's claims and causes of action should be dismissed.

5.      Tecma's claims are barred, in whole or in part, because Tecma has failed to allege and prove all conditions precedent to recovery.

6.      Tecma's claims are barred, in whole or in part, by the doctrines of estoppel, quasi-estoppel, waiver, unclean hands, laches, and/or other equitable doctrines.

7.      Logic claims all offsets and credits available to it, which Tecma has failed to credit to the account of Logic and to which Logic is duly and justly entitled.

8.      Tecma is in the possession of production tools and equipment solely owned by Logic ("Logic's Equipment"), of which Logic has demanded return, but which demand has been denied while Tecma fails to credit the value of Logic's Equipment as an offset to any amount claimed due by Logic, which amount is greater than any amount Tecma claims due from Logic.

9.      Tecma's claims are barred, in whole or in part, because Logic's acts and/or omissions were not the cause of Tecma's damages, if any. Rather, Tecma's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and/or entities,

---

[1] A party may recover attorney's fees when such recovery is provided for by statute or contract. *See Holland v. Wal-Mart Stores, Inc.,* S.W.3d 91, 95 (Tex. 1999); *Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 593 (Tex. 1996).

including Tecma–itself, and the acts, omissions, or breaches were intervening and superseding causes of Tecma's damages, if any.

10.    Tecma's claims are barred, in whole or in part, because Tecma failed to mitigate its damages, if any, as required by Texas law.

11.    Tecma acknowledged and agreed Logic was a foreign corporation, domiciled in the State of Minnesota, with its principal office located at 6201 Bury Drive, Eden Prairie, NM, 55346.

12.    Logic is not liable for the acts, omissions, or conduct of other persons or entities not authorized to act on its behalf; pleading further, and in the alternative, Logic is not liable for the acts, omissions, or conduct of its agents who exceeded the scope of their authority.

13.    Tecma's breach of the Manufacturing Support Agreement excuses Logic's performance due to the strict language setting forth Tecma's required performance despite Logic's alleged non-performance or asserted breach of the Manufacturing Support Agreement.

14.    The specifically negotiated terms of the Manufacturing Support Agreement limit Tecma's total recovery to that sum identified by the invoices provided by Tecma to Logic in direct response to Logic's November 1, 2018 notice of termination, being the sum of $312,950.

15.    Tecma's claims may also be barred by additional defenses that may arise during the course of this litigation, which defenses Logic reserves the right to assert.

## PRAYER

16.    WHEREFORE, PREMISES CONSIDERED, Logic asks the Court to enter judgment that Tecma take nothing by its claims and award Logic all relief set forth herein, and all other and further relief, at law or in equity, to which it may be entitled.

## <u>COUNTERCLAIMS</u>

## <u>PARTIES, SERVICE & DISCOVERY CONTROL PLAN</u>

17.    Logic is a foreign corporation, domesticated under the laws of the State of Minnesota, with its principal office located at 6201 Bury Drive, Eden Prairie, MN 55346.

18.     Tecma, an El Paso County, Texas, domiciliary, may be served with process hereof pursuant 21a Tex. R. Civ. P. as an existing party to this litigation.

19.     Logic intends discovery to be conducted under Level 3, Tex. R. Civ. P. 190.4.

### JURISDICTION AND VENUE

20.     The subject matter in controversy is within the jurisdictional limits of this Court, but also within the jurisdictional limits of the United States District Court for the Western District of Texas.

21.     This Court and the United States District Court for the Western District of Texas have personal jurisdiction over Tecma as it has submitted itself to whatever jurisdiction and venue is ultimately employed by a Court of competent jurisdiction by its filing of its Original Petition against Logic in this matter.

### RELIEF SOUGHT

22.     Logic seeks monetary relief of over $1,000,000.00 and non-monetary relief including damages of any kind, penalties, court costs, expenses, prejudgment interest, and attorney fees, and for judgment for all the other relief to which Logic is entitled.[2]

### FACTS

23.     On April 17, 2015, Logic entered into a Manufacturing Support Agreement with Tecma, under which Tecma would provide certain maquila support services in Mexico for Logic, in exchange for monetary compensation (the "Contract").[3] Under the Contract, Logic would provide production tools, equipment, raw materials, scrap, information, packaging materials parts, product intellectual property, and components (collectively, "Logic's Property") which Tecma would utilize in Mexico to produce goods for Logic and ship those goods back to Logic in El Paso, Texas.

---

[2] Tex. R. Civ. P. 47.

[3] *See* Exhibit A: Manufacturing Support Agreement.

24.     Under the terms of the Contract, Logic was afforded the right, without cause, to terminate Tecma's services if Logic decided to cease production of products in Mexico.[4]  Upon such termination, Tecma was required to marshal Logic's Equipment and deliver to Logic in El Paso, Texas.[5]

25.     At no time, under the terms of the Contract, did Tecma ever own or possess any right of title to any of Logic's Equipment.

26.     On November 1, 2018, Logic notified Tecma of its intention to cease production of goods in Ciudad Juárez, Chihuahua, Mexico; thereby, terminating the Contract pursuant to § 13.1(iv).  As provided by the Contract, Logic was required to compensate Tecma a Transition Fee[6] of $1.50 per clock hour actually worked by Tecma during the transition period, as well as compensate Tecma for all services timely and properly performed through the date of termination, as well as all amounts owed for Tecma personal.

27.     Pursuant to § 13.5 of the Contract, upon Logic's notice of termination, Tecma was to promptly prepare and tender to Logic invoices covering all amounts Tecma claimed due from Logic in connection with the early termination of the Contract. Tecma prepared such invoices and delivered them to Logic and good faith negotiations concerning settlement of the amounts claimed due by Tecma ensued; however, following each discussion, the amounts demanded by Tecma increased to a nonsensical point.

28.     On May 17, 2019, Tecma delivered notice of default and termination of the Contract to Logic. On June 27, 2019, Logic responded to Tecma's demand identifying an accord was reached on the sum due by Logic to Tecma; however, Tecma had breached that agreement and failed to comply with its terms.

---

[4] § 13.1(iv), Manufacturing Support Agreement.

[5] § 13.6, Manufacturing Support Agreement.

[6] § 13.2, Manufacturing Support Agreement.

29.     On August 7, 2019, Tecma denied an accord was reached between Logic and Tecma and demanded payment of $387,548.13 in damages.

30.     It is noteworthy that nowhere in any of the demand letters and correspondence from Tecma to Logic is a demand made upon Compass Electronics Solution, LLC ("CES") for payment of Logic's alleged debt. Moreover, Nowhere in Tecma's correspondence does it claim CES breached the Contract.

31.     Under the terms of the Contract, notwithstanding any dispute or argument of any nature, or claimed debt, nothing provides Tecma the right to withhold Logic's Equipment. Notwithstanding demand, Tecma has failed and continues to fail to return Logic's Equipment.

32.     Beyond Tecma's failure to return them, attempts by Logic were made in efforts to retrieve Logic's Equipment from Tecma, but such efforts were thwarted and blocked by Tecma's preventing access to the building containing Logic's Equipment. Moreover, notwithstanding Tecma's preventing Logic's access and removal of its Equipment, Tecma continued to charge storage fees, rentals, and expenses for records audits. Tecma perpetrated a charade to keep the costs increasing and not allow a final resolution of the relationship or re-let Logic's former space in an effort to continue to charge excess fees and mark-up costs for its additional profits, all to the detriment of Logic.

33.     Notwithstanding Texas law requires it to mitigate its damages, Tecma promised, multiple times, it had obtained replacement tenants for the space previously utilized by Logic under the Contract; however, on information and belief, Tecma demanded rentals from Logic even after alleged tenants had occupied Logic's space. Furthermore, Tecma had multiple opportunities to re-lease Logic's space; however, it did not use commercially reasonable efforts to mitigate damages. The sole issue preventing Tecma from reletting Logic's space was Tecma's own action in preventing Logic from removing Logic's Equipment. Effectively, Tecma retook Logic's space, yet continued to charge and demand rent for Logic's non-use of the space.

34.     On information and belief, Tecma negotiated a reduced severance package with its workers who performed services under the Contract for Logic down to 50% of their expected wages, yet Tecma demanded Logic compensate 100% of the wages. Logic is entitled to offsets and credits for the amount of reduced employee severance packages procured by Tecma.

35.     Additionally, Tecma was unjustly enriched for IVA (Mexico's Value Added Tax) ("VAT")  at the expense of Logic, which was obtained by Tecma from Logic's products; however, the Contract limits such recovery by Tecma to specific circumstances, which establish Tecma fraudulently obtained a windfall of $131,844.05 in VAT, which sum belongs to Logic as tax specifically related to products produced by Logic under the Contract.

36.     All conditions necessary and precedent to the filing of this counterclaim have occurred.

**CAUSE OF ACTION—BREACH OF CONTRACTS**

37.     As required by the terms of the Contract, upon Logic's notice of termination, Tecma was required to marshal and deliver Logic's Equipment to Logic. Demand was made upon Tecma for the return of Logic's Equipment; however, Tecma failed to adhere to its covenant, continuing to hold Logic's Equipment for ransom. Tecma's actions in failing to abide by its covenant in the Contract constitutes breach of the Contract for which Logic hereby seeks recovery of actual damages. The value sought by Logic for Logic's Equipment stemming from Tecma's breach of the Contract is the current reasonable value of Logic's Equipment totaling $771,084.59.

38.     As set forth above, subsequent to Logic's termination of the Contract pursuant to § 13.1(iv), an oral accord was reached between Logic and Tecma for payment of the amounts due under the Contract identified by Tecma's delivery of invoices pursuant to § 13.5. The accord was for Logic's delivery of payment to Tecma in settlement of all sums claimed due under the Contract. In compliance with that accord, Logic began delivering weekly payments of $20,000 to Tecma in exchange for Tecma's release of Logic's Equipment; however, subsequent to the accord, Tecma repudiated the terms and demanded additional damages and charges be paid,

while preventing Logic from obtaining its Equipment. Tecma's accord and repudiation thereof constitutes breach of contract for which Logic is entitled to offset and credit for all sum paid thereunder and enforcement thereof, and recovery of attorney's fees.

### CAUSE OF ACTION—CONVERSION

39.     As required by the terms of the Contract, upon Logic's notice of termination, Tecma was required to marshal and deliver Logic's Equipment to Logic. It is without question, as stated in the Contract, Logic's Equipment belong solely to Logic, with Logic possessing absolute ownership and rights to possess Logic's Equipment. After Tecma rejected Logic's demand for return of Logic's Equipment, Tecma assumed and exercised dominion and control over Logic's Equipment in an unauthorized and unlawful manner, to the absolute exclusion of Logic's rights. Tecma's actions constitute conversion under Texas law.[7] Logic seeks recovery from Tecma of the reasonable market value, as of November 1, 2018, of Logic's Equipment resulting from Tecma's conversion thereof, which Logic asserts is $771,084.59.

### CAUSE OF ACTION—DECLARATORY JUDGMENT

40.     Under Chapter 37 of the Texas Civil Practice & Remedies Code, Logic (as Counter Plaintiff) sues Tecma (as Counter Defendant) and seeks a declaratory judgment as set forth herein. A dispute has arisen concerning a written and executed instrument between Logic and Tecma, under which Logic seeks this Court's determination of rights and remedies. Therefore, pursuant to § 37.004 Tex. Civ. Prac. & Rem. Code, Logic seeks a declaratory judgment and would show the Court as follows:

41.     The terms of § 13.6 of the Contract state that no matter the nature of dispute between Tecma and Logic, Tecma will return Logic's Equipment upon request. Logic made such a request and Tecma has failed to comply with its covenant.

42.     The terms of § 13.5 of the Contract state Tecma will, upon termination by Logic,

---

[7] *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex. App.-Corpus Christi 2001, no pet.).

promptly provide invoices covering "all" amounts Logic is obligated to pay Tecma for Logic's early termination of the Contract.

43.     Upon Logic's notice of termination, Tecma submitted invoices to Logic for payment. Discussions thereafter ensued concerning the amounts owed, followed by Tecma increasing the claimed amount subsequent to each discussion. Under the terms of the Contract, Tecma is obligated, limited, bound, and constrained by its negotiated agreement in § 13.5 of the Contract to adhere to the amount invoiced pursuant to that Section. It is clearly outside the scope of the negotiated terms of the Contract for Tecma to hold Logic's Equipment for ransom, provide an accounting of "all" sums claimed due, only to later demand additional sums, with notice that such sums accrue and increase on a daily basis.

44.     Therefore, Logic seeks this Court's declaration of rights under the Contract that:

   a.   Logic's termination of the Contract was a negotiated right thereunder;

   b.   Logic's termination complied with its rights under the Contract;

   c.   Tecma's delivery to Logic of invoices in response to Logic's notice of termination of the Contract limits Tecma's recovery by the specific language set forth in § 13.5 of the Contract, to that amount identified by those invoices initially delivered to Logic, resulting in a maximum recovery cap of $312,950;

   d.   Tecma's failure to deliver Logic's Equipment, after demand, resulted in Tecma's breach of the Contract causing actual damage to Logic totaling $771,084.59; and

   e.   As a result of Tecma's breach of the Contract, Logic is entitled to recovery of the value of Logic's Equipment as of November 1, 2018, totaling $771,084.59;

   f.   Logic is entitled to a credit and offset of $20,000 per week for every payment delivered to Tecma under the terms of the oral agreement settling the debt which has now been made the subject of Tecma's causes of action.

**ATTORNEY'S FEES FOR DECLARATORY JUDGMENT**

45.     Pursuant to Chapter 37 Tex. Civ. Prac. & Rem Code, as a result of Tecma's breach of the Contract and Logic being forced to seek this Court's declaration of rights thereunder, Logic

is entitled to recovery of reasonable and necessary attorney's fees.

## CAUSE OF ACTION—COMMON LAW FRAUD

46.     As required by Texas law, to establish Tecma's common law fraud, Logic will show the trier of fact that (1) Tecma made material representations that were false by demanding and increasing rents, fees, costs, damages, and expenses in exchange for the return of Logic's Equipment while preventing Logic from possessing its Equipment after demand, and retaining VAT to which Tecma was not entitled, (2) Tecma knew Logic was entitled to possession of its Equipment, and demands for payment in exchange therefor were falsely made as positive assertions of fact along with false receipts and statements concerning VAT, (3) Tecma intended to induce Logic to act upon the representations and pay costs, expenses, fees, and damages to which Tecma was not entitled and force Logic to pay which was done by holding Logic's Equipment for ransom retaining VAT to which Tecma was not entitled, and (4) Logic actually and justifiably relied on the representations, which caused injury by payment to Tecma of monies in reliance on negotiated settlement of all costs identified by § 13.5 of the Contract and the loss of use of its Equipment, while Tecma retained VAT totaling $131,844.05.[8] For Tecma's fraud, Logic alleges its damages total, at a minimum, $771,084.59 for the loss of Logic's Equipment, $131,844.05 for Tecma's ill-gotten windfall in VAT, and the value of Tecma's receipt of the difference between the reduce severance packages with employees and that amount demanded by Tecma for Logic's payment of 100% of those packages.

## EXEMPLARY DAMAGES

47.     As a result of Tecma's conduct, Logic is entitled to Exemplary Damages by Chapter 41 Tex. Civ. Prac. & Rem. Code. Logic claims two times the sum of actual damages found by the tier of fact, which Logic asserts should be at least $1,805,725.28 ($771,084.59 + $131,844.05), plus an amount not to exceed $750,000.

---

[8] *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

## CAUSE OF ACTION—TEXAS THEFT LIABILITY ACT

48.     Tecma's conduct in preventing Logic's access to Logic's Goods violates the Texas Theft Liability Act and caused damage to Logic totaling $771,084.59. Based on Tecma's conduct, Logic is entitled to recover punitive damages and its reasonable and necessary attorney's fees. The Texas Theft Liability Act provides recovery of attorney's fees to the prevailing party; therefore, Logic seeks award of reasonable and necessary attorney's fees under the Act from Tecma.[9]

## EXPERT DESIGNATION PURSUANT TO 194.2(f) and 195.2 TEX. R. CIV. P.

49.     Pursuant to Rules 194.2(f) and 195.2 Texas Rules of Civil Procedure, Plaintiff hereby designates the following individuals as expert witnesses for which résumés and/or curricula vitae follow:

| | |
|---|---|
| **EDWARD DEV. BUNN, JR., ESQ.**<br>**FIRTH♦BUNN♦KERR♦NEILL**<br>311 Montana Avenue, Law Center<br>El Paso, Texas 79902<br>(915) 532-7500 | Resume may be found at<br>HTTP://www.FBKNLaw.com<br><br>Edward DeV. Bunn, Jr. is an attorney licensed to practice law in the State of Texas, actively practicing in El Paso County, Texas, and will testify as to reasonable and necessary attorney's fees. |
| **VICTOR M. FIRTH, ESQ.**<br>**FIRTH♦BUNN♦KERR♦NEILL**<br>311 Montana Avenue, Law Center<br>El Paso, Texas 79902<br>(915) 532-7500 | Resume may be found at<br>HTTP://www.FBKNLaw.com<br><br>Victor M. Firth is an attorney licensed to practice law in the State of Texas, actively practicing in El Paso County, Texas, and will testify as to reasonable and necessary attorney's fees. |

## REQUESTS FOR DISCLOSURE TO TECMA

50.     Pursuant to 194 Tex. R. Civ. P., Logic requests you disclose—within 30 days of the service of this request—the information, or material described in Rule 194.2 Tex. R. Civ. P.

---

[9] *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 686 (Tex. App.–Houston [14th Dist.] 2004, no pet.); *see also, Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 706 (Tex. App.–Houston [1st Dist.] 2014, no pet.).

51.     WHEREFORE, Logic prays that upon final hearing hereof, Tecma take nothing pursuant to its Original Petition or any subsequent amended or supplemental petition, and the Court award Logic:

A. The sum of $771,084.59 for Tecma's breach of the Contract;

B. The sum found by the trier of fact for Tecma's breach of the oral accord reached for payment by Logic of $20,000 per week under the original invoices submitted for payment pursuant to § 13.5 of the Contract, resulting in a maximum recovery cap of $312,950; plus

C. The sum of $771,084.59 for Tecma's conversion of Logic's Equipment;

D. The sum of $771,084.59 for Tecma's violation of the Texas Theft Liability Act., plus punitive damages provided for thereunder;

E. The sums of $771,084.59 and $131,844.05 for Tecma's common law fraud;

F. The sum of two times the sum of actual damages found by the tier of fact, being $1,805,725.28, plus an amount not to exceed $750,000 as punitive damages;

G. Declaratory Judgment that:

   a. Tecma's recovery from Logic is specifically limited by that precise sum initially claimed due by its delivery of invoices covering "all" amounts due pursuant to § 13.5 of the Contract promptly after Logic's notice of termination of the Contract, resulting in a maximum recovery cap of $312,950;

   b. Logic's termination of the Contract was a negotiated right thereunder, to which Logic strictly complied;

   c. Tecma's failure to deliver Logic's Equipment, after demand, resulted in Tecma's breach of the Contract, conversion, and/or violation of the Texas Theft Liability Act entitling Logic to punitive damages;

   d. As a result of Tecma's breach of the Contract, conversion, and/or fraud, Logic is entitled to recovery of the value of Logic's Equipment as of November 1, 2018 and VAT, being the sum of $771,084.59 and $131,844.05; and

   e. Logic is entitled to recovery of all reasonable and necessary attorney's fees incurred in this matter either for Tecma's breach of contract pursuant to Chapter 38 Tex. Civ. Prac. & Rem Code and/or Chapter 37 Tex. Civ. Prac. & Rem Code.

H.  All other and reasonable relief which Logic shows itself to be justly entitled, both special and general, at law or in equity.

Respectfully submitted,

**FIRTH♦BUNN♦KERR♦NEILL**
311 Montana Ave., Law Center
El Paso, Texas 79902
Telephone:  915-532-7500
Facsimile:  915-532-7503

By:  _____
Edward DeV. Bunn, Jr.
State Bar No.  24048372
EBunn@FBKNlaw.com

ATTORNEYS FOR LOGIC PD, INC. AND
COMPASS ELECTRONICS SOLUTIONS, LLC

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on this the *21st day of October 2019*, a true and correct copy of the foregoing document was electronically served, by filing with the Court with service requested thereby, on all attorneys and parties identified with the Court for electronic service on record in this matter, and specifically to:

Victor F. Poulos and Andrew J. Cavazos, Poulos & Coates, L.L.P., 1802 Avenida de Mesilla, Las Cruces, New Mexico 88005, via email to: victor@pouloscoates.com.

_____
Edward DeV. Bunn, Jr.

Logic PD/Tecma
Manufacturing Support Agreement
March 13, 2015

# MANUFACTURING SUPPORT AGREEMENT

THIS MANUFACTURING SUPPORT AGREEMENT (the *"Agreement"*), made effective this ___17th___ day of ___April___, 2015 (the *"Effective Date"*) and made between Logic PD, Inc., a Minnesota corporation, having its primary place of business at 6201 Bury Drive, Eden Prairie, MN  55346, U.S.A ("Logic PD"), and Integrated Maquila Solutions, L.L.C. a Texas limited liability company and doing business as Tecma, having its headquarters at 2000 Wyoming Ave., El Paso, Texas, U.S.A. (*"Tecma"*).  (Logic PD and Tecma are individually each a *"Party"* and, collectively the *"Parties"*).

## RECITALS

**Whereas,** Logic PD desires to *produce*, as defined in Article 1 hereof, the *"Products"*, as defined in Article 1 hereof, at the *"Production Facility"*, as defined in Article 1 hereof, for distribution and sale in Mexico, the United States and/or other places as decided by Logic PD; and

**Whereas,** Logic PD desires to engage Tecma to provide the *"Support Services"*, as defined in Article 1 hereof, to assist and support Logic PD in manufacturing, assembling and otherwise producing the Products at the Production Facility; and

**Whereas,** Tecma possesses and will possess at all times during the *"Term"*, as defined in Article 12 hereof, the skill, expertise, resources and capacity necessary to properly and timely perform the Support Services, and has and will maintain in effect at all times an IMMEX/*maquila* program, or any successor program thereof approved by the relevant Government Authorities; and

**Whereas,** Logic PD will provide the "Production Equipment", as defined in Article 1 hereof, "Production Tooling", as defined in Article 1 hereof, and "Raw Materials, Packaging Materials, Parts and Components", as defined in Article 1 hereof.

**NOW, THEREFORE,** in consideration of the representations, warranties, covenants, agreements and undertakings hereinafter set forth and for other good and valuable consideration, the Parties hereto agree as follows:



# ARTICLES

## 1.    DEFINITIONS

When used in this Agreement or any Schedule hereto:

**1.1**    "*Agreement*", "*Effective Date*", "*Logic PD*", "*Tecma*", "*Party*" and "*Parties*" will have the meanings assigned to such terms in the Preamble to this Agreement.

**1.2**    "*Delivery Address*" will have the meaning assigned to such term in Article 3.1 hereof.

**1.3**    "*Commodatum Agreement*" will have the meaning assigned to such term in Article 3.6 hereof.

**1.4**    "*Original Term*" , "*Extended Term*" and "*Term*" will have the meanings assigned to such terms  in Article 12 hereof.

**1.5**    "*Transition Period*" and "*Transition Fee*" will have the meanings assigned to such terms in Article 13.2 hereof.

**1.6**    The following terms will have the following meanings:

"*Additional Services*" will mean the performance and carrying out of responsibilities, duties and tasks requested by Logic PD that are not required to be performed and carried out by Tecma under the provisions of this Agreement and/or the Commodatum Agreement.  The performance or carrying out of a responsibility, duty or task will be deemed to be a Base Service unless (i) at the time Logic PD requests that Tecma perform or carry out such responsibility, duty or task, Tecma advises Logic PD that it will not be a Base Service, and (ii) Logic PD agrees that performing or carrying out such responsibility, duty or task the requested service will be an Additional Service.  Only a Logic PD Authorized Person may request the performance or carrying out of a responsibility, duty or task that is not a Base Service and agree on behalf of Logic PD that the performance or carrying out of a responsibility, duty or task will be deemed to be an Additional Service if the total charge for performing or carrying out such responsibility, duty or task will exceed Five Hundred U.S. Dollars (USD$500.00).

"*Affiliate*" in reference to either Party means any entity that directly or indirectly controls, is directly or indirectly controlled by, or is directly or indirectly under common control with such Party.

 "*Applicable Law*" means any law, statute, code, rule, regulation, consent, decree or other legislative, judicial or administrative act of any Government Authority.

"*Base Services*" means the performance and carrying out of all responsibilities, duties and tasks required to be performed and carried out by Tecma under the provisions of this Agreement and/or the Commodatum Agreement, including, without limitation:

(i)    Performing and carrying out all necessary or desirable dealings with any Government Authority in order to authorize and expedite the performance and carry-

ing out of the operations and activities contemplated by this Agreement, including, but not limited to, obtaining all necessary or desirable permits and bonds.

(ii)     Preparation and filing of all necessary payroll tax, IVA and other tax returns concerning the operations and activities contemplated by this Agreement;

(iii)    Performance of all accounting, bookkeeping and legal services concerning the operations and activities contemplated by this Agreement;

(iv)    Recruitment and employment of the Tecma Personnel who perform and carry out the operations and activities contemplated by this Agreement;

(v)     Preparation of all necessary payroll and preparation and filing all necessary registrations with any Government Authority, including, but not limited to, the Mexican Institute of Social Security, and performance of all other obligations of an employer under Applicable Laws, in respect of all Tecma Personnel;

(vi)    Making (in compliance with all Applicable Laws) and keeping (for the time required by Applicable Laws) of all files and records required by any Government Authority, including, but not limited to, all files and records required by the General Administration of Customs of Mexico and the United States Customs Service, in respect of the performance and carrying out of the operations and activities contemplated by this Agreement;

(vii)   Purchasing–all such items which Logic PD may request in respect of the performance and carrying out of the operations and activities necessary to import Raw Materials, to Produce the Products and export the Products as contemplated by this Agreement, in each case, in compliance with (i) all instructions and directions of Logic PD and (ii) all purchasing and other guidelines, procedures, practices and systems specified by Logic PD;

(ix)    Other activities described in the various provisions of this Agreement; and

(x)     Any other activities that are legally required, or necessary for the Production of the Products.

**"*Caused by Tecma*"** means caused by, attributable to, or resulting from (a) the failure of any Tecma Party to strictly follow and comply with (i) any instruction or direction of Logic PD or (ii) any guideline, procedure, practice or system specified by Logic PD; (ii) the negligence or misconduct or any Tecma Party; or (c) a breach or compliance failure by any Tecma Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law.

**"*Caused by Logic PD*"** means caused by, attributable to, or resulting from (a) any Tecma Party strictly following and complying with (without any negligence or misconduct on the part of any Tecma Party and without any breach or compliance failure on the part of any Tecma Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law,) (i) any commercially reasonable instruction or direction of Logic PD or (ii) any guideline, procedure,

practice or system specified by Logic PD; (b) a defect in the design of the Products by Logic PD; (c) the negligence or misconduct of any Logic PD Party; or (d) a breach or compliance failure by any Logic PD Party with any provision of this Agreement, the Commodatum Agreement, any other contract or agreement related to this Agreement or the Support Services, or with any provision of Applicable Law.

"*Government Authority*" means any legislative body, ministry, department, court, agency, commission, board, institution or similar governmental or regulatory authority in the United States or Mexico.

"*Headcount Tecma Personnel*" means the Tecma personnel employed at the Production Facility who are directly or indirectly involved in the production of Products. For the avoidance of doubt, the Head Count Tecma Personnel does not include the Shared Tecma Personnel.

"*Tecma Party*" means Tecma, any of its Affiliates, any of its or its Affiliates' contractors or subcontractors of any tier, and any director, officer, manager, partner, member, owner, employee, agent or representative of Tecma, any of its Affiliates, or any of its or its Affiliates' contractors or subcontractors of any tier, including, but not limited to, all Tecma Personnel.

"*Tecma Personnel*" means all Headcount Tecma Personnel and Shared Tecma Personnel, including, without limitation, factory, maintenance, supervisory, administrative, accounting, bookkeeping and human resources personnel, used to provide the Support Services. For the avoidance of doubt, the Tecma Personnel do not include the Logic PD On-Site Personnel.

"*In-Plant Support*" means the Tecma personnel who provide the following types of ancillary services at the Production Facility on a shared basis to both Logic PD and other persons and entities (for clarification, In-Plant Support personnel are not considered Head Count Personnel for billing purposes):

"*IVA*" means Mexican value-added tax.

"*Logic PD Authorized Person*" means the Chief Executive Officer and President of Logic PD, the Chief Financial Officer and any named Vice President of Logic PD, conditioned upon and subject to such limitations and restrictions, if any, as the Chief Executive Officer and President, Chief Financial Officer or a Vice President of Logic PD may advise Tecma in writing such authorization is conditioned upon or made subject to, such other persons as the Chief Executive Officer and President, Chief Financial Officer or a Vice President of Logic PD may from time to time advise Tecma in writing are authorized to give instructions and directions, make decisions, provide consents and approvals, enter into agreements or otherwise act for and on behalf of Logic PD in respect of this Agreement. For the avoidance of doubt, only Logic PD Authorized Persons may give instructions and directions, make decisions, provide consents and approvals, enter into agreements or otherwise act for and on behalf of Logic PD in respect of this Agreement.

"*Logic PD On Site Personnel*" means any and all personnel of Logic PD and its Affiliates that Logic PD might locate from time to time at the Production Facility, without it being required to do so, to supervise, manage and oversee the production of the Products at the Production Facility.

"*Logic PD Party*" means Logic PD, its customers, any of its Affiliates, any of its or its Affiliates' contractors or subcontractors of any tier, and any director, officer, manager, partner, member,

owner, employee, agent or representative of Logic PD, any of its Affiliates, or any of its or its Affiliates' contractors or subcontractors of any tier, including, but not limited to, any Logic PD On Site Personnel. For the avoidance of doubt, a Logic PD Party does not include any Tecma Party.

"*Lien*" means any lien, claim, security interest, mortgage or encumbrance of any kind.

"*Mexico*" means the United Mexican States.

"*Produce*" or "Production" means to manufacture, assemble or otherwise produce.

"*Products*" means the products that Logic PD from time to time elects to produce at the Production Facility.

"*Product Information*" means all designs, specifications, drawings, processes, methods, procedures, practices, know how, trade secrets, schematics, software and other information concerning the Products and/or the production thereof.

"*Product IP*" means all patents, trademarks, know how, trade secrets and other intellectual property concerning the Products and/or the production thereof.

"*Production Equipment*" means the equipment that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Production Facility*" means the location described in Schedule 1 hereto.

"*Production Tooling*" means the tooling that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Raw Materials, Packaging Materials, Parts and Components*" means the raw materials, packaging materials, parts and components that Logic PD from time to time determines to be necessary to produce the Products at the Production Facility.

"*Reimbursable Expense*" means the actual cost and IVA incurred by Tecma for the items identified in Schedule 2 hereto as items that may be billed to Logic PD as a Reimbursable Expense, plus a 7% mark-up on such actual cost.

"*Scrap*" means scrap raw materials, packaging materials, parts and components created or arising in connection with the production of Products that are saleable or reusable or require import back into the United States under Applicable Law.

"*Shared Tecma Personnel*" means the Tecma personnel who and other goods to provide the following types of ancillary services at the Production Facility on a shared basis to both Logic PD and other persons and entities.

"*Support Services*" means the Base Services and the Additional Services.

"*United States*" means the United States of America.

## 2.    PRODUCTION OF PRODUCTS

2.1    Tecma will provide Logic PD with all Support Services required to Produce the Products at the Production Facility using the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components supplied by Logic PD.  In Producing the Products, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with all specifications, instructions and directions of Logic PD.

2.2    The Products will be stored at the Production Facility until delivery thereof is requested by Logic PD, at which time the Products will be delivered to Logic PD or such other person or entity as it may direct. In caring for, protecting, and safekeeping the Products, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD and (ii) all storage and other guidelines, procedures, practices and systems specified by Logic PD.

## 3.    SUPPLY OF PRODUCTION EQUIPMENT, PRODUCTION TOOLING AND RAW MATERIALS, PARTS AND COMPONENTS

3.1    Logic PD will supply and ship the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components to Tecma at an address in the State of Texas in the United States specified by Tecma (the "*Delivery Address*").

3.2    Tecma will advise Logic PD as to the timing of transportation, importation and delivery of the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components, and will arrange and be responsible for the timely transportation, importation and delivery of the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components from the Delivery Address to the Production Facility and the installation of the Production Equipment and Production Tooling at the Production Facility.  In installing the Production Equipment and Production Tooling, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD; (ii) all security, storage, handling and other guidelines, practices and systems specified by Logic PD.; and (iii). the terms of the Commodatum Agreement.

3.3    In caring for, protecting, safekeeping, maintaining and repairing the Production Equipment and Production Tooling and caring for, protecting and safekeeping the Raw Materials, Packaging Materials, Parts and Components, Tecma will, and will instruct all Tecma Personnel to, strictly follow and comply with (i) all instructions and directions of Logic PD. (ii) all security, storage, handling, maintenance, repair and other guidelines,, practices and systems specified by Logic PD; and (iii) the terms of the Commodatum Agreement.

3.4    Unless consented or directed otherwise by Logic PD, the Production Equipment, Production Tooling, and Raw Materials, Packaging Materials, Parts and Components will be used solely to produce Products for Logic PD and for no other purpose.

3.5    Logic PD will be responsible for determining the types and amounts of equipment, tooling, and raw materials, parts and components required to produce the Products at the Production Facility.  Logic PD will have sole responsibility if the Production Equipment, Production Tooling and Raw Materials, Packaging Materials, Parts and Components it supplies are not sufficient or appropriate.

3.6    Concurrently with the execution of this Agreement, Logic PD and Tecma will execute a Commodatum Agreement (the "*Commodatum Agreement*"), a copy of which is attached hereto as Exhibit A.  The Commodatum Agreement will address more specifically the care, protection, safekeeping, maintenance and repair of the Production Equipment and Production Tooling and the care, protection and safekeeping of the Raw Materials, Packaging Materials, Parts and Components after delivery to at the Delivery Address.  The Commodatum Agreement will include a list of the Production Equipment and Production Tooling and will be supplemented and amended from time to time to reflect additions and deletions to the Production Equipment and Production Tooling.

## 4.    IMPORTATION AND EXPORTATION

4.1    Tecma will arrange and be responsible for (i) the exportation of the Production Equipment, Production Tooling and Raw Materials, Packaging Materials, Parts and Components from the United States to Mexico, and (ii) the importation thereof into Mexico, in accordance with Applicable Laws, and the exportation of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap from Mexico to the United States, and the importation thereof into the United States, in accordance with Applicable Laws.  Tecma will be responsible for the preparation of all documents, including commercial invoices (for customs, and not transfer of title purposes), required by any Government Authority in Mexico in connection with any such exportation and importation and the prompt payment of all applicable customs duties, brokerages fees, bonds, taxes and other charges imposed by any Government Authority in Mexico and by other third parties for private services relating to any such exportation and importation, subject to Tecma' right to be reimbursed therefore to the extent such customs duties, brokerages fees, bonds, taxes and  other charges constitute Reimbursable Expenses.  Tecma will arrange for the services of a competent and duly qualified licensed Mexican customhouse brokerage service in connection with import transactions into Mexico, export transaction from Mexico, and Maquila to Maquila transactions involving the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap, and Logic PD will arrange for the services of a competent and duly qualified licensed United States customhouse brokerage service in connection with import transactions into the United States and export transactions from the United States involving the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap.

4.2    Logic PD will provide Tecma with all such documentation and information as Tecma reasonably requests to enable it to carry out its responsibilities under Article 4.1.

4.3    Tecma will work closely with Logic PD to continuously clarify, monitor and improve the duty classifications for the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap to assure the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap are the lowest possible importation duty rates in both the United States and Mexico in accordance with Applicable Law, on the understanding that Logic PD's obligation in this respect will consist solely of providing the information and documentation that Tecma requests, and that Tecma will be responsible, to Logic PD's exclusion, for the above-mentioned duty classifications.  Without limiting the forgoing, Tecma will use its best efforts and carry out all procedures which may be required in order to reduce the amounts of duties paid, including, but not limited to, obtaining *Sectorial Development Program* (*Programa de Promocion Sectorial*) registrations in Mexico or reclassifying the items in question in case such reclassification is warranted.

**4.4**    Logic PD will be the importer and exporter of record for all United States customs purposes. Tecma will be the importer and exporter of record for all Mexico customs purposes.

## 5.    OWNERSHIP

**5.1**    The Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP are and will at all times be and remain the sole and exclusive property of Logic PD, and no Tecma Party has or will have or acquire any right, claim or interest in or to any of the Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD as a result of or in connection with this Agreement, any Support Services or otherwise.

**5.2**    Tecma will keep the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in its possession or control free and clear of all Liens, including, without limitation, all Liens of contractors or employees, of any Government Authority, any creditor of any Tecma Party, and any person or entity asserting a claim against any Tecma Party.

**5.3**    Tecma will not sell, loan, pledge, mortgage or otherwise part with possession of any of the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD in its possession or control, except for the delivery thereof to Logic PD or such other person or entity as it may direct.

**5.4**    Tecma will notify Logic PD within three (3) business days of the filing, recording or assertion of any Lien against any Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information or Product IP or any other property of Logic PD in its possession or control.

**5.5**    The Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in Tecma's possession or control will be turned over and delivered to Logic PD or such other person or entity as it may direct promptly upon its request.

**5.6**    Tecma will indemnify and hold Logic PD harmless for damages, losses, and costs, including attorney's fees incurred by Logic PD as a result of the breach by Tecma of this Section 5. Logic PD will indemnify and hold Tecma harmless for damages, losses, and costs, including attorney's fees incurred by Tecma as a result of the breach by Logic PD of this Section 5.

## 6.    INSURANCE

**6.1**    Logic PD may insure the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap against loss or damage to the extent it deems appropriate in its sole discretion.  The maintenance of any such insurance by Logic PD will not relieve, release or diminish the responsibility or obligation of Tecma to care for, protect and safeguard the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap under Article 3 hereof,

**6.2** Tecma will secure and maintain liability insurance covering claims for personal injury, death and property damage Caused by Tecma, with policy limits of not less than US$1,000,000 per occurrence and in the aggregate. Logic PD may also require that Tecma secure and maintain for Logic PD insurance on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and/or Scrap against loss or damage from a rated Mexican insurance carrier, naming Logic PD as loss payee (the cost of securing and maintaining any such insurance on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap shall be a Reimbursable Expense). The maintenance of any such insurance by Tecma will not relieve, release or diminish the responsibility or obligation to care for, protect and safeguard the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products and Scrap under Article 3 hereof.

## 7.    TAXES AND IVA CREDIT

**7.1** All IVA assessed on the Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap or Support Services in general by any Government Authority will be paid by Tecma and then reimbursed by Logic PD as a Reimbursable Expense (subject to Section 7.2 below); provided, however, that Logic PD will not be responsible or have any obligation to reimburse Tecma for: (i) interest, penalties or other charges associated with the failure of Tecma to timely pay any tax when due; (ii) income, gain,  franchise, withholding, self-employment, payroll and social security taxes of any Tecma or any of its Affiliates; (iii) unemployment and workmen's compensation insurance of Tecma or any Tecma Affiliate; and (iv) taxes Caused by any Tecma Party. All items described in clauses (i), (ii), (iii) and (iv) above will be the sole responsibility, liability and obligation of Tecma. Tecma will promptly notify Logic PD of any assessment or claim by a Government Authority arising from the holdover of Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, or Scrap beyond any time period allowed pursuant to Applicable Law.

**7.2** Tecma may be able to recover all or part of the IVA in respect of items that Tecma purchases on behalf of Logic PD under this Agreement.  Any such recovery in respect of materials, parts and components used directly in the production of the Products shall inure to the benefit of Logic PD and be paid over to Logic PD within the ten (10) days following such recovery, and any such recovery in respect of supplies and other items not used directly in the production of the Products shall inure to the benefit of Tecma and may be retained by Tecma.

## 8.    SUPPORT SERVICES

**8.1** During the Term, Tecma will provide the Support Services.  Tecma will charge Logic PD for the Support Services during the Term as set forth in Schedule 2 hereto.

**8.2** Tecma will employ directly all personnel, including, without limitation, factory, maintenance, supervisory, administrative, accounting, bookkeeping and human resources personnel that are used to provide the Support Services.  Tecma will be responsible for ensuring that the Tecma Personnel are sufficient to properly and timely provide the Support Services, including, but not limited to, ensuring that all Tecma Personnel have the training, instruction, background, knowledge and experience necessary to properly and efficiently carry out their respective responsibilities and duties in connection with the provision of the Support Services.  In addition to the training and instruction that Tecma deems to be appropriate, Tecma will give all Tecma Per-

sonnel such additional training and instruction as Logic PD deems to be necessary or desirable to enable Tecma Personnel to properly and timely provide the Support Services. Tecma will ensure that all Tecma Personnel at all times comply with all Applicable Laws, including, but not limited to, all Applicable Laws in the areas of environment, health and safety

8.3    Tecma will employ only the number and types of Headcount Tecma Personnel directed by Logic PD, including, but not limited to, whether Tecma will employee Headcount Tecma Personnel as full time or part time employees and as hourly wage or salaried employees. If Logic PD believes that the level of production of the Products necessitates or makes desirable an increase or decrease in the number of Headcount Tecma Personnel, Tecma and Logic PD will consult and confer with each other and the number and types of Headcount Tecma Personnel will be increased or decreased in accordance with the increased or decreased numbers and types to which Logic PD agrees. In the event that the a decrease in the number of Headcount Tecma Personnel would require the termination of one or more persons employed in a Full-Time Salaried Position, Tecma and Logic PD will consult and confer with each other concerning such termination(s) and the Parties will agree upon the method of negotiation and the estimated amount of the severance payment(s) to such persons. Once twenty full time employees are employed as Headcount Tecma Personnel, twenty full-time employees will become the minimum number of Headcount Tecma Personnel who will be employed as full-time employees.

8.4    Logic PD will have the right to evaluate, at any time, the quality and timeliness of the Support Services and the Tecma Personnel. For such purposes, Logic PD and its representatives will have at all times, during business hours, unrestricted access to the Production Facility and the Tecma Personnel and all other Tecma Parties involved in the performance of this Agreement.

8.5    Subject to Applicable Law, Logic PD will have the right to require, at any time, the removal and replacement of any Tecma Personnel. Whenever Logic PD requires the removal and replacement of any Tecma Personnel, Tecma will promptly remove such person from the provision of the Support Services and replace such person with another person with the training, background, knowledge and experience necessary to properly and efficiently carry out the responsibilities and duties on the removed person, and will assign such person to Tecma' other clients' operations.

8.6    Tecma will promptly notify Logic PD of any dispute or issue with any Tecma Personnel that may delay or interfere with the proper and timely provision of the Support Services.

8.7    Tecma will be solely responsible for all employee relations matters related to Tecma Personnel, including, but not limited to, the hiring and firing of Tecma Personnel. The terms and conditions of employment of all Tecma Personnel will comply in all respects to the requirements of Applicable Laws, including, but not limited to, the labor and social security laws of Mexico and all directive issued thereunder.

8.8    Tecma will be solely responsible for the payment and provision of, as well as the maintenance of proper records for, all wages, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel. Tecma will ensure that all wages, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel comply at all times with Applicable Laws. Tecma will ensure that true, timely and accurate records are created and maintained with respect to all Tecma Personnel, and Tecma will further ensure that it complies at all times with Applicable Laws with regard to the hiring and firing of Tecma Personnel.

Tecma will advise Logic PD of the wage rates, salaries, severance, benefits and income tax and other withholdings for Tecma Personnel.  Wage rates, salaries, overtime, severance and benefits for Tecma Personnel and changes therein (other than severance and benefits and changes therein required by Applicable Laws) must be approved by Logic PD in writing in advance.

8.9     During the Term, Headcount Tecma Personnel who are full time employees will be used solely to provide Support Services to Logic PD under this Agreement and will not be used to provide services to any other person or entity or for any other purpose.

8.10    During the Term, Logic PD will have the right to locate at the Production Facility from time to time such personnel of Logic PD, Logic PD's customers and its Affiliates as it deems appropriate.  Tecma will be responsible for obtaining all necessary Mexican work visas for Logic PD On-Site Personnel. Logic PD On-Site Personnel will have such responsibilities, duties, power and authority in relation to the operations and activities contemplated by this Agreement as Logic PD from time to time determines.  Tecma and Tecma Personnel will cooperate with and assist the Logic PD On-Site Personnel in connection with the performance of their responsibilities and duties and the exercise of their power and authority.  Tecma understands and agrees that the duties and responsibilities of Logic PD On-Site Personnel will include obtaining experience and knowledge in all aspects of the operation of a Maquila company in Mexico.  Logic PD On-Site Personnel will not be deemed to be employees of Tecma and will not be entitled to wages, salaries, severance or benefits from Tecma.

8.11    During the Term: (a) Tecma will not solicit the employment of any Logic PD On Site Personnel without the consent of Logic PD, and (b) except as contemplated by Article 13.2 hereof, Logic PD will not solicit the employment of any Tecma Personnel without the consent of Tecma.

9.     PRODUCTION FACILITY

9.1     In addition to the Support Services, during the Term, Tecma will provide the Production Facility. Tecma will charge Logic PD for the Production Facility during the Term as set forth in Schedule 2 hereto.

9.2     If Logic PD believes that the Production of the Products necessitates or makes desirable a modification, an increase or decrease in the size, or a change in location of the Production Facility, Tecma and Logic PD will consult and confer with each other concerning such action and, to the extent  such action is feasible, the Production Facility will be modified, the size of the Production Facility will be increased or decreased and/or the Production Facility will be relocated, with the Parties using their mutual best efforts to minimize the cost and disruption of such action.

9.3     Tecma will arrange and be responsible for advising and instructing Logic PD and any Logic PD On-Site Personnel as to all matters and issues in respect of the operations and activities at the Production Facility that concern compliance with Applicable Laws, including, but not limited to, all Applicable Laws in the areas of labor, customs, IMMEX, tax, environment, health and safety.

9.4     Tecma will arrange and be responsible for keeping and maintaining the Production Facility at all times in a condition ready and suitable for the proper and efficient production of the Products.

**9.5**     Tecma will promptly notify Logic PD of any dispute or issue concerning the Production Facility that may delay or interfere with the proper and timely production of the Products, including, but not limited to, disputes with Tecma Personnel and/or notices issued by any Government Authority.

## 10.     PRODUCT INFORMATION AND PRODUCT IP.

**10.1**     The Product IP will at all times remain the sole property of Logic PD and will be used by Tecma solely to produce the Products for Logic PD and for no other purpose. Tecma will not modify any Product IP without the express written consent of Logic PD.  Tecma will not register any rights to any of the Product IP with any Government Authorities on its behalf or for the benefit of any third party.

**10.2**     Tecma Parties will treat as confidential all Product Information and other Information that they may receive from or create for Logic PD in the course of performance of this Agreement, will disclose (only on a confidential need-to-know basis to the Tecma Personnel who need to know and who are informed of Tecma' confidentiality obligations in writing) and use such information only as reasonably required for the proper performance of the Support Services, and will take all reasonable measures to prevent the unauthorized disclosure and use of such information, in the same manner and to the same extent as they hold in confidence their own confidential information, but no less than a commercially reasonable standard.

**10.3**     The originals and any authorized copies of the information mentioned in Section 10.2 above will be returned to Logic PD within thirty (30) days following the termination of this Agreement for any reason.

## 11.     REPRESENTATIONS AND WARRANTIES.

Tecma represents, warrants, and undertakes to Logic PD as follows:

(i)     Tecma has the requisite power and authority to enter into this Agreement and the Commodatum Agreement and to perform its obligations hereunder and thereunder, and, when executed and delivered, this Agreement and, the Commodatum Agreement will constitute valid, binding and enforceable obligations of Tecma.

(ii)     Tecma possesses the expertise, skill and resources necessary to property, efficiently and properly perform the Support Services and its other obligations under this Agreement and the Commodatum Agreement.

(iii)     The execution and delivery of this Agreement and the Commodatum Agreement by Tecma and the performance of the Support Services and its other obligations under this Agreement and the Commodatum Agreement do not violate or conflict with, and are not prohibited by, any Applicable Laws or any other agreement, contract, commitment, undertaking or obligation to which any Tecma Party is a party or is subject or bound.

(iv)    All Support Services, including, without limitation, all importations and shipments into and all exportations and shipments from Mexico, will be performed and carried out in strict compliance with all Applicable Laws.

(v)    Tecma is aware of and understands the United States Foreign Corrupt Practices Act of 1977, as amended, and United States export controls and trade embargoes, and will comply with all provisions thereof that may be applicable in connection with this Agreement or the performance and carrying out of the Support Services. Without limiting the forgoing, no portion of any compensation, expense reimbursement or other amount paid to it in connection with this Agreement or the performance and carrying out of the Support Services will be given directly or indirectly as payment to any person or entity, specifically including any official, employee, or representative of any government or governmental agency, as a fee, bribe, kick-back, or other illegal payment.

(vi)    The Tecma Parties shall take any and all actions required to avoid the risk for Logic PD of having a taxable presence (i.e., a permanent establishment) in Mexico as a result of actions or omissions of the Tecma Parties.

## 12.   TERM

The term of this Agreement will begin on the Effective Date and end on the fifth (5th) anniversary of the Effective Date (the *"Original Term"*); provided, however, that Logic PD may in its sole discretion extend the term of this Agreement for up to two successive five (5) year periods (each an *"Extended Term"*). The *"Term"* includes the Original Term and each Extended Term. In the event that Logic PD wishes NOT to extend the term of this Agreement for an Extended Term, Logic PD will notify Tecma in writing of Logic PD's desire NOT to extend the term of this Agreement for an Extended Term at least ninety (90) days in advance of the expiration of the Original or Extended Term then in effect, as the case may be. The provisions of this Agreement and the Commodatum Agreement will apply during each Extended Term, unless agreed otherwise in writing by the Parties.

## 13.   TERMINATION

13.1   The Term may be early terminated by either Party by written notice to the other Party in the event that:

(i)    the other Party breaches any term or condition of this Agreement or the Commodatum Agreement and such breach is not cured within thirty (30) days of the date of written notice of the breach is given to the other Party specifying the circumstances which constitute such breach; or

(ii)    the other Party files or has filed against it a petition in bankruptcy with respect to it, or is adjudged a bankrupt, or becomes insolvent, or makes an assignment for the benefit of the creditors, or discontinues its business, or has a receiver appointed for it or its business who is not discharged within ten (10) days after such appointment.; or

(iii)    a force majeure prevents the other Party from performing as required by any provision of this Agreement or the Commodatum Agreement for a period in excess of thirty (30) consecutive days  or any period of forty five (45) days in any ninety (90) day period; or

(iv)    Logic PD decides to cease producing the Products in Mexico.

**13.2**    If Logic PD should desire to continue production of the Products in Mexico after expiration or early termination of the Original Term or any Extended Term, then, there will be a ninety (90) day transition period from the date of expiration or early termination of the Term (the "***Transition Period***"), during which Tecma will advise and assist Logic PD on the transfer and transition of all aspects of the Support services from Tecma to another entity designated by Logic PD that has an IMMEX/*maquila* program or a successor program thereof approved by the relevant Government Authorities, including, but not limited to the Products, the Production Equipment, the Production Tooling, the Raw Materials, Packaging Materials, Parts and Components, in accordance with Applicable Law.

In consideration of the provision of advice and assistance, Logic PD will pay Tecma a transition fee (hereinafter, "***Transition Fee***") equal to one United States dollar and fifty cents (US$1.50) per clock hour actually worked by the Head Count Tecma Personnel as defined in Section 1.6 during the Transition Period.  To the extent requested by Logic PD, Tecma will transfer Headcount Tecma Personnel to Logic PD during the Transition Period by entering into an appropriate employer substitution agreement, notifying the personnel who are being transferred, for them to become workers and employees of the above-mentioned entity designated by Logic PD under the same terms and conditions of employment that they had with Tecma, including the salary and benefits that they had as Tecma Personnel, and registering the employer substitution agreement with the appropriate labor authorities and the Mexican Social Security Institute.  For the avoidance of doubt, Logic PD's sole obligation for services performed during the Transition Period will be payment of the Transition Fee.

In the case of the preceding paragraph, upon Logic PD's request, Tecma will continue providing the services described in this Agreement that Logic PD might indicate to the above-mentioned entity designated by Logic PD under the same terms and conditions in effect on the date of termination of this Agreement.  If requested, Tecma will perform an employer substitution in compliance with Mexican Law

**13.3**    When the Term expires or if the Term is early terminated by Logic PD pursuant to Article 13.1(i), (ii) or (iii), Logic PD's sole obligation will be to pay to Tecma (a) any and all unpaid amounts owed to Tecma under this Agreement for Support Services properly and timely performed and carried out through the date of expiration or termination, including any Reimbursable Expenses which Tecma has properly incurred through the date of expiration or termination, less (b) any and all claims, losses, damages, costs, expenses and injuries incurred by  Logic PD that are Caused by Tecma.

**13.4**    If the Term is early terminated by Logic PD pursuant to Article 13.1(iv) or by Tecma pursuant to section 13.1(i), (ii), or (iii) in addition to paying to Tecma any and all amounts that would be payable to Tecma if the Term were early terminated by Logic PD pursuant to Article 13.1(i) or (ii), Logic PD will (a) reimburse Tecma for any and all severance payments it is required to make pursuant to Applicable Law for Headcount Tecma Personnel whose employment is

properly terminated pursuant to Applicable Law as a result of the early termination of the Term, (b) if early terminated during the Original Term or any Extended Term, Logic PD will continue to pay Tecma the Production Facility Charge as set forth in Schedule 2 hereto for the balance of the Original Term or Extended Term, and for any long-term agreement with third-party vendors duly approved by Logic PD that Tecma has committed to on behalf of Logic PD.

13.5    When the Term expires or is early terminated, Tecma will promptly prepare and submit to Logic PD invoices covering all amounts Logic PD is obligated will be to pay to Tecma in connection with the expiration or early termination.

13.6    Upon expiration or early termination of the Term, all Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in Tecma' possession or control will be promptly turned over and delivered to Logic PD or such other person or entity as it may direct.  For the avoidance of doubt, the fact that there are any outstanding invoices from Tecma that have not been paid by Logic PD or there are any outstanding invoice(s) of Tecma that are to be payable by Logic PD or that there is any dispute between the Parties of any nature will not permit Tecma to refuse or delay the turning over or delivery of any such property.

13.7    For the avoidance of doubt, the provisions of Articles 1, 2.2, 3.3, 3.4, 4.1, 4.2, 4.4, 5, 6, 7, 8.7, 8.8, 10, 11, 13.4, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 will survive the expiration or early termination of the Term.

14.    RELATIONSHIP OF THE PARTIES

Tecma will act at all times as an independent contractor, not as a partner, a joint venture, subsidiary, affiliate, agent, or employee of Logic PD or any of its Affiliates. No Tecma Party will be entitled to receive or be eligible to participate in any compensation, benefits, privileges or plans given or extended by Logic PD or any of its Affiliates to their employees.  Tecma will not have the authority to bind Logic PD to any obligation or agreement with any third party unless specifically consented to by Logic PD in writing.

Subject to Article 13.2 hereof: (i) Tecma will at all times be the sole employer of all Tecma Personnel, and (ii) under no circumstances will Logic PD or any of its Affiliates be construed as an employer or substitute employer of any of the Tecma Personnel or responsible or liable for the payment or provision of any of the wages, salaries, severance, benefits or income tax or other withholdings for Tecma Personnel.

Tecma will cause all Tecma Parties to comply with the Tecma Parties' obligations set forth in this Agreement and other related documents, and Logic PD will cause all Logic PD Parties to comply with the Logic PD Parties' obligations set forth in this Agreement and other related documents.

15.    INDEMNITY

15.1    Tecma will defend, indemnify and hold harmless Logic PD and its Affiliates and their respective directors, officers, managers, partners, members, owners, employees, agents and representatives harmless from and against any and all claims, losses, damages, expenses or injuries, whether actual or alleged, including reasonable attorney's fees and other costs of investi-

gation and defense, to the extent Caused by Tecma or brought by any member of the Tecma Personnel.

15.2    Logic PD will defend, indemnify and hold harmless Tecma and its Affiliates and their respective directors, officers, managers, partners, members, owners, employees, agents and representatives harmless from and against any and all claims, losses, damages, expenses or injuries, whether actual or alleged including reasonable attorney's fees and other costs of investigation and defense, to the extent Caused by Logic PD.

## 16.    NOTICES

16.1    Each notice, demand or requests to a Party that is required under the provisions of this Agreement will be in writing, and will be delivered either personally, by registered or certified mail (with return receipt requested), by overnight recognized courier, or by fax (with confirmation of successful transmission), addressed to such Party at the address last designated by it for such purpose and will be deemed to be effective upon the date of such Party's receipt of such notice, demand or request.

16.2    Until a Party designates otherwise by notice given to the other Party, each party's addresses for purpose of notices, demands and requests under the provisions of this Agreement s will be as follows:

To Logic PD:            Logic PD
                        6201 Bury Drive
                        Eden Prairie, MN  55346
                        Attn.:  Chief Financial Officer

To Tecma:               Integrated Maquila Solutions, L.LC
                        2000 Wyoming Ave.
                        El Paso, Texas  79903, U.S.A.
                        Attn.: K. Alan Russell

## 17.    ASSIGNMENT

This Agreement may not be assigned by Logic PD to a subsidiary, affiliate or third party without the prior written approval of Tecma which will not be unreasonably withheld; provided, however, that no approval will be required in the event of a sale or other transfer of Logic PD's business or the portion thereof involved in the performance of this Agreement, whether by sale of assets, sale of stock, or merger, consolidation or other reorganization.  This Agreement may neither be assigned by Tecma to a subsidiary, affiliate or third party without the prior written approval of Logic PD, which will not be unreasonably withheld.

## 18.    WAIVER

The delay or failure of either Party to exercise any right or remedy hereunder will not be deemed to be a waiver of such right or remedy and the delay of failure of either Party to terminate this Agreement or to pursue any other remedy provided for breach will not be deemed to be a waiver of the right to do so for such breach or any subsequent breach or for the persistence in a breach of a continuous nature.

## 19.   SEVERABILITY

If any provision of this Agreement nonbinding, invalid or unenforceable, the remaining provisions will not be affected thereby, but will continue to be binding, valid and enforceable as if the nonbinding, invalid or unenforceable provision were not a part of this Agreement.

## 20.   GOVERNING LAW

This Agreement will be governed by and construed in accordance with the laws of the State of Texas, United States of America, without reference to its conflicts of law principles that would direct the application of the laws of another jurisdiction, except if proceedings are brought in Ciudad Juarez, Chihuahua, Mexico, in which case the governing laws will be the applicable laws of Mexico.

## 21.   FORCE MAJEURE

Neither Party will be liable for a failure or delay in its performance of this Agreement to the extent such failure or delay in its performance is due to an act of God, act of civil or military authority, fire, epidemic, flood, earthquake, riot, war, terrorist acts, sabotage, labor shortage or dispute, destruction of production facilities, materials unavailability, or other cause beyond the reasonable control of such party's control which lasts for a period of at least ninety (90) days.  In the event of any delay attributable to an event of force majeure, Logic PD may elect to terminate this Agreement and the Commodatum Agreement, or to extend the time for performance affected thereby for a period equal to the time lost by reason of the delay.

## 22.   PARTIES BOUND

This Agreement will be binding upon and enforceable against the Parties and their respective successors and assigns and inure to the benefit of and be enforceable by the Parties their respective permitted successors and assigns.

## 23.   AMENDMENT

No amendment of any provision of this Agreement will be valid unless the same is in writing and signed by the Party to be charged.

## 24.   ENTIRE AGREEMENT

This Agreement  together with the Commodatum Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior understandings or representations by or among the Parties or their Affiliates, written or oral, to the extent related in any way to the subject matter hereof.

In the event of a conflict between the provisions of this Agreement and the provisions of the Commodatum Agreement, the provisions of this Agreement will prevail.

## 25.   COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.

**IN WITNESS WHEREOF,** the Parties, intending to be legally bound, have caused this Agreement to be executed by their duly authorized officers or legal representatives and have executed this Agreement as of the Effective Date.

**INTEGRATED MAQUILA SOLUTIONS, LLC**

By:  K. Alan Russell
Managing Member

Date:  May 27, 2015

**LOGIC PD, INC.**

By:  Sanderson C. Bell
Chief Financial Officer

Date:  April 16, 2015

## IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
## THE 346th JUDICIAL DISTRICT

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 2019DCV3781 |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC, and JOHN HUHN, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### ORIGINAL ANSWER & AFFIRMATIVE DEFENSES, SUBJECT TO
### SPECIAL APPEARANCE, OF COMPASS ELECTRONICS SOLUTIONS, LLC

TO THE HONORABLE COURT:

Subject to 120a(1) Tex. R. Civ. P., Defendant, Compass Electronics Solutions, LLC ("CES"), without waving its Special Appearance, files this its Original Answer and Affirmative Defenses to the Original Petition of Integrated Maquila Solutions, L.L.C., d/b/a Tecma ("Tecma"), and would show the Court the following:

### GENERAL DENIAL

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, CES generally denies each and every allegation in the Original Petition (the "Petition") filed by Tecma, as well as any and all amended or supplemental petitions, and demands strict proof thereof.

### AFFIRMATIVE DEFENSES

2.      In addition to its general denial, CES asserts the following defenses without conceding which party bears the burden of proof on such defenses:

3.      CES has filed a Special Appearance objecting to this Court's exercise of jurisdiction over CES—this Court does not possess personal jurisdiction over CES.

4.      Tecma failed to state a claim upon which relief can be granted, and therefore, each of Tecma's claims should be dismissed.

5.      Tecma's claims are barred, in whole or in part, because Tecma has failed to allege and prove all conditions precedent to recovery.

6.      Tecma's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, and/or other equitable doctrines.

7.      Tecma's claims are barred, in whole or in part, because CES' acts and/or omissions were not the cause of Tecma's damages, if any. Rather, Tecma's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and/or entities, including Tecma itself, and the acts, omissions, or breaches were intervening and superseding causes of Tecma's damages, if any.

8.      Tecma's claims are barred, in whole or in part, because Tecma failed to mitigate its damages, if any, as required by Texas law.

9.      Tecma erroneously alleged, without factual background and support, that CES owned, operated, and conducted business under a fictitious name of Logic PD, Inc., which even if true, would not confer this Court's jurisdiction over CES in this matter.

10.     Tecma's claims for attorney's fees are barred as it failed to comply with § 38.002 Tex. R. Civ. P. by not timely providing notice of its claim for attorney's fees and permitting CES 30 days to consider the claim prior to Tecma filing this lawsuit, and failing to provide CES with notice of any just (proper) claim amount.

11.     CES is not liable for the acts, omissions, or conduct of other persons or entities not authorized to act on its behalf; pleading further, and in the alternative, CES is not liable for the acts, omissions, or conduct of its agents who exceeded the scope of their authority.

12.     Tecma's claims may also be barred by additional defenses that may arise during the course of this litigation, which defenses Logic reserves the right to assert.

## PRAYER

13.     WHEREFORE, PREMISES CONSIDERED, CES asks the Court to enter judgment

that Tecma take nothing by its claims, dismiss all causes of action against CES, and award CES

all relief set forth herein, and all other and further relief, at law or in equity, to which it may be

justly entitled.

Respectfully submitted,

**FIRTH♦BUNN♦KERR♦NEILL**
311 Montana Ave., Law Center
El Paso, Texas 79902
Telephone:  915-532-7500
Facsimile:  915-532-7503

By:  _____
        Edward DeV. Bunn, Jr.
        State Bar No.  24048372
        EBunn@FBKNlaw.com

        ATTORNEYS FOR LOGIC PD, INC. AND
        COMPASS ELECTRONICS SOLUTIONS, LLC

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on this the *21st day of October 2019*, a true and correct copy of the foregoing document was electronically served, by filing with the Court with service requested thereby, on all attorneys and parties identified with the Court for electronic service on record in this matter, and specifically to:

Victor F. Poulos and Andrew J. Cavazos, Poulos & Coates, L.L.P., 1802 Avenida de Mesilla, Las Cruces, New Mexico 88005, via email to: victor@pouloscoates.com.

_____
Edward DeV. Bunn, Jr.

El Paso County - 346th District Court
Case 3:19-cv-00305    Document 1    Filed 10/22/19    Page 119 of 155

Filed 10/21/2019 6:59 AM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3781

**IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS**
**THE 346th JUDICIAL DISTRICT**

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 2019DCV3781 |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC., and JOHN HUHN, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## SPECIAL APPEARANCE OF COMPASS ELECTRONICS SOLUTIONS, LLC

TO THE HONORABLE COURT:

Pursuant to 120a Tex. R. Civ. P., Defendant, Compass Electronics Solutions, LLC ("CES"), prior to filing any answer or other responsive pleading herein, files this Special Appearance for the purpose of objecting to this Court's personal jurisdiction over CES, and would show the Court the following:

### FACTS

1.      Plaintiff, Integrated Maquila Solutions, L.L.C., d/b/a Tecma ("Tecma"), without reasonable fact or circumstance to support such allegation, asserted in its Original Petition that Compass Group Equity Partners, LLC purchased all or substantially all of the assets of Logic PD, Inc., a Minnesota domiciled corporation ("Logic"), and Logic was rebranded and repackaged under the guise of CES, a completely different limited liability company domiciled in Missouri. This allegation is patently false, unsubstantiated and made solely to force a non-interested party into this litigation, resulting in hardship and financial strain on CES.

2.      Tecma's causes of action and allegations against CES are ill rooted in privity of

contract solely between Tecma and Logic, and none other.[1] Other than unsupported allegations that CES conducts business as Logic, Tecma has pleaded no facts to support any action, inaction, or conduct on the part of CES which would confer this Court's jurisdiction over CES in this matter.

3.      At no time has CES conducted business in the State of Texas under the factious names of Logic PD or Logic PD, Inc., nor maintained any principal office in the State of Texas, much less conducted any activity giving rise to minimum contacts with this State concerning any matter even tangentially related to Logic's business operations or Tecmas pleaded allegations.

4.      CES is not a party to any contractual agreement with Tecma. CES has never maintained a principal office in El Paso, Texas—its principal office is, and has always been, located at 7701 Forsyth, Suit 850, St. Louis, MO 63105.

5.      On November 1, 2018, in compliance with a negotiated right thereunder, Logic terminated a Manufacturing Support Agreement with Tecma.[2] CES had no involvement in that termination, nor any activity related to any relationship between Tecma and Logic.

6.      On December 18, 2018, after Logic notified Tecma of termination of the Manufacturing Support Agreement, CES, a Missouri limited liability company, was formed, with its principal office located at 7701 Forsyth Suit, 850, St. Louis, MO 63105,[3] as a wholly-owned subsidiary of Compass Electronics Group, LLC—not CES.

7.      CES owns no interest, nor possesses any control, right, or authority over Logic.

8.      Logic is a Minnesota domiciled corporation, with its principal office located at

---

[1] *See* Exhibits A and B to Tecma's Original Petition.

[2] *See* Exhibit A: November 1, 2018 Notice of Termination by Logic.

[3] *See* Exhibit B: Affidavit of Chris Gibson; Exhibit C: Articles of Organization for Compass Electronics Solutions, LLC.

6201 Bury Drive, Eden Prairie, MN 55346.[4] Both CES and Logic are separate and distinct citizens of their respective states. Neither is the owner of the other, nor at any time has either owned or possessed any ownership interest in the other.

9.      Notwithstanding its erroneous allegations, Tecma acknowledged, accepted, and agreed, in multiple instruments, Logic's principal office was located in Eden Prairie, Minnesota.[5]

## SPECIAL APPEARANCE SUMMARY

10.     This Court does not have personal jurisdiction over CES and CES has not availed itself of the privileges inherent in conducting business within this State in any manner creating a nexus between Tecma and/or Logic.

11.     At all times relevant to this suit, including, but not limited to, the date of the execution of all contractual agreements between Tecma and Logic, as well as all amendments and supplements thereto, the date of any alleged breach of those agreements evidently giving rise to Tecma's causes of action in this matter, and the date of filing of this action, the following facts were true: (i) CES was a legal entity organized and existing under the laws of the State of Missouri;[6] (ii) the contracts made the subject of this lawsuit were executed solely by and between Tecma and Logic, and concerned production processes and real property located in Ciudad Juárez, Chihuahua, Mexico;[7] and (iii) in no instrument, document, writing, conduct, act or agreement does CES implement itself into the State of Texas to conduct business or obtain a benefit from the laws of the State of Texas thereby creating any nexus with Tecma or Logic.

---

[4] See Preamble to Manufacturing Support Agreement, Commodatum Agreement, and First Amendment to Manufacturing Support Agreement, all of which are attached to Tecma's Original Petition as Exhibits A and B.

[5] Id.

[6] See Exhibit B: Affidavit of Chris Gibson; Exhibit C: Articles of Organization for Compass Electronics Solutions, LLC.

[7] See Exhibits A and B to Tecma's Original Petition.

Therefore, during the relevant time period, CES did not have sufficient contacts with the State of Texas for this Court to exercise jurisdiction over it in this case, as shown in detail below.

### PERSONAL JURISDICTION: LEGAL ANALYSIS

12.     A Texas court may assert jurisdiction over a non-resident defendant only: (i) where the Texas long-arm statute authorizes such exercise of jurisdiction; and (ii) where such exercise is consistent with the due process guarantees embodied in both the Constitution of the United States and Texas Constitution.[8]

13.     The Texas Long-Arm Statute's reach is broad, limited only by the requirements of federal due process guarantees.[9] Where the exercise of personal jurisdiction comports with federal due process limitations the requirements of the Texas Long-Arm Statute are satisfied.[10]

14.     Federal due process requires: (i) "that the non-resident have purposefully established 'minimum contacts' with the foreign state; and (ii) that the exercise of jurisdiction over the non-resident comport with traditional notions of fair play and substantial justice."[11]

15.     A non-resident only establishes minimum contacts in Texas by purposefully availing itself of the privileges inherent in conducting business within this State.[12] Personal jurisdiction cannot be established from a non-resident's "… random, fortuitous or attenuated contacts with the forum … ."[13] Minimum contacts with the forum state can be demonstrated through either general or specific jurisdiction.[14]

---

[8] *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357 (Tex. 1990).

[9] *Id.*

[10] *Guardian Royal Exch. Assur., Ltd v. English China Clays, P.L.*C., 815 S.W.2d 223, 226 (Tex. 1991).

[11] *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding).

[12] *Id.*

[13] *Guardian Royal,* 815 S.W.2d at 226.

[14] *CSR, Ltd.,* 925 S.W. 2d at 595.

## THIS COURT DOES NOT HAVE GENERAL JURISDICTION OVER CES

16.     Jurisdiction by a court may be established over a defendant under the doctrine of general jurisdiction if the defendant's contacts with Texas are "... continuing, systematic and substantial."[15]

17.     A plaintiff must make an extensive showing of a defendant's substantial activities in Texas to establish general jurisdiction.[16] The non-resident defendant's contacts must be carefully investigated and analyzed for proof of a pattern of "...continuing and systematic activity."[17]

18.     On December 18, 2018, CES was organized under the laws of the state of Missouri.[18] From that date through the date of execution by Logic of all contractual agreements and continuing through the date of any alleged breach of contract by Logic (the "Relevant Time Period"), CES continued to be organized and operated under the laws of the State of Missouri, with its principal office in that state but no continuing and systematic activity in the State of Texas causing a nexus between CES, Tecma, and Logic.

19.     During the Relevant Time Period, the following additional facts were true:

i.      CES did not maintain any principal office in the State of Texas.[19]

ii.     CES is not the successor, nor the assignee of Logic PD, Inc., nor any interest, right, authority, ownership, or title thereto, nor is Logic PD, Inc. the successor, nor assignee of any interest therein of CES nor any right, authority, ownership, or title thereto.

iii.    CES has not ever owned real property in the State of Texas.

---

[15] *Guardian Royal,* 815 S.W.2d at 228; *Schlobohm,* 784 S.W.2d at .357.

[16] *Am. Type Culture Collection, Inc. v Coleman*, 83 S.W. 3d 801,807 (Tex. 2002).

[17] *Id.*

[18] *See* Exhibit C: Articles of Organization of Compass Electronics Solutions, LLC.

[19] *See* Exhibit B: Affidavit of Chris Gibson.

iv.   CES did not execute any agreements, operate, conduct, or act in any business capacity within the State of Texas creating a nexus between it and Tecma, nor did it execute any contractual agreements with Tecma.

v.   CES did not purchase, obtain, control, own, operate, manage, oversee, or supervise any aspect of Logic's operation, business, functions, contracts, activities, or actions in the State of Texas.[20]

vi.   CES has never created any contacts with the State of Texas or availed itself of the benefits provided by this State such as to create an nexus between CES, Tecma and Logic.[21]

20.   To establish general jurisdiction over CES, Tecma has the burden of showing CES has a "pattern of continuing and systematic activity" which consitute "substantial activities" in Texas.[22] CES' contacts with the State of Texas are clearly insufficient to establish general jurisdiction over it in this cause.[23]

### THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER CES

21.   Specific jurisdiction is established when the plaintiff's claim against the defendant arises from, or is related to, the defendant's activity within the forum state.[24]

22.   In its pleadings, by a simple generalized blanket defined term of "Defendants," Tecma alleges multiple activities giving rise to a plethora of causes of action against CES consisting of: (i) Breach of Oral or Written Contracts; (ii) Quasi Contract and *Quantum Meruit*; (iii) Intentional Fraud, Misrepresentation, etc.; (iv) Negligent Misrepresenting; (v) Civil Conspiracy; (vi) Promissory Estoppel; (vii) Joint Enterprise/Joint Venture; (viii) Successor Liability; (ix) Piercing the Corporate Veil; and (x) Unjust Enrichment.

23.   There was no contract, oral, written, or otherwise, between CES and Tecma, and

---

[20] *Id.*

[21] *Id.*

[22] *Am. Type Culture Collection, Inc.,* 83 S.W.3d at 807.

[23] *Id.*

[24] *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 796 (Tex. 2002).

CES does not own or control Logic. CES challenges Tecma to produce any evidence of such. No goods or services were provided by Tecma to CES. CES challenges Tecma to establish otherwise. There was no sale or purchase by CES of Logic and neither Logic nor CES maintained any principal office in the State of Texas. CES challenges Tecma to establish otherwise. There was no promise made by CES to Tecma, no representation, nor conveyance of goods or services; therefore, CES's conduct within the State of Texas is insufficient to confer specific jurisdiction over it in the State of Texas, and Tecma's unsubstantiated and unverified statements fail to support this Court's specific jurisdiction over CES in this matter.

24.     It is without question, the only parties to the contract made the subject of this lawsuit are Tecma and Logic.[25] Nowhere in any instrument which would give rise to a cause of action for Tecma is CES identified, other than in Tecma's pleading commencing this lawsuit based on allegations of fact which are patently false, misleading, and only intended to confuse and complicate the Court's understanding of factual matters in controversy in this case.

25.     The contracts allegedly breached by Logic do not identify CES as a party or third-party beneficiary. There is no nexus between CES and Logic, nor any nexus between Tecma's causes of action against CES and the State of Texas; therefore, Tecma's claims against CES cannot provide the basis for the assertion of specific jurisdiction over CES by this Court.[26]

26.     This Court lacks personal jurisdiction over CES in this matter.

WHEREFORE, PREMISES CONSIDERED, CES prays that its Special Appearance be set for hearing, that notice of hearing be provided to Tecma, that after hearing this Honorable Court grant the Special Appearance, dismiss all causes of action herein against CES for lack of personal jurisdiction, and grant CES such other and further relief to which it may show itself justly entitled.

---

[25] *See* Exhibits A and B to Tecma's Original Petition.

[26] *See Belgium, N.V.* 83 S.W.3d at 796.

Respectfully submitted,

**Firth♦Bunn♦Kerr♦Neill**
311 Montana Ave., Law Center
El Paso, Texas 79902
Telephone:  915-532-7500
Facsimile:  915-532-7503

By: _____

      Edward DeV. Bunn, Jr.
      State Bar No.  24048372
      EBunn@FBKNlaw.com

      Attorneys for Logic PD, Inc. and
      Compass Electronics Solutions, LLC

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on this the *21st day of October 2019*, a true and correct copy of the foregoing document was electronically served, by filing with the Court with service requested thereby, on all attorneys and parties identified with the Court for electronic service on record in this matter, and specifically to:

Victor F. Poulos and Andrew J. Cavazos, Poulos & Coates, L.L.P., 1802 Avenida de Mesilla, Las Cruces, New Mexico 88005, via email to: victor@pouloscoates.com.

_____
Edward DeV. Bunn, Jr.

## VERIFICATION

STATE OF *Missouri* )

COUNTY OF *St Louis* )

BEFORE ME, the undersigned Notary Public, on this day personally appeared the person known to me to be Chris Gibson, the authorized representative of LOGIC PD, INC., who being duly sworn by me stated upon his/her oath that he/she is over the age of 21 years, and competent to make this oath, that he/she has personal knowledge of those facts stated in the above-Special Appearance of Compass Electronics Solutions, LLC, and those facts are true and correct.

**COMPASS ELECTRONIC SOLUTIONS, LLC,**
a Missouri limited liability company

By: _____
Chris Gibson, Authorized Representative

SUBSCRIBED AND SWORN TO BEFORE ME on this the *18* day of *October*, 2019 to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC in and for
the State of *Missouri*
[Seal]

> JANET L. KITCHELL
> NOTARY PUBLIC - NOTARY SEAL
> STATE OF MISSOURI
> COMMISSIONED FOR ST. LOUIS COUNTY
> MY COMMISSION EXPIRES DEC. 19, 2022
> ID #18536965



1 Nov 2018

Integrated Maquila Solutions L.L.C. ("Tecma")
2000 Wyoming Ave.
El Paso, TX 79903
Attn: K. Alan Russell

**Re: Termination of Manufacturing Support Agreement**

Dear Mr. Russell:

This letter serves as formal notice that Logic PD, Inc. ("Logic PD") intends to terminate that certain Manufacturing Support Agreement dated April 17, 2015 between Logic PD and Tecma (the "MSA"). In connection with the termination of the MSA, Logic PD also is terminating that certain Commodatum Agreement between the parties dated April 17, 2015.

Pursuant to Section 13.1(iv) of the MSA, Logic PD has the right to terminate the MSA if it "decides to cease producing the Products in Mexico." Logic PD has decided to cease production in Mexico and is terminating the MSA under that Section. The termination will be effective as of 30 December 2018.  Production will cease effective 16 November 2018.  We will follow up with specific employee needs during the transition.

Section 13.5 of the MSA further states that upon any early termination thereof, "Tecma will promptly prepare and submit to Logic PD invoices covering all amounts Logic PD is obligated [sic] to pay Tecma in connection with . . . early termination." Please prepare and submit these invoices for our review and approval.

Finally, Section 13.6 of the MSA states that upon any early termination thereof, "all Production Equipment, Production Tooling, Raw Materials, Packaging Materials, Parts and Components, Products, Scrap, Product Information and Product IP and any other property of Logic PD in Tecma's possession or control will be promptly turned over and delivered to Logic PD or such other person or entity as it may direct." We will follow up with specific instructions for transitioning those items.

Sincerely,

LOGIC PD, INC.

Bruce R. DeWitt
President/CEO  Logic PD

**EXHIBIT A**

6201 Bury Drive
Eden Prairie, MN 55346
T // 952.941.8071
www.logicpd.com

**IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS**
**THE 346th JUDICIAL DISTRICT**

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2019DCV3781 |
| | ) | |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC., and JOHN HUHN, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF CHRIS GIBSON IN SUPPORT OF**
**SPECIAL APPEARANCE OF COMPASS ELECTRONICS SOLUTIONS, LLC**

Before me, the undersigned notary, on this day personally appeared Chris Gibson, who being by me duly sworn on oath, stated:

"My name is Chris Gibson, and I am at least 18 years of age, of sound mind, capable of making this Affidavit and have personal knowledge of the facts herein stated.

I am an Authorized Representative of Compass Electronics Solutions, LLC, a Missouri limited liability company, whose address is 7701 Forsyth, Suit 850, St. Louis, MO 63105.

"Compass Electronics Solutions, LLC a Missouri domiciled limited liability company, formed on December 18, 2018, with its principal office located at 7701 Forsyth, Suit 850, St. Louis, MO 63105.

"At no time has Compass Electronics Solutions, LLC maintained a principal office in the State of Texas.

"Compass Electronics Solutions, LLC does not now own, nor has it ever owned, any interest in Logic PD, Inc. Logic PD, Inc. does not now own, nor has it ever owned any interest in Compass Electronics Solutions, LLC.

"Compass Electronics Solutions, LLC is not now operating, nor has it ever operated, under the fictitious (assumed) name of Logic PD, Inc. or Logic PD. Compass Electronics Solutions, LLC does not now control, nor has it ever had control of, the business operations of Logic PD, Inc.

"Compass Electronics Solutions, LLC did not, at any time, execute, agree, negotiate, or strike any accord with Integrated Maquila Solutions, L.L.C., d/b/a Tecma concerning any matter."

**EXHIBIT B**

"At no time has Compass Electronics Solutions, LLC negotiated, conducted business with, or acted as the agent for any purposes concerning any matter related to Logic PD, Inc.

"At no time has Compass Electronics Solutions, LLC conducted business in the State of Texas for or on behalf of Logic PD, Inc."

FURTHER, AFFIANT SAYETH NOT.

**COMPASS ELECTRONIC SOLUTIONS, LLC**,
a Missouri limited liability company

By: _____
Chris Gibson, Authorized Representative


SUBSCRIBED AND SWORN TO BEFORE ME on this the _18_ day of _October_ 2019 to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC in and for
the State of _Missouri_
[Seal]


JANET L. KITCHELL
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES DEC. 19, 2022
ID #18536965



**State of Missouri**

John R. Ashcroft, Secretary of State

Corporations Division
PO Box 778 / 600 W. Main St., Rm. 322
Jefferson City, MO 65102

**LC001622727
Date Filed: 12/18/2018
John R. Ashcroft
Missouri Secretary of State**

# Articles of Organization

*(Submit with filing fee of $105.00)*

1.  The name of the limited liability company is
    Compass Electronics Solutions, LLC

    *(Must include "Limited Liability Company," "Limited Company," "LC," "L.C.," "L.L.C.," or "LLC")*

2.  The purpose(s) for which the limited liability company is organized:

    to transact any or all lawful business for which a limited liability company may be organized under the laws of the State of Missouri.

3.  The name and address of the limited liability company's registered agent in Missouri is:
    Affinity Registered
    Agent and Trust
    Services, Inc.            1610 Des Peres Road, Suite 100                    St. Louis  MO  63131

    *Name*            *Street Address: May not use PO Box unless  street address also provided*        *City/State/Zip*

4.  The management of the limited liability company is vested in:    ☒ managers    ☐ members    *(check one)*

5.  The events, if any, on which the limited liability company is to dissolve or the number of years the limited liability company is to
    continue, which may be any number or perpetual:   Perpetual

    *(The answer to this question could cause possible tax consequences, you may wish to consult with your attorney or accountant)*

6.  The name(s) and street address(es) of each organizer *(PO box may only be used in addition to a physical street address)*:

    (Organizer(s) are not required to be member(s), manager(s) or owner(s)

    | *Name* | *Address* | *City/State/Zip* |
    |---|---|---|
    | Wilson, Matthew J. | 1610 Des Peres Road Suite 100 | St. Louis  MO  63131 |

7.  ☐ Series LLC (OPTIONAL) Pursuant to Section 347.186, the limited liability company may establish a designated series in its
    operating agreement. The names of the series must include the full name of the limited liability company and are the following:

    New Series:
    ☐ The limited liability company gives notice that the series has limited liability.

    New Series:
    ☐ The limited liability company gives notice that the series has limited liability.

    New Series:
    ☐ The limited liability company gives notice that the series has limited liability.

    (Each separate series must also file an Attachment Form LLC 1A.)

Name and address to return filed document:

Name:    Affinity Law Group, LLC

Address:    Email: corporatemaintenance@affinitylawgrp.com

City, State, and Zip Code: _____

# EXHIBIT C

LLC-1 (08/2013)

8.  The effective date of this document is the date it is filed by the Secretary of State of Missouri unless a future date is otherwise indicated: :_____

*(Date may not be more than 90 days after the filing date in this office)*

In Affirmation thereof, the facts stated above are true and correct:

(The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo)

**All organizers must sign:**

| Matthew J. Wilson | MATTHEW J. WILSON | 12/18/2018 |
|---|---|---|
| *Organizer Signature* | *Printed Name* | *Date of Signature* |

# STATE OF MISSOURI



## John R. Ashcroft
## Secretary of State

### CERTIFICATE OF ORGANIZATION

WHEREAS,

### *Compass Electronics Solutions, LLC*
### *LC001622727*

filed its Articles of Organization with this office on the 18th day of December, 2018, and that filing was found to conform to the Missouri Limited Liability Company Act.

NOW, THEREFORE, I, John R. Ashcroft, Secretary of State of the State of Missouri, do by virtue of the authority vested in me by law, do certify and declare that on the 18th day of December, 2018, the above entity is a Limited Liability Company, organized in this state and entitled to any rights granted to Limited Liability Companies.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, this 18th day of December, 2018.

Secretary of State

El Paso County - 346th District Court

Filed 10/18/2019 2:44 PM
Norma Favela Barceleau
District Clerk
El Paso County
2019DCV3781

IN THE 346TH JUDICIAL DISTRICT COURT
EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C. d/b/a TECMA | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Cause No. 2019DCV3781 |
| COMPASS ELECTRONICS SOLUTIONS, L.L.C. d/b/a LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC f/k/a LOGIC PD, INC., LOGIC PD, INC., and JOHN HUHN, | § § § § § § § | |
| Defendants. | § | |

### SPECIAL APPEARANCE OF JOHN HUHN

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant JOHN HUHN, and files this, his Special Appearance, and in support thereof would respectfully show the Court as follows:

### I. FACTS

1.    On or about September 19, 2019, Plaintiff INTEGRATED MAQUILA SOLUTIONS, L.L.C. d/b/a TECMA sued the Defendants COMPASS ELECTRONICS SOLUTIONS, L.L.C. d/b/a LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC f/k/a LOGIC PD, INC., LOGIC PD, INC., and JOHN HUHN, collectively, for actual damages in excess of $100,000,000.00, asserting a litany of causes of action including breach of contract, quasi contract and quantum meruit, fraud, intentional misrepresentation, fraud by non-disclosure, constructive fraud, fraud in the inducement, negligent misrepresentation, conspiracy promissory estoppel, joint enterprise/joint venture, successor liability, piercing the corporate

Client Files\0012919\00101\00514892.WPD                    1

veil and unjust enrichment.   Plaintiff's Original Petition does not assert that this Court has personal jurisdiction over defendant John Huhn (hereinafter "Huhn").

2.      Huhn is a resident of the State of Missouri. Huhn is not a resident of Texas and has had no purposeful contacts with this state.  Huhn's principal place of business and residence are in Missouri.  Huhn does not own property in Texas.

3.      At all times relevant to this case, Huhn was in the State of Missouri.  Huhn did not travel to Texas to meet with Plaintiff during the relevant time period.  Huhn was contacted in Missouri by the Plaintiff with regard to Plaintiff's alleged contract with Logic PD, Inc. which was to be performed primarily in the Republic of Mexico. All of Huhn's interactions with the Plaintiff regarding the allegations made by Plaintiff in this suit occurred by telephone while he was in St. Louis, Missouri. Huhn did not individually enter into any contracts with Plaintiff.  Huhn did not commit any acts that Plaintiff alleges caused its injuries in the State of Texas.

4.      For all dealings with Plaintiff, Huhn acted only as a representative of Logic PD, Inc. and did not speak, act, or undertake any activity with Plaintiff in his individual capacity.  Logic PD, Inc. is a Minnesota corporation that does not have any offices in Texas.

## II.  ARGUMENT & AUTHORITIES

5.      Texas courts do not have jurisdiction over a nonresident defendant unless the nonresident defendant has purposefully established "minimum contacts" with Texas and the court's exercise of jurisdiction over defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand*, 83

S.W.3d 789, 795 (Tex. 2002); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

### A.  No Minimum Contacts

6.      Texas courts must determine whether the nonresident defendant has purposefully established minimum contacts with Texas. *Moki Mac*, 221 S.W.3d at 575-76; *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996); *Guardian Royal*, 815 S.W.2d at 226. To prove it had no minimum contacts with Texas, the defendant must show that (1) it did not purposefully avail itself of the privilege of conducting activities within Texas, and (2) any contacts it may have had with Texas do not give rise to specific or general jurisdiction. *See Moki Mac*, 221 S.W.3d at 575-76; *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005); *BMC Software*, 83 S.W.3d at 795.

7.      To establish purposeful availment, the defendant's acts must be purposeful rather than random, isolated, or fortuitous, and the defendant must have sought some benefit, advantage, or profit in availing itself of Texas jurisdiction. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007); *Moki Mac*, 221 S.W.3d at 575; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

8.      In this case, Defendant Huhn did not and has not purposefully availed himself of the privilege of conducting activities within Texas. The entire basis of Plaintiff's claim is an alleged contract by and between the Plaintiff and Logic P.D., Inc. which was primarily to be performed in the Republic of Mexico. Huhn did not individually purposely avail himself of the privilege of conducting activities within Texas and at all times relevant hereto was acting only on behalf of Logic PD, Inc. Huhn did not individually directly obtain any benefit,

advantage, or profit from the contract with Plaintiff.  With regard to the alleged representations of Huhn, Plaintiff's own pleadings establish that it was the Plaintiff who initially contacted Huhn in Missouri to discuss the alleged contract. Clearly, Huhn's contacts with Texas were not purposeful on his part but instead were random, isolated, or fortuitous acts by the Plaintiff.

9.     Texas courts cannot exercise specific jurisdiction over a nonresident defendant unless the plaintiff's litigation results from injuries that are alleged to arise from or relate to the defendant's contacts with Texas. *Moki Mac*, 221 S.W.3d at 575; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984); *Michiana*, 168 S.W.3d at 78485; *BMC Software*, 83 S.W.3d at 79596. The defendant's acts must have a substantial connection with the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

10.    Texas courts do not have specific jurisdiction over Huhn because Plaintiff's causes of action against Huhn are clearly just an attempt to assert as many causes of action as possible against as many Defendants as possible seeking an outrageous sum as damages in order to pressure some kind of settlement. Plaintiff's own pleadings establish that its contract was with Logic PD, Inc., that its contract was to be primarily performed in the Republic of Mexico, and that Plaintiff contacted Huhn to discuss the disagreements between Plaintiff and Logic PD, Inc. All statements made by Huhn were made as an agent of Logic PD, Inc. "As a general rule, a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego." *Booth v. Kontomitras*, 485 S.W.3d 461, 482 (Tex. App.–Beaumont 2016, no pet.)(*citing Tuscano v.*

*Osterberg*, 82 S.W.3d 457, 468 (Tex.App.–El Paso 2002, *no pet.*); *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 738 (Tex.App.–Fort Worth 2001, *no pet.*); *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex.App.–Houston [14th Dist.] 1995, *writ denied*)). "Under the fiduciary shield doctrine, a nonresident corporate officer or employee is protected from the exercise of general personal jurisdiction when all of that individual's contacts with Texas were made on behalf of his employer." *Id.* (*Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex.App.–Dallas 2012, *no pet.*)).

11.     Plaintiff tries to avoid the fiduciary shield doctrine by alleging, without any facts, that Huhn is the alter-ego of one or more of the Defendants.  In doing so, Plaintiff simply recites the elements of an action to pierce the corporate veil without reciting a single fact in support of those elements.  Plaintiff does not allege any facts in support of its allegations of alter ego because there aren't any.  Plaintiff cannot establish specific jurisdiction over Huhn without alleging any facts that would support the exercise of such jurisdiction by this Court.

12.     Regardless, Plaintiff's allegations do not show that any actions of Huhn have a *substantial connection* with the operative facts of this litigation.  Despite Plaintiff's creative pleading, this litigation does not result from injuries that arise from or relate to Huhn's contacts with Texas.

13.     Texas courts cannot exercise general jurisdiction over a nonresident defendant unless the defendant has continuous and systematic contacts with Texas.  *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007); *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d 796; *Guardian Royal*, 815 S.W.2d at 230; *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  Texas courts do not

have general jurisdiction over Huhn because he has not had continuous or systematic contacts with Texas.  Huhn has no place of business in Texas, and Huhn has not taken any other action that would put him on notice that he is individually subject to the call of a Texas court.

### B. No Fair Play & Substantial Justice

14.     This Court's assumption of jurisdiction over Huhn and his property will offend traditional notions of fair play and substantial justice and will be inconsistent with the constitutional requirements of due process; therefore, the Court should decline to exercise jurisdiction over Huhn. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moki Mac*, 221 S.W.3d at 575; *Guardian Royal*, 815 S.W.2d at 231; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 359 (Tex. 1990).  Forcing Huhn, a Missouri resident, to litigate in Texas over alleged statements and actions taken by Huhn solely on behalf of a Minnesota corporation involving a contract to be performed primarily in the Republic of Mexico is an unfair burden on the Defendant.  Huhn will be burdened by being forced to litigate in Texas where he does not live or work and whose only contacts with Texas involving the facts of this case were a couple of telephone calls with Plaintiff.  Texas has no interest in adjudicating this dispute which involves a contract to be performed primarily in the Republic of Mexico.  An officer of a Minnesota corporation has no expectation of being joined in a Texas lawsuit under such circumstances. *Guardian Royal, 815 S.W.2d at 231; Schexnayder v. Daniels, 187 S.W.3d 238, 246 (Tex. App.–Texarkana 2006, pet. dism'd w.o.j.).*  The Plaintiff has joined together murky claims against multiple defendants hoping for something to stick and it would be patently unfair to force Huhn to litigate Plaintiff's unsupported claims in Texas.

## III.  CONCLUSION

15.   Defendant, John Huhn does not have the minimum contacts with the State of Texas to justify

a Texas court's assumption of jurisdiction.  If this Court assumes jurisdiction over Huhn, it

will offend traditional notions of fair play and substantial justice.

**WHEREFORE, PREMISES CONSIDERED**, Defendant, John Huhn asks the Court to set

his Special Appearance for hearing and, after the hearing, to sustain his Special Appearance and

enter a final judgment dismissing Plaintiff's causes of action asserted against him.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
609 Montana Avenue
El Paso, Texas  79902
Phone:  915-532-3911
FAX:  (915) 541-6440

By:   */s/ Corey W. Haugland*
Corey W. Haugland
State Bar No. 09234200
chaugland@jghpc.com
Jamie T.  Wall
State Bar No. 24028200
jwall@jghpc.com

Attorneys for JOHN HUHN

## VERIFICATION

STATE OF MISSOURI                    §
                                     §
COUNTY OF SAINT LOUIS                §

BEFORE ME, the undersigned notary public, on this day personally appeared JOHN HUHN; who, after being by me duly sworn stated under oath that he has read the above and foregoing Special Appearance of John Huhn; and, that the facts contained therein are within his personal knowledge and are true and correct.

_____
JOHN HUHN

SUBSCRIBED AND SWORN TO BEFORE ME this *18th* day of October, 2019, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF MISSOURI
My commission expires:

```
JANET L. KITCHELL
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES DEC. 19, 2022
ID #18536965
```

## CERTIFICATE OF SERVICE

I, Corey W. Haugland, hereby certify that on this 18th day of October, 2019, a true and correct copy of the above and foregoing SPECIAL APPEARANCE OF JOHN HUHN was sent to:

Victor F. Poulos
Andrew J. Cavazos
Poulos & Coates, L.L.P.
1802 Avenida de Mesilla
Las Cruces, NM 88005
victor@pouloscoates.com

*/s/ Corey W. Haugland*
Corey W. Haugland

## Proof of Submission

Submission ID: 37787926

Submission Date and Time: 10/18/19 03:44 PM CDST



### Case Information

Case Title: Integrated Maquila Solutions, L.L.C, d/b/a TecmaVSCompass Electronics Solutions, LLC d/b/a Logic PD, Compass Group Equity Partners, LLC f/k/a LogicPD, Inc., Logic PD, Inc. and John Huhn

Jurisdiction: El Paso County - 346th District Court

Case Category: Civil - Other Civil

Case Type: Other Contract

Client ID: 12919-101

Cause No: 2019DCV3781

Attorney: Corey W. Haugland

Filer: Jamie T. Wall

Payment Account: James

### Case Parties

| Party Type | Name | Our Client |
|---|---|---|
| Plaintiff | Integrated Maquila Solutions, L.L.C. | No |
| Defendant | Compass Electronics Solutions, LLC | No |
| Defendant | Compass Group Equity Partners, LLC | No |
| Defendant | Logic PD, Inc. | No |
| Defendant | John Huhn | Yes |

### Filings

Filing Type: eFile & eServe

| Filing | Documents | | |
|---|---|---|---|
| Request | **Document** | **Type** | **Security** |
| | 20191018134433.pdf | Lead Document | Does not contain sensitive data |

Filing Comments:

### Service Contacts

| Name | Firm Name | Case Party | Email |
|---|---|---|---|
| Corey Haugland | James & Haugland, P.C. | John Huhn | chaugland@jghpc.com |
| Jamie Wall | James & Haugland, P.C. | John Huhn | jwal@jghpc.com |

### Service Recipients

| Name | Firm Name | Case Party | Email |
|---|---|---|---|
| Tammy Diaz | | Integrated Maquila Solutions, L.L.C. | tammy@pouloscoates.com |
| Victor F. Poulos | Tyler Public List | Integrated Maquila Solutions, L.L.C. | victor@pouloscoates.com |
| Andrew Cavazos | Tyler Public List | Integrated Maquila Solutions, L.L.C. | andrew@pouloscoates.com |
| Corey William Haugland | Tyler Public List | John Huhn | chaugland@jghpc.com |
| Jamie Travis Wall | Tyler Public List | John Huhn | jwall@jghpc.com |

### Fees Breakdown

**Court Fees**

**Request**

| | |
|---|---|
| Filing Fee | $0.00 |
| Total Fee For This Filing | $0.00 |

**Submission Fees**

| | |
|---|---|
| eFiling Manager Convenience Fee | $0.09 |
| FileTime Service Fee | $2.99 |
| Sales Tax on FileTime Fee | $0.25 |
| Total Submission Fees | $3.33 |
| Total Fees for this Submission | $3.33 |

### Credit Card Information Breakdown

Your credit card statement will show:

**Pleading**

| | |
|---|---|
| Jurisdiction (TXEFILE) | $0.00 |
| eFiling Manager (Tyler (TX)file Conv Fee) | $3.33 |

### Notes

The above fees are **estimates only** and are subject to c after clerk review. **You should not use this page for bl purposes.** Your firm eFiling Administrator should run a report under **Admin > Reports.**

© 2019 FileTime. All rights reserved.

## IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
### THE 346th JUDICIAL DISTRICT

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Cause No. 2019-DCV3781 |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC., and JOHN HUHN, | § § § § § § § § | |
| **Defendants.** | § | |

### SPECIAL APPEARANCE OF COMPASS GROUP EQUITY PARTNERS, LLC

**TO THE HONORABLE COURT:**

**COMES NOW, COMPASS GROUP EQUITY PARTNERS, LLC** ("CGEP") and files this Special Appearance in the above-styled and numbered cause, and would show unto this Honorable Court as follows:

### I.
### BACKGROUND

1.      On September 19, 2019, Integrated Maquila Solutions, L.L.C., d/b/a TECMA ("**TECMA**") sued Compass Electronics Solutions, LLC d/b/a Logic PD, Logic PD, Inc., John Huhn, and CGEP (collectively hereinafter "**Defendants**"). TECMA asserted the following claims: breach of written and oral contracts, quasi contract, quantum meruit, intentional fraud, intentional misrepresentation, fraud by nondisclosure, constructive fraud, fraud in the inducement, negligent misrepresentation, civil conspiracy, promissory estoppel, joint enterprise/joint venture, successor liability, piercing the corporate veil, and unjust enrichment. TECMA collectively seeks actual and exemplary damages in excess of $100,000,000.00 against the Defendants.

2.    TECMA has plead no facts to support any action, inaction, or conduct of the part of CGEP that would confer jurisdiction to this Court over CGEP in this matter.

3.    CGEP is a Missouri domiciled limited liability company, with its principal office located at 7701 Forsyth, Suite 850, St. Louis, Missouri. CGEP is a citizen of Missouri. CGEP is not a citizen or resident of the State of Texas and has had no purposeful contacts with this state.

4.    At no time did CGEP conduct any business in the State of Texas, nor did it maintain an office in the State of Texas, or conduct any activity that would give rise to minimum contacts in this state. In addition, CGEP has not committed any acts in the State of Texas that Plaintiff alleges caused it injury.

## II.
## ARGUMENT AND AUTHORITY

5.    The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045. The statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas, and the statute lists some activities that constitute "doing business" for the purposes of the statute. TEX. CIV. PRAC. & REM. CODE § 17.042. The list of activities, however, is not exclusive. Texas courts have held that Section 17.042's broad language extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex. 1977). Thus, Texas courts rely on precedent from the United States Supreme Court and other federal courts, as well as Texas courts' own decisions, in determining whether a nonresident defendant has met its burden to negate all bases of jurisdiction. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991); *U–Anchor Adver.,* 553 S.W.2d at 762.

6. Personal jurisdiction over nonresident defendants is constitutional when two conditions are met:

    (a)    the defendant has established minimum contacts with the forum state, and

    (b)    the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76 (1985) (discussing the constitutional boundaries of personal jurisdiction). Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Guardian Royal,* 815 S.W.2d at 227. However, a defendant should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous," or "attenuated" contacts. *Burger King,* 471 U.S. at 475.

**A.    No Minimum Contacts.**

7. Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14 (1984); *Guardian Royal,* 815 S.W.2d at 226. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Guardian Royal,* 815 S.W.2d at 228. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.*

8.      Texas courts do not have specific jurisdiction over CGEP.   TECMA's own pleadings establish that it had a contract with Logic PD, Inc.   TECMA does not identify CGEP as a party with which it had a contract.   At no time did CGEP have its agents or representatives communicate with TECMA to make any representations to TECMA.   Furthermore, if there were communications between CGEP and TECMA, such communications were initiated by TECMA and not CGEP.   Texas courts cannot exercise specific jurisdiction over a nonresident defendant unless the plaintiff's litigation results from injuries that are alleged to arise from or relate to the defendant's contacts with Texas.   *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 & n.8.   The defendant's acts must have a substantial connection with the operative facts of the litigation.   *Id.*   TECMA cannot establish specific jurisdiction over CGEP without alleging facts that would support the exercise of such jurisdiction by this Court.

9.      Furthermore, TECMA cannot establish that CGEP had continuous and systematic contacts with Texas in order for this Court to have jurisdiction over CGEP.   Texas courts can exercise general jurisdiction over a nonresident party if there are continuous and systematic contacts with a nonresident.   *Moki Mac*, 221 S.W.3d at 575; *Helicopteros Nacionales de Colombia*, 466 U.S. at 415–16.   This Court does not have general jurisdiction over CGEP because CGEP has not had continuous or systematic contacts with Texas.   CGEP has no place of business in Texas and it has not taken any action which would subject CGEP to this Court's jurisdiction.

**B.      No Fair Play and Substantial Justice**

10.      Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with the notions of

fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–15 (1987); *Burger King,* 471 U.S. at 476. These factors include (1) "the burden on the defendant," (2) the interests of the forum state in adjudicating the dispute, (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477; *Asahi,* 480 U.S. at 113. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477. However, regardless of these factors, it must be established that the nonresident defendant purposely established minimum contacts with the forum state. Even if the nonresident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Burger King,* 471 U.S. at 477–78.

11.     The Court would violate the principles of fair play and substantial justice if it exercises jurisdiction over CGEP.  CGEP does not have minimum contacts necessary for the Court to have jurisdiction over it.  Furthermore, under the principles of fair play and substantial justice, CGEP was not a party to the contract which is the basis of the litigation.  CGEP took no actions in the execution, negotiations, or performance of the contract entered by TECMA and Logic PD, Inc. TECMA's naming of CGEP is solely for the purpose of identifying as many possible parties as it can to pressure the parties into some form settlement to avoid its outrageous demand for damages.

## III.
## CONCLUSION

12.     For all the foregoing reasons, CGEP does not have the minimum contacts necessary with the State of Texas to justify a Texas court's assumption of jurisdiction over it in this matter.

If this Court assumes jurisdiction over CGEP, it would offend traditional notions of fair play and substantial justice.

**WHEREFORE, PREMISES CONSIDERED, COMPASS GROUP EQUITY PARTNERS, LLC,** prays that its Special Appearance be set for hearing, that notice of hearing be provided to TECMA, that after hearing this Honorable Court grant the Special Appearance, dismiss all causes of action herein against CGEP for lack of personal jurisdiction, and grant CGEP such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**BLANCO ORDOÑEZ MATA & WECHSLER, P.C.**
5715 Cromo Drive
El Paso, Texas 79912
(915) 845-5800 (Telephone)
(915) 845-5555 (Facsimile)
rordonez@bomwlaw.com

By: _____
    **RENE ORDOÑEZ**
    State Bar No. 15300220
    **DANIEL ORDOÑEZ**
    State Bar No. 24013271
    Counsel for **COMPASS GROUP EQUITY PARTNERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record utilizing the Court's electronic filing system, on this the 21 day of October, 2019:

**VICTOR F. POULOS**
**ANDREW J. CAVAZOS**
Poulous & Coates, L.L.P.
1802 Avenida de Mesilla
Las Cruces, NM 88005
Counsel for **INTEGRATED**
**MAQUILA SOLUTIONS,**
**L.L.C., D/B/A TECMA**

DANIEL ORDOÑEZ

## VERIFICATION

STATE OF _Missouri_ )
                  )
COUNTY OF _St Louis_ )

    BEFORE ME, the undersigned Notary Public, on this day personally appeared the person known to me to be _JOHN NUHN_, the authorized representative of **COMPASS GROUP EQUITY PARTNERS, LLC**, who being duly sworn by me stated upon his/her oath that he/she is over the age of 21 years, and competent to make this oath, that he/she has personal knowledge of those facts stated in the above-Special Appearance of **COMPASS GROUP EQUITY PARTNERS, LLC**, and those facts are true and correct.

                        **COMPASS GROUP EQUITY PARTNERS, LLC**, a Missouri Limited Liability Company

                        By: _____
                             Authorized Representative

STATE OF _MISSOURI_ )
                  )
COUNTY OF _ST LOUIS_ )

    This instrument was acknowledged before me on the _21st_ day of _October_, 2019.

                        _Janet L Kitchell_
                        Notary
                        [Seal]

```
JANET L. KITCHELL
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
COMMISSIONED FOR ST. LOUIS COUNTY
MY COMMISSION EXPIRES DEC. 19, 2022
ID #18536965
```

**IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS**
**THE 346th JUDICIAL DISTRICT**

| | | |
|---|---|---|
| INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Cause No. 2019-DCV3781 |
| COMPASS ELECTRONICS SOLUTIONS, LLC, D/B/A/ LOGIC PD, COMPASS GROUP EQUITY PARTNERS, LLC, F/K/A LOGIC PD, LOGIC PD, INC., and JOHN HUHN, | § § § § § § § | |
| Defendants. | § | |

**ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES, SUBJECT TO SPECIAL APPEARANCE, OF COMPASS GROUP EQUITY PARTNERS, LLC**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Subject to 120a(1) of the Texas Rules of Civil Procedure, **COMPASS GROUP EQUITY PARTNERS, LLC** ("CGEP"), without waving its Special Appearance, files this its Original Answer and Affirmative Defenses to the Original Petition of Integrated Maquila Solutions, L.L.C., d/b/a Tecma ("**TECMA**"), and in support thereof would respectfully show unto this Honorable Court as follows:

**I.**
**GENERAL DENIAL**

1.    Pursuant to Rule 92 of the Texas Rules of Civil Procedure, CGEP asserts a general denial of all assertions and claims set forth in TECMA's Original Petition ("**Original Petition**"), and respectfully requests that TECMA be required to prove its claims and allegations by a preponderance of the evidence as required by the Constitution and laws of the State of Texas.

## II.
## <u>AFFIRMATIVE DEFENSES</u>

2.      In addition to its general denial, CGEP asserts the following defenses without conceding which party bears the burden of proof on such defenses.

3.      CGEP has filed a Special Appearance objecting to this Court's exercise of jurisdiction over CGEP — this Court does not possess personal jurisdiction over CGEP.

4.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, and/or other equitable doctrines.

5.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that there is no valid contract between CGEP and TECMA.

6.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that it is not liable for the acts, omissions, or conduct of other persons or entities not authorized to act on its behalf; pleading further, and in the alternative, CGEP is not liable for the acts, omissions, or conduct of its agents who exceeded the scope of their authority.

7.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA is not entitled to attorney's fees.

8.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA's claims for attorney's fees are barred as it failed to comply with § 38.002 Tex. R. Civ. P. by not timely providing notice of its claim for attorney's fees and permitting CGEP 30 days to consider the claim prior to TECMA filing this lawsuit, and failing to provide CGEP with notice of any just (proper) claim amount.

9.      Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA's claims are barred, in whole or in part, because CGEP's acts and/or omissions were

not the cause of TECMA's damages, if any. Rather, TECMA's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and/or entities, including TECMA itself, and the acts, omissions, or breaches were intervening and superseding causes of TECMA's damages, if any.

10.     Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA's claims are barred, in whole or in part, because TECMA failed to mitigate its damages, if any, as required by Texas law.

11.     Without waiving the foregoing, and in the alternative, CGEP asserts that damages be limited as set forth in Chapter 41 of the Texas Civil Practice and Remedies Code, specifically including, but not limited to Texas Civil Practice and Remedies Code §§ 41.002 through 41.008.

12.     Without waiving the foregoing, and in the alternative, CGEP affirmatively asserts that TECMA must prove by clear and convincing evidence any exemplary or punitive damages sought.

13.     CGEP currently has insufficient knowledge or information to form a belief as to whether it may have additional defenses available.  CGEP reserves the right to add additional defenses in the event discovery indicates they are appropriate.

### III.
### RIGHT TO SUPPLEMENT/AMEND

13.     CGEP respectfully reserves the right to supplement or amend this pleading at a later date, in conformity with the Texas Rules of Civil Procedure.

### IV.
### PRAYER

**WHEREFORE PREMISES CONSIDERED, COMPASS GROUP EQUITY PARTNERS, LLC,** herein prays Integrated Maquila Solutions, L.L.C., d/b/a Tecma take nothing

by virtue of its claims, that CGEP receive such other and further relief, both in law and in equity, to which it is justly entitled.

Respectfully submitted,

**BLANCO ORDOÑEZ MATA & WECHSLER, P.C.**
5715 Cromo Drive
El Paso, Texas 79912
(915) 845-5800 (Telephone)
(915) 845-5555 (Facsimile)
rordonez@bomwlaw.com

By: _____
**RENE ORDOÑEZ**
State Bar No. 15300220
**DANIEL ORDOÑEZ**
State Bar No. 24013271
Counsel for **COMPASS GROUP EQUITY PARTNERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon counsel of record utilizing the Court's electronic filing system, on this the ___ day of October, 2019:

**VICTOR F. POULOS**
**ANDREW J. CAVAZOS**
Poulos & Coates, L.L.P.
1802 Avenida de Mesilla
Las Cruces, NM 88005
Counsel for **INTEGRATED MAQUILA SOLUTIONS, L.L.C., D/B/A TECMA**

_____
**DANIEL ORDOÑEZ**